# Exhibit C

## Section I

| | |
|---|---|
| Pooling and Servicing Agreement related to BAFC 2007-D dated as of May 31, 2007 ("BAFC PSA") § 2.01 | "The Depositor, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee on behalf of the Trust for the benefit of the Certificateholders, without recourse, all the right, title and interest of the Depositor in and to the Mortgage Loans and the related Mortgage Files, including all interest and principal received on or with respect to the Mortgage Loans (other than payments of principal and interest due and payable on the Mortgage Loans on or before the Cut-off Date) and the Depositor's rights under the BANA Servicing Agreement and under the Mortgage Loan Purchase Agreement, including the rights of the Depositor as assignee of the Sponsor with respect to the Sponsor's rights under the Servicing Agreements (other than the BANA Servicing Agreement). The foregoing sale, transfer, assignment and set over does not and is not intended to result in a creation of an assumption by the Trustee of any obligation of the Depositor or any other Person in connection with the Mortgage Loans or any agreement or instrument relating thereto, except as specifically set forth herein. In addition, the Depositor, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee on behalf of the Trust for the benefit of the Certificateholders, without recourse, the Depositor's rights to receive any BPP Mortgage Loan Payment." |
| Sale and Servicing Agreement related to BSARM 2005-7 dated as of July 29, 2005 ("BSARM SSA") § 2.01 | "The Depositor concurrently with the execution and delivery of this Agreement, sells, transfers and assigns to the Issuer without recourse all its right, title and interest in and to (i) the Mortgage Loans and Substitute Mortgage Loans and the proceeds thereof and all rights under the Related Documents; (ii) all funds on deposit from time to time in the Master Servicer Collection Account, excluding any investment income from such funds; (iii) all funds on deposit from time to time in the Payment Account and in all proceeds thereof; (iv) all funds on deposit from time to time in the Pre-Funding Accounts and the Interest Coverage Accounts and in all proceeds thereof; (v) any REO Property; (vi) all rights under (I) the Mortgage Loan Purchase Agreement as assigned to the Issuer, with respect to the Initial Mortgage Loans and the Subsequent Mortgage Loan Purchase Agreements as assigned to the Issuer, with respect to the related Subsequent Mortgage Loans to the extent provided in Section 2.03(a), (II) the Required Insurance Policies and any amounts paid or payable by the insurer under any Insurance Policy (to the extent the mortgagee has a claim thereto) and (III) the rights with respect to the Servicing Agreements, each as assigned to the Issuer by the related Assignment Agreement; and (vii) any proceeds of the foregoing. Although it is the intent of the |

**Exhibit C**

| | |
|---|---|
| | Depositor and the Issuer that the conveyance of the Depositor's right, title and interest in and to the Mortgage Loans and other assets in the Trust Estate to the Issuer pursuant to this Agreement shall constitute a purchase and sale and not a loan, in the event that such conveyance is deemed to be a loan, it is the intent of the parties to this Agreement that the Depositor shall be deemed to have granted to the Issuer a first priority perfected security interest in all of the Depositor's right, title and interest in, to and under the Mortgage Loans and other assets in the Trust Estate, and that this Agreement shall constitute a security agreement under applicable law. . . . In the case of the Initial Mortgage Loans which have been prepaid in full after the Cut-off Date and prior to the Closing Date and in the case of the Subsequent Mortgage Loans which have been prepaid in full after the related Subsequent Cut-off Date and prior to the applicable Subsequent Transfer Date, the Depositor, in lieu of delivering the above documents, may deliver to the Indenture Trustee, a certification to such effect and shall deposit all amounts paid in respect of such Mortgage Loans in the Master Servicer Collection Account on the Closing Date. The Depositor shall deliver such original documents (including any original documents as to which certified copies had previously been delivered) to the Custodian, promptly after they are received." |
| Pooling and Servicing Agreement related to CMALT 2007-A1 dated as of January 1, 2007 ("Citibank PSA"[1]) § 2.1 | "CMSI, as of the closing date, hereby transfers and assigns to the Trustee, without recourse, all of CMSI's right, title and interest in and to the mortgage loans, including all remittances received or receivable by CMSI on or with respect to the mortgage loans (other than payments of principal and interest due and payable on the mortgage loans, and principal prepayments thereon received, on or before the cut-off date), and the proceeds of any title, primary mortgage, hazard or other insurance policies related to the mortgage loans." |
| Pooling and Servicing Agreement related to ARMT 2005-10 dated as of September 1, 2005 ("Credit Suisse PSA"[2]) § 2.01 | "The Depositor does hereby establish the Adjustable Rate Mortgage Trust 2005-10 (the 'Trust') and sells, transfers, assigns, delivers, sets over and otherwise conveys to the Trustee in trust for the benefit of the Certificateholders, without recourse, the Depositor's right, title and interest in and to (a) the Initial Mortgage Loans listed in the Mortgage Loan Schedule, including all interest and principal received or receivable by the Depositor on or with respect to the Initial Mortgage Loans after the Initial Cut-off Date |

---

[1] Quotations to the Citibank PSA herein are to the PSA executed in connection with the CMALT 2007-A1 securitization. CMALT 2007-A4, CMALT 2007-A5, CMALT 2007-A6, CMLT 2005-7, CMLT 2006-4, CMLT 2006-AR1 and CMLT 2007-AR5 were issued pursuant to PSAs with substantially similar language and any differences are immaterial to the issues addressed in the Complaint.

[2] Quotations to the Credit Suisse PSA herein are to the PSA executed in connection with the ARMT 2005-10 securitization. CSFB 2004-8 was issued pursuant to governing agreements with substantially similar language and any differences are immaterial to the issues addressed in the Complaint.

**Exhibit C**

| | |
|---|---|
| | and any Assigned Prepayment Premiums with respect thereto, but not including payments of principal and interest due and payable on the Initial Mortgage Loans on or before the Initial Cut-off Date, together with the Mortgage Files relating to the Initial Mortgage Loans, (b) REO Property, (c) the Collection Account, the Certificate Account, the Prefunding Account, the Capitalized Interest Account, the Group 5 Interest Rate Cap Account, the Group 6 Basis Risk Reserve Fund and all amounts deposited therein pursuant to the applicable provisions of this Agreement, (d) any insurance policies with respect to the Initial Mortgage Loans, (e) the Depositor's rights under the Assignment and Assumption Agreement and (f) all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or other liquid property." |
| Master Servicing and Trust Agreement related to GSR 2006-AR1 dated as of January 1, 2006 ("GSR MSTA") § 2.01 | "To provide for the distribution of the principal of and interest on the Certificates in accordance with their terms, all of the sums distributable under this Trust Agreement with respect to the Certificates and the performance of the covenants contained in this Trust Agreement, the Depositor hereby bargains, sells, conveys, assigns and transfers to the Trustee, in trust, without recourse and for the exclusive benefit of the Holders, all of the Depositor's right, title and interest in and to any and all benefits accruing to the Depositor from: (a) the Mortgage Loans listed on each of Schedule I hereto, the related Trustee Mortgage Loan Files, and all Scheduled Payments due thereon after the Cut-Off Date and all principal prepayments collected with respect to the Mortgage Loans and paid by a Borrower on or after the Cut-Off Date, and proceeds of the conversion, voluntary or involuntary, of the foregoing; (b) the Sale and Servicing Agreements (other than GSMC's rights to indemnification thereunder, which were retained by GSMC under the applicable Step 1 Assignment Agreements), as they relate to the Mortgage Loans; (c) the Custodial Agreements, as they relate to the Mortgage Loans; (d) the Assignment Agreements; (e) the REMIC I Distribution Account, the Master Servicer Account, the Certificate Account and the Collection Accounts, as they relate to the Mortgage Loans and (f) proceeds of all of the foregoing (including, without limitation, all amounts, other than investment earnings, from time to time held or invested in the Collection Account, the REMIC I Distribution Account and the Certificate Account, whether in the form of cash, instruments, securities or other property, all proceeds of any mortgage insurance, mortgage guarantees, hazard insurance, or title insurance policy relating to the Mortgage Loans, cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, rights to payment of any and every kind, and other forms of obligations and receivables, which at any time constitute all or |

**Exhibit C**

| | part or are included in the proceeds of any of the foregoing) to pay the Certificates as specified herein (items (a) through (f) above shall be collectively referred to herein as the 'Trust Estate')." |
|---|---|
| Pooling and Servicing Agreement related to JPALT 2006-S2 dated as of April 1, 2006 ("JPMorgan PSA"[3]) § 2.01 | "Concurrently with the execution and delivery of this Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, subject to Sections 2.02 and 2.05, in trust, all the right, title and interest of the Depositor in and to the Trust Fund. Such conveyance includes, without limitation: (i) the Mortgage Loans, including the right to all payments of principal and interest received on or with respect to the Mortgage Loans on and after the Cut-off Date (other than Scheduled Payments due on or before such date), and all such payments due after such date but received prior to such date and intended by the related Mortgagors to be applied after such date; (ii) all of the Depositor's right, title and interest in and to all amounts from time to time credited to and the proceeds of the Distribution Account, any Custodial Accounts or any Escrow Account established with respect to the Mortgage Loans; (iii) all of the rights of the Depositor as assignee of the Seller with respect to the Seller's rights under the Purchase and Servicing Agreement, the Servicing Agreements and the Purchase Agreements pursuant to the Acknowledgements; (iv) all of the Depositor's right, title or interest in REO Property and the proceeds thereof; (v) all of the Depositor's rights under any Insurance Policies related to the Mortgage Loans; and (vi) if applicable, the Depositor's security interest in any collateral pledged to secure the Mortgage Loans, including the Mortgaged Properties, including, but not limited to, the pledge, control and guaranty agreements and the Limited Purpose Surety Bond to have and to hold, in trust; and the Trustee declares that, subject to the review provided for in Section 2.02, it has received and shall hold the Trust Fund, as trustee, in trust, for the benefit and use of the Holders of the Certificates and for the purposes and subject to the terms and conditions set forth in this Agreement, and, concurrently with such receipt, has caused to be executed, authenticated and delivered to or upon the order of the Depositor, in exchange for the Trust Fund, Certificates in the authorized denominations evidencing the entire ownership of the Trust Fund. In addition, on or prior to the Closing Date, the Trustee shall execute the Yield Maintenance Agreement and the Depositor hereby directs the Trustee to do so." |

---

[3] Quotations to the J.P. Morgan PSA herein are to the PSA executed in connection with the JPALT 2006-S2 securitization. CFLX 2006-1, JPALT 2006-S4, JPMMT 2005-A7 and JPMMT 2007-A4 were issued pursuant to PSAs with substantially similar language and any differences are immaterial to the issues addressed in the Complaint.

4

**Exhibit C**

| | |
|---|---|
| Pooling and Servicing Agreement related to MABS 2006-AB1 dated as of February 1, 2006 ("MABS PSA") § 2.01 | "The Depositor, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificateholders and the Certificate Insurer, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund. In addition, on or prior to the Closing Date, the Depositor shall cause the Certificate Insurer to deliver the Policy to the Trust Administrator. In connection with the foregoing assignments, the Transferor has caused each Servicer to enter into the related Assignment Agreement." |
| Pooling and Servicing Agreement related to MSM 2006-7 dated as of May 1, 2006 ("MSM PSA") § 2.01 | "Concurrently with the execution and delivery of this Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, subject to Sections 2.02 and 2.05, in trust, all the right, title and interest of the Depositor in and to the Trust Fund. Such conveyance includes, without limitation, (i) the Mortgage Loans, including the right to all payments of principal and interest received on or with respect to the Mortgage Loans on and after the Cut-off Date (other than Scheduled Payments due on or before such date), and all such payments due after such date but received prior to such date and intended by the related Mortgagors to be applied after such date; (ii) all of the Depositor's right, title and interest in and to all amounts from time to time credited to and the proceeds of the Distribution Account, any Custodial Accounts or any Escrow Account established with respect to the Mortgage Loans; (iii) all of the rights and obligations of the Depositor as assignee of the Seller with respect to the Seller's rights and obligations under the Purchase and Servicing Agreements pursuant to the Acknowledgements; (iv) all of the Depositor's right, title or interest in REO Property and the proceeds thereof; (v) all of the Depositor's rights under any Insurance Policies related to the Mortgage Loans; (vi) $2,000 (which amount has been delivered by the Depositor to the Securities Administrator to be held in the Distribution Account until distributed to the Holders of the Class P-1 and Class P-2 Certificates pursuant to Section 5.02(a)); and (vii) if applicable, the Depositor's security interest in any collateral pledged to secure the Mortgage Loans, including the Mortgaged Properties and any Additional Collateral relating to the Additional Collateral Mortgage Loans, including, but not limited to, the pledge, control and guaranty agreements and the Limited Purpose Surety Bond, to have and to hold, in trust; and the Trustee declares that, subject to the review provided for in Section 2.02, it has received and shall hold the Trust Fund, as trustee, in trust, for the benefit and use of the Holders of the Certificates and for the purposes and subject to the terms and conditions set forth in this Agreement, and, concurrently with such receipt, has caused to be executed, authenticated and |

## Exhibit C

| | |
|---|---|
| | delivered to or upon the order of the Depositor, in exchange for the Trust Fund, Certificates in the authorized denominations evidencing the entire ownership of the Trust Fund." |
| Pooling and Servicing Agreement related to TBW 2006-6 dated as of December 1, 2006 ("TBW PSA") § 2.01 | "The Depositor, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificateholders and the Certificate Insurer, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund together with all rights assigned by the Transferor to the Depositor, pursuant to the Mortgage Loan Purchase Agreement, solely with respect to the Mortgage Loans, and, solely with respect to the Mortgage Loans, all of the Transferor's right, title and interest in and to the Servicing Agreement solely as the Servicing Agreement relates to the Mortgage Loans (other than those rights under the Servicing Agreement that do not relate to servicing of the Mortgage Loans (including, without limitation, the representations and warranties made by the Servicer (in its capacity as loan seller to the Transferor) and the document delivery requirements of the Servicer and the remedies (including indemnification) available for breaches thereto), which rights were retained by the Transferor pursuant to the Assignment Agreement). In connection with the foregoing assignments, the Transferor has caused the Servicer to enter into the Assignment Agreement." |
| Pooling and Servicing Agreement related to WAMU 2006-AR8 dated as of July 1, 2006 ("WAMU PSA"[4]) §§ 2.04, 2.05 | "The Company does hereby irrevocably sell, transfer, assign, set over and otherwise convey to the Trust, without recourse, all the Company's right, title and interest in and to the Mortgage Pool Assets. . . . It is the express intent of the parties hereto that the conveyance of the Mortgage Pool Assets to the Trust by the Company as provided in this Section 2.04 be, and be construed as, an absolute sale of the Mortgage Pool Assets. . . ." WAMU PSA § 2.04.<br><br>"On the Closing Date, the Company shall deliver to and deposit with, or cause to be delivered to and deposited with, the Trustee or the Initial Custodian the Mortgage Files, which shall at all times be identified in the records of the Trustee or the Initial Custodian, as applicable, as being held by or on behalf of the Trust. . . . The Trustee is authorized, with the Servicer's consent, to appoint on behalf of the Trust any bank or trust company approved by each of the Company and the Servicer as Custodian of the documents or |

---

[4] Quotations to the WAMU PSA herein are to the PSA executed in connection with the WAMU 2006-AR8 securitization. WAMU 2006-AR2, WAMU 2006-AR16, WAMU 2006-AR18, WAMU 2007-4, WAMU 2007-HY1, WAMU 2007-HY2, WAMU 2007-HY3, WAMU 2007-HY4 and WAMU 2007-HY7 were issued pursuant to PSAs with substantially similar language and any differences are immaterial to the issues addressed in the Complaint.

## Exhibit C

| | |
|---|---|
| | instruments referred to in this Section 2.05, in Section 2.12 or in Section 2.15, and to enter into a Custodial Agreement for such purpose; *provided, however,* that the Trustee shall be and remain liable for the acts and omissions of any such Custodian to the extent (and only to the extent) that it would have been liable for such acts and omissions hereunder had such acts and omissions been its own acts and omissions.  Any documents delivered by the Company or the Servicer to the Custodian, if any, shall be deemed to have been delivered to the Trustee for all purposes hereunder; and any documents held by the Custodian, if any, shall be deemed to be held by the Trustee for all purposes hereunder. There shall be a written Custodial Agreement between the Trustee and each Custodian.  Each Custodial Agreement shall contain an acknowledgment by the Custodian that all Mortgage Pool Assets, Mortgage Files, and other documents and property held by it at any time are held by it for the benefit of the Trust." WAMU PSA § 2.05. |
| Pooling and Servicing Agreement related to WFMBS 2006-AR1 dated as of February 23, 2006 ("WFMBS PSA") § 2.01 | "The Depositor, concurrently with the execution and delivery hereof, does hereby assign to the Trustee, without recourse all the right, title and interest of the Depositor in and to (a) the Trust Estate, including all interest and principal received by the Depositor on or with respect to the Mortgage Loans after the Cut-Off Date (and including scheduled payments of principal and interest due after the Cut-Off Date but received by the Depositor on or before the Cut-Off Date and Unscheduled Principal Receipts received or applied on the Cut-Off Date, but not including payments of principal and interest due on the Mortgage Loans on or before the Cut-Off Date), (b) the Insurance Policies, (c) the obligations of the Servicers under the Servicing Agreements with respect to the Mortgage Loans, (d) the right to receive amounts, if any, payable on behalf of any Mortgagor from the Subsidy Account relating to any Subsidy Loan and (e) proceeds of all the foregoing." |

## Section II

| | |
|---|---|
| BAFC PSA § 2.02 | "[T]he Trustee declares that it, or a Custodian as its agent, will hold the documents referred to in Section 2.01 and the other documents delivered to it or a Custodian as its agent, as the case may be, constituting the Mortgage Files, and that it will hold such other assets as are included in the Trust Estate delivered to it, in trust for the exclusive use and benefit of all present and future Certificateholders." |
| Indenture related to BSARM 2005-7 dated as of July 29, 2005 | "The Indenture Trustee, as trustee on behalf of the Holders of the Notes, acknowledges such Grant, accepts the trust under this Indenture in accordance with the provisions hereof and each of the Indenture Trustee and the Securities Administrator agree to |

## Exhibit C

| | |
|---|---|
| ("BSARM Indenture") p. 8 | perform their respective duties as Indenture Trustee and Securities Administrator as required herein." BSARM Indenture p. 8 (Granting Clause). |
| Citibank PSA § 2.1 | "The Trustee acknowledges receipt of the documents and other property referred to in section 2.1, and declares that the Trustee will hold such documents and other property, including property yet to be received in the Trust Fund, in trust, upon the trusts herein set forth, for the benefit of all present and future certificate holders and any Insurer." |
| Credit Suisse PSA § 2.02 | "Based solely upon the Trust Receipt and Initial Certification received from the Custodians, and subject to the provisions of Section 2.01 and any exceptions noted on an exception report described in the next paragraph below, the Trustee acknowledges receipt of the documents referred to in Section 2.01 above and declares that it holds and will hold such documents and the other documents delivered to it constituting the Mortgage File, and that it holds or will hold all such assets and such other assets included in the definition of the Trust Fund in trust for the exclusive use and benefit of all present and future Certificateholders." |
| GSR MSTA § 2.02 | "By its execution of this Trust Agreement, the Trustee acknowledges and declares that it holds and will hold or has agreed to hold (in each case through the applicable Custodian) all documents delivered to any such person from time to time with respect to the Mortgage Loans and all assets included in the definition of 'Trust Estate' herein in trust for the exclusive use and benefit of all present and future Holders." |
| JPMorgan PSA § 2.02 | "The Trustee, by execution and delivery hereof, acknowledges receipt by it or by the Custodian on its behalf of the Trustee Mortgage Files pertaining to the Mortgage Loans listed on the Mortgage Loan Schedule." |
| MABS PSA § 2.02 | "The Custodian, on behalf of the Trustee, acknowledges receipt of the documents identified in the Initial Certification issued by it. . . . and declares that it holds and will hold such related documents and the other documents delivered to it constituting the Mortgage Files, and the Custodian and Trustee together declare that it holds or will hold such other assets as are included in the Trust Fund, in trust for the exclusive use and benefit of all present and future Certificateholders." |
| MSM PSA § 2.02 | "The Trustee, by execution and delivery hereof, acknowledges receipt by it of notice from each of the Custodians that each holds the documents identified in the Initial Custodial Certification in the form annexed hereto as Exhibit L-1 (the 'Initial Custodial Certification') pertaining to the Mortgage Loans listed on the Mortgage Loan Schedule." |
| TBW PSA § 2.02 | "The Custodian, on behalf of the Trustee, will acknowledge receipt of the documents identified in the Initial Certification issued by it |

## Exhibit C

|  | in the form annexed to the Custodial Agreement as Exhibit 1 and will declare that it holds and will hold such related documents and the other documents delivered to it constituting the Mortgage Files, and the Custodian and Trustee together declare that it holds or will hold such other assets as are included in the Trust Fund, in trust for the exclusive use and benefit of all present and future Certificateholders and the Certificate Insurer." |
|---|---|
| WAMU PSA § 2.07 | "The Trustee acknowledges receipt (or with respect to any Mortgage Loan subject to a Custodial Agreement, including the Initial Custodial Agreement, receipt by the Custodian thereunder) on behalf of the Trust of the documents referred to in Section 2.05 above, but without having made the review required to be made within 45 days pursuant to this Section 2.07. The Trustee acknowledges that all Mortgage Pool Assets, Mortgage Files and related documents and property held by it at any time are held by it as Trustee of the Trust for the benefit of the holders of the the [sic] Certificates." |
| WFMBS PSA § 2.02 | "Subject to the provisions of the following paragraph, pursuant to the Custodial Agreement, the Custodian, on behalf of the Trustee, will declare that it holds and will hold the documents delivered to it pursuant to Section 2.01(a) above and the other documents constituting a part of the Owner Mortgage Loan Files or Retained Mortgage Loan Files (after the occurrence of a Document Transfer Event) delivered to it in trust, upon the trusts herein set forth, for the use and benefit of all present and future Certificateholders." |

## Section III

| BAFC PSA § 2.01 | "In connection with such transfer and assignment, the Depositor has delivered or caused to be delivered to the Trustee, or a Custodian on behalf of the Trustee, for the benefit of the Certificateholders, the following documents or instruments with respect to each Mortgage Loan so assigned:

(i) the original Mortgage Note, endorsed by manual or facsimile signature in the following form: 'Pay to the order of U.S. Bank National Association, as trustee for holders of Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2007-D, without recourse,' with all necessary intervening endorsements showing a complete chain of endorsement from the originator to the Trustee (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note) and, in the case of any Mortgage Loan originated in the State of New York documented by a NYCEMA, the NYCEMA, the new |
|---|---|

9

**Exhibit C**

Mortgage Note, if applicable, the consolidated Mortgage Note and the consolidated Mortgage;

(ii) except as provided below and other than with respect to the Mortgage Loans purchased by the Sponsor from Wells Fargo, the original recorded Mortgage with evidence of a recording thereon, or if any such Mortgage has not been returned from the applicable recording office or has been lost, or if such public recording office retains the original recorded Mortgage, a copy of such Mortgage certified by the applicable Servicer (which may be part of a blanket certification) as being a true and correct copy of the Mortgage;

(iii) subject to the provisos at the end of this paragraph, a duly executed Assignment of Mortgage to 'U.S. Bank National Association, as trustee for the holders of Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2007-D' (which may be included in a blanket assignment or assignments), together with, except as provided below and other than with respect to the Mortgage Loans purchased by the Sponsor from Wells Fargo, originals of all interim recorded assignments of such mortgage or a copy of such interim assignment certified by the applicable Servicer (which may be part of a blanket certification) as being a true and complete copy of the original recorded intervening assignments of Mortgage (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates); provided that, if the related Mortgage has not been returned from the applicable public recording office, such Assignment of Mortgage may exclude the information to be provided by the recording office; and provided, further, if the related Mortgage has been recorded in the name of Mortgage Electronic Registration Systems, Inc. ('MERS') or its designee, no Assignment of Mortgage in favor of the Trustee will be ---- required to be prepared or delivered and instead, the Master Servicer shall enforce the obligations of the applicable Servicer to take all actions as are necessary to cause the Trust to be shown as the owner of the related Mortgage Loan on the records of MERS for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by MERS;

(iv) the originals of all assumption, modification, consolidation or extension agreements, if any, with evidence of recording thereon, if any;

(v) other than with respect to the Mortgage Loans purchased by the

## Exhibit C

| | |
|---|---|
| | Sponsor from Wells Fargo, any of (A) the original or duplicate original mortgagee title insurance policy and all riders thereto, (B) a title search showing no lien (other than standard exceptions) on the Mortgaged Property senior to the lien of the Mortgage or (C) an opinion of counsel of the type customarily rendered in the applicable jurisdiction in lieu of a title insurance policy; |
| | (vi) the original of any guarantee executed in connection with the Mortgage Note; |
| | (vii) for each Mortgage Loan, if any, which is secured by a residential long-term lease, a copy of the lease with evidence of recording indicated thereon, or, if the lease is in the process of being recorded, a photocopy of the lease, certified by an officer of the respective prior owner of such Mortgage Loan or by the applicable title insurance company, closing/settlement/escrow agent or company or closing attorney to be a true and correct copy of the lease transmitted for recordation; |
| | (viii) the original of any security agreement, chattel mortgage or equivalent document executed in connection with the Mortgage; and |
| | (ix) for each Mortgage Loan secured by Cooperative Stock (other than with respect to any Mortgage Loan secured by Cooperative Stock purchased by the Sponsor from Wells Fargo), the originals of the following documents or instruments: (A) The Cooperative Stock Certificate; (B) The stock power executed in blank; (C) The executed Cooperative Lease; (D) The executed Recognition Agreement; (E) The executed assignment of Recognition Agreement, if any; (F) The executed UCC-1 financing statement with evidence of recording thereon; and (G) Executed UCC-3 financing statements or other appropriate UCC financing statements required by state law, evidencing a complete and unbroken line from the mortgagee to the Trustee with evidence of recording thereon (or in a form suitable for recordation)." |
| BSARM SSA § 2.01(b) | "In connection with the above transfer and assignment, the Depositor hereby delivers to the Custodian, on behalf of the Issuer, with respect to each Mortgage Loan: |
| | (i) the original Mortgage Note, endorsed without recourse in blank or to the order of the Indenture Trustee and showing an unbroken chain of endorsements from the originator thereof to the Person endorsing it in blank or to the Indenture Trustee, or lost note affidavit together with a copy of the related Mortgage Note; |

**Exhibit C**

| | |
|---|---|
| | (ii) the original Mortgage and, if the related Mortgage Loan is a MOM Loan, noting the presence of the MIN and language indicating that such Mortgage Loan is a MOM Loan, which shall have been recorded (or if the original is not available, a copy), with evidence of such recording indicated thereon (or if clause (w) in the proviso below applies, shall be in recordable form); |
| | (iii) unless the Mortgage Loan is a MOM Loan, a certified copy of the assignment (which may be in the form of a blanket assignment if permitted in the jurisdiction in which the Mortgaged Property is located) in blank or to 'U.S. Bank National Association, as Indenture Trustee, on behalf of the Noteholders', with evidence of recording with respect to each Mortgage Loan in the name of the Indenture Trustee thereon (or if clause (w) in the proviso below applies or for Mortgage Loans with respect to which the related Mortgaged Property is located in a state other than Maryland or an Opinion of Counsel has been provided as set forth in this Section 2.01(b), shall be in recordable form); |
| | (iv) all intervening assignments of the Security Instrument, if applicable and only to the extent available to the Depositor with evidence of recording thereon; |
| | (v) the original or a copy of the policy or certificate of primary mortgage guaranty insurance, to the extent available, if any; |
| | (vi) the original or a copy of the policy of title insurance or mortgagee's certificate of title insurance or commitment or binder for title insurance; and |
| | (vii) originals of all modification agreements, if applicable and available." |
| Citibank PSA § 2.1 | "CMSI will on or before the closing date deliver to the Mortgage Document Custodian on behalf of the Trustee to be held in trust the following documents or instruments for each mortgage loan (other than mortgage loans secured by shares in a cooperative housing corporation) (except to the extent CMSI is complying with section 2.1(f)): |
| | (i) The mortgage note, endorsed by manual or facsimile signature without recourse by the Originator or an affiliate of the Originator in blank or to the Trustee showing a complete chain of endorsements from the named payee to the Trustee or from the named payee to the affiliate of the Originator and from such affiliate to the Trustee, except that endorsement is not required |

## Exhibit C

where Mortgage Electronic Registration Systems, Inc. (*MERS*) is the named payee or the nominee of the named payee.

(ii) The original recorded mortgage, with evidence of recording thereon or a copy of the mortgage certified by the public recording office in those jurisdictions where the public recording office retains the original.

(iii) Any original assumption, modification, buydown or conversion-to-fixed-interest-rate agreement applicable to the mortgage.

(iv) An assignment from the Originator or an affiliate of the Originator to the Trustee in recordable form of the mortgage which may be included, where permitted by local law, in a blanket assignment or assignments of the mortgage to the Trustee, including any intervening assignments and showing a complete chain of title from the original mortgagee named under the mortgage to the Originator or such affiliate and to the Trustee, *except* that (x) a blanket assignment need not be in recordable form but shall be delivered with a limited power of attorney authorizing the Custodian, on behalf of the Trustee, to act for the Originator or such affiliate in preparing, executing, delivering and recording in the Trustee's name any instruments for recording assignments of the related mortgages to the Trustee, (y) if the mortgage is registered with MERS, only assignments from the origination of the mortgage to its assignment to MERS will be required, and (z) if the mortgage was originated with MERS as the original mortgagee (a 'MOM loan'), no interim assignment will be required.

(v) The original or a copy of the title insurance policy (which may be a certificate or a short form policy relating to a master policy of title insurance) pertaining to the mortgaged property, or in the event such original title policy is unavailable, a copy of the preliminary title report and the lender's recording instructions, with the original to be delivered within 180 days of the closing date or other evidence of title.

(vi) Any related primary mortgage insurance certificate and related policy or a copy thereof.

(d) CMSI will on or before the closing date deliver to the Mortgage Document Custodian on behalf of the Trustee to be held in trust the following documents or instruments for each mortgage loan secured by shares in a cooperative housing corporation (except to the extent CMSI is complying with section 2.1(f)):

**Exhibit C**

(i) The mortgage note, endorsed by manual or facsimile signature without recourse by the Originator or an affiliate of the Originator in blank or to the Trustee showing a complete chain of endorsements and assignments from the named payee to the Trustee or from the named payee to the affiliate of the Originator and from such affiliate to the Trustee.

(ii) The original mortgage, with evidence of recording thereon (if recordation was required under applicable law).

(iii) Any original assumption, modification, buydown or conversion-to-fixed-interest-rate agreement applicable to the mortgage.

(iv) The original stocks, shares, membership certificate or other contractual agreement evidencing ownership;

(v) The original stock power executed in blank.

(vi) The original executed security agreement or similar document and all assignments thereof showing a complete chain of assignment from the named secured party to the Trustee.

(vii) The original executed proprietary lease or occupancy agreement and all assignments thereof showing a complete chain of assignment from the named secured party to the Trustee.

(viii) The original executed recognition agreement and any executed assignments of recognition agreement showing a complete chain of assignment from the named secured party to the Trustee.

(ix) (Except for mortgage loans (x) secured by mortgaged properties in the State of New Jersey or (y) originated prior to October 1988 and secured by mortgaged properties in the State of New York) the executed UCC-1 financing statement with evidence of recording thereon and executed original UCC-3 financing statements or other appropriate UCC financing statements required by state law, evidencing a complete and unbroken chain from the mortgagee to the Trustee with evidence of recording thereon (or in a form suitable for recordation).

(x) Any related primary mortgage insurance certificate and related policy."

14

## Exhibit C

| | |
|---|---|
| Credit Suisse PSA § 2.01 | "In connection with the transfer and assignment set forth in clause (a) above, the Depositor has delivered or caused to be delivered to a Custodian for the benefit of the Certificateholders, the documents and instruments with respect to each Initial Mortgage Loan as assigned:<br><br>(i) (A) the original Mortgage Note bearing all intervening endorsements and including any riders to the Mortgage Note, endorsed 'Pay to the order of _____, without recourse' and signed in the name of the last named endorsee by an authorized officer or (B) with respect to any Lost Mortgage Note, a lost note affidavit and indemnity from the related Seller stating that the original Mortgage Note was lost or destroyed, (together with a copy of such Mortgage Note, if available) and indemnifying the Trust Fund against any loss, cost or liability resulting from the failure to deliver the original Mortgage Note;<br><br>(ii) the original of any guarantee executed in connection with the Mortgage Note (if any);<br><br>(iii) for each Mortgage Loan that is not a MERS Mortgage Loan, the original Mortgage, with evidence of recording thereon, or copies certified by the related recording office or if the original Mortgage has not yet been returned from the recording office, a copy certified by or on behalf of the related Seller indicating that such Mortgage has been delivered for recording (the return directions for the original Mortgage should indicate, when recorded, mail to the related Seller) and in the case of each MERS Mortgage Loan, the original Mortgage, noting the presence of the MIN of the related Mortgage Loan and either language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS, with evidence of recording indicated thereon or a copy of the Mortgage certified by the public recording office in which such Mortgage has been recorded;<br><br>(iv) the originals of all assumption, modification, consolidation or extension agreements, (or, if an original of any of these documents has not been returned from the recording office, a copy thereof certified by or on behalf of the related Seller, the original to be delivered to the related Seller forthwith after return from such recording office) with evidence of recording thereon, if any;<br><br>(v) for each Mortgage Loan that is not a MERS Mortgage Loan, the original Assignment of Mortgage as appropriate, in recordable |

## Exhibit C

| | |
|---|---|
| | form, for each Mortgage Loan from the last assignee assigned in blank;<br><br>(vi) for each Mortgage Loan that was not a MERS Mortgage Loan at its origination, the originals of any intervening recorded Assignments of Mortgage, showing a complete chain of assignment from origination to the last assignee, including warehousing assignments, with evidence of recording thereon (or, if an original intervening Assignment of Mortgage has not been returned from the recording office, a copy thereof certified by or on behalf of the related Seller, the original to be delivered to a Custodian forthwith after return from such recording office);<br><br>(vii) the original mortgage title insurance policy, or copy of title commitment (or in appropriate jurisdictions, attorney's opinion of title and abstract of title); and<br><br>(viii) with respect to a Cooperative Loan, if any, the originals of the following documents or instruments: (A) the Cooperative Shares, together with the Stock Power in blank; (B) the executed Security Agreement; (C) the executed Proprietary Lease and the Assignment of Proprietary Lease to the originator of the Cooperative Loan; (D) the executed Recognition Agreement; (E) Copies of the original UCC financing statement, and any continuation statements, filed by the originator of such Cooperative Loan as secured party, each with evidence of recording thereof, evidencing the interest of the originator under the Security Agreement and the Assignment of Proprietary Lease; (F) Copies of the filed UCC assignments or amendments of the security interest referenced in clause (E) above showing an unbroken chain of title from the originator to the Trust, each with evidence of recording thereof, evidencing the interest of the assignee under the Security Agreement and the Assignment of Proprietary Lease; (G) An executed assignment of the interest of the originator in the Security Agreement, the Assignment of Proprietary Lease and the Recognition Agreement, showing an unbroken chain of title from the originator to the Trust; and (H) For any Cooperative Loan that has been modified or amended, the original instrument or instruments effecting such modification or amendment." |
| GSR MSTA § 1.01 | "With respect to each Mortgage Loan, unless otherwise provided in the Trust Agreement, collectively, the following documents, together with any other Mortgage Loan documents held by the Trustee or the related Custodian with respect to such Mortgage Loan: |

**Exhibit C**

(a) The original executed mortgage note endorsed, 'Pay to the order of _____ or in the name of the Trustee, U.S. Bank National Association, as trustee under a Master Servicing and Trust Agreement, dated as of January 1, 2006, without recourse', and signed in the name of the Seller (or an affiliate of such Seller, if applicable) by an officer of such Seller (or an affiliate of such Seller, if applicable), or a Lost Document Affidavit with a copy of the original mortgage note attached; provided that unless otherwise provided in the related Sale and Servicing Agreement or if the mortgage note has been left blank, the words 'U.S. Bank National Association, as trustee under a Master Servicing and Trust Agreement, dated as of January 1, 2006' shall be inserted into the blank; and provided that the mortgage note shall include all intervening original endorsements showing a complete chain of title from the originator to such Seller (or an affiliate of such Seller, if applicable);

(b) The original executed Mortgage, or a certified copy thereof, in either case with evidence of recording noted thereon;

(c) Except for Mortgage Loans registered on MERS, original assignment of each Mortgage from the related Seller (or its affiliate, if applicable) delivered in blank in recordable form;

(d) The original or copy of a policy of title insurance, a certificate of title, or attorney's opinion of title (accompanied by an abstract of title), as the case may be, with respect to each Mortgage Loan;

(e) Except for Mortgage Loans registered on MERS, originals of any intervening assignments of the mortgage necessary to show a complete chain of title from the original mortgagee to the Seller, or certified copies thereof, in either case with evidence of recording noted thereon; provided that such intervening assignments may be in the form of blanket assignments, a copy of which, with evidence of recording noted thereon, shall be acceptable;

(f) Originals of all modification agreements, or certified copies thereof, in either case with evidence of recording noted thereon if recordation is required to maintain the lien of the mortgage or is otherwise required, or, if recordation is not so required, an original or copy of any such modification agreement;

(g) To the extent applicable, an original power of attorney, or a certified copy thereof, in either case with evidence of recordation thereon if necessary to maintain the lien on the Mortgage or if the document to which such power of attorney relates is required to be

# Exhibit C

| | |
|---|---|
| | recorded, or, if recordation is not so required, an original or copy of such power of attorney;<br><br>(h) An original or copy of any surety agreement or guaranty agreement, if any." |
| JPMorgan PSA § 2.01 | "On the Closing Date, the Custodian shall deliver to the Trustee, the Securities Administrator and the Depositor, a certification ('Custodian Certification') substantially in the form attached hereto as Exhibit L certifying that, pursuant to each related Custodial Agreement, the applicable Originator delivered and released to the Custodian, subject to and in accordance with the relevant section of each related Purchase and Servicing Agreement, Purchase Agreement or Custodial Agreement, the following documents pertaining to each of the Mortgage Loans identified in the Mortgage Loan Schedule (provided, however, that the Custodian shall not be required nor does it intend to re-examine the contents of the Trustee Mortgage File for any of the Mortgage Loans in connection with entering into this Agreement or providing the Custodian Certification required pursuant to this Section 2.01):<br><br>(i) with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of the Trustee, or in blank (in each case, with all necessary intervening endorsements, as applicable);<br><br>(ii) with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the original Mortgage with evidence of recording thereon and in the case of the each MERS Mortgage Loan, the original Mortgage, noting the presence of the MIN of the Mortgage Loans and either language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS, with evidence of recording indicated thereon;<br><br>(iii) with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the Assignment of Mortgage in form and substance acceptable for recording in the relevant jurisdiction, such assignment being either (A) in blank, without recourse, or (B) endorsed to 'U.S. Bank National Association, as Trustee of J.P. Morgan Alternative Loan Trust 2006-S2, Mortgage Pass-Through Certificates, without recourse';<br><br>(iv) with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the originals of all |

**Exhibit C**

intervening assignments of the Mortgage, if any, with evidence of recording thereon, or if the original intervening assignment has not yet been returned from the recording office, a copy of such assignment certified by the applicable Originator to be a true copy of the original of the assignment which has been sent for recording in the appropriate jurisdiction in which the Mortgaged Property is located;

(v) with respect to each Mortgage Loan (other than a Cooperative Loan), the originals of all assumption, modification, consolidation or extension agreements, if any, with evidence of recording thereon;

(vi) if applicable, with respect to each Mortgage Loan (other than a Cooperative Loan), the original policy of title insurance (or a true copy thereof) with respect to any such Mortgage Loan, or, if such policy has not yet been delivered by the insurer, the title commitment or title binder to issue same;

(vii) if applicable, with respect to each Mortgage Loan (other than a Cooperative Loan), a copy of the power of attorney and guaranty agreement with respect to such Mortgage Loan;

(viii) if applicable, the original or certified copy of the certificates evidencing ownership of the Cooperative Shares issued by the Cooperative Corporation and related assignment of such certificates or an assignment of such Cooperative Shares, in blank, executed by the Mortgagor with such signature guaranteed;

(ix) with respect to each Mortgage Loan which constitutes a Cooperative Loan: (1) the original of any security agreement or similar document executed in connection with the Cooperative Loan; (2) the original Recognition Agreement; (3) UCC-1 financing statements with recording information thereon from the appropriate governmental recording offices if necessary to perfect the security interest of the Cooperative Loan under the Uniform Commercial Code in the jurisdiction in which the Cooperative Property is located, accompanied by UCC-3 financing statements executed in blank for recordation of the change in the secured party thereunder; (4) the original Proprietary Lease and the Assignment of Proprietary Lease executed by the Mortgagor in blank or if the Proprietary Lease has been assigned by the Mortgagor to the Seller, then the Seller must execute an assignment of the Assignment of Proprietary Lease in blank; and (5) any other document or instruments required to be delivered under the related Custodial Agreement."

## Exhibit C

| | |
|---|---|
| MABS PSA § 2.01 | In connection with the transfer and assignment set forth in clause (a) above, the Depositor has delivered or caused to be delivered to the Custodian, on behalf of the Trustee, for the benefit of the Certificateholders and the Certificate Insurer the following documents or instruments with respect to each Mortgage Loan that is not a Cooperative Mortgage Loan so assigned:<br><br>(A) the original Mortgage Note endorsed by manual or facsimile signature in blank in the following form: 'Pay to the order of _____ without recourse,' with all intervening endorsements showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note); or, with respect to any Lost Mortgage Note, a lost note affidavit from the related originator or the Transferor stating that the original Mortgage Note was lost or destroyed, together with a copy of such Mortgage Note;<br><br>(B) except as provided below, the original recorded Mortgage or a copy of such Mortgage certified by the related originator as being a true and complete copy of the Mortgage;<br><br>(C) a duly executed assignment of the Mortgage (which may be included in a blanket assignment or assignments), endorsed in the following form: 'U.S. Bank National Association, in trust for the MASTR Asset Backed Securities Trust 2006-AB1 for the benefit of the Holders of the Mortgage Pass-Through Certificates, Series 2006-AB1' together with, except as provided below, all interim recorded assignments of such mortgage (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates); provided that, if the related Mortgage has not been returned from the applicable public recording office, such assignment of the Mortgage may exclude the information to be provided by the recording office;<br><br>(D) the original or copies of each assumption, modification, written assurance or substitution agreement, if any; and<br><br>(E) except as provided below, the original or duplicate original lender's title policy and all riders thereto.<br><br>(ii) In connection with the transfer and assignment set forth in clause (a) above, the Depositor has delivered or caused to be |

**Exhibit C**

| | |
|---|---|
| | delivered to the Custodian, on behalf of the Trustee, for the benefit of the Certificateholders and the Certificate Insurer the following documents or instruments with respect to each Cooperative Mortgage Loan so assigned:<br><br>(A) the Cooperative Shares, together with the Stock Power in blank;<br><br>(B) the executed Security Agreement;<br><br>(C) the executed Proprietary Lease and the Assignment of Proprietary Lease to the originator of the Cooperative Mortgage Loan;<br><br>(D) the executed Recognition Agreement;<br><br>(E) copies of the original Financing Statement, and any continuation statements, filed by the originator of such Cooperative Mortgage Loan as secured party, each with evidence of recording thereof, evidencing the interest of the originator under the Security Agreement and the Assignment of Proprietary Lease;<br><br>(F) copies of the filed UCC assignments or amendments of the security interest referenced in clause (v) above showing an unbroken chain of title from the originator to the Trust, each with evidence of recording thereof, evidencing the interest of the assignee under the Security Agreement and the Assignment of Proprietary Lease;<br><br>(G) an executed assignment of the interest of the originator in the Security Agreement, the Assignment of Proprietary Lease and the Recognition Agreement, showing an unbroken chain of title from the originator to the Trust; and<br><br>(H) for any Cooperative Mortgage Loan that has been modified or amended, the original instrument or instruments effecting such modification or amendment." |
| MSM PSA § 2.01 | "In connection with such transfer and assignment of the Mortgage Loans, the Depositor shall cause to be delivered and the Custodian acting on the Trustee's behalf will continue to hold the documents or instruments listed below with respect to each Mortgage Loan (each, a 'Trustee Mortgage File') so transferred and assigned:<br><br>(i) with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of 'LaSalle Bank National Association, as Trustee of Morgan Stanley |

**Exhibit C**

Mortgage Loan Trust 2006-7, Mortgage Pass-Through Certificates, without recourse', or in blank (in each case, with all necessary intervening endorsements, as applicable);

(ii) with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the original Mortgage with evidence of recording thereon, or if the original Mortgage has not yet been returned from the recording office, a copy of such Mortgage certified by the applicable Originator, title company, escrow agent or closing attorney to be a true copy of the original of the Mortgage which has been sent for recording in the appropriate jurisdiction in which the Mortgaged Property is located, and in the case of the each MERS Mortgage Loan, the original Mortgage, noting the presence of the MIN of the Mortgage Loans and either language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS, with evidence of recording indicated thereon;

(iii) with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the Assignment of Mortgage in form and substance acceptable for recording in the relevant jurisdiction, such assignment being either (A) in blank, without recourse, or (B) endorsed to 'LaSalle Bank National Association, as Trustee of Morgan Stanley Mortgage Loan Trust 2006-7, Mortgage Pass-Through Certificates, without recourse';

(iv) with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the originals of all intervening assignments of the Mortgage, if any, with evidence of recording thereon, or if the original intervening assignment has not yet been returned from the recording office, a copy of such assignment certified by the applicable Originator, title company, escrow agent or closing attorney to be a true copy of the original of the assignment which has been sent for recording in the appropriate jurisdiction in which the Mortgaged Property is located;

(v) with respect to each Mortgage Loan (other than a Cooperative Loan), the originals of all assumption, modification, consolidation or extension agreements, if any, with evidence of recording thereon;

(vi) if any, with respect to each Mortgage Loan (other than a

22

**Exhibit C**

Cooperative Loan), the original policy of title insurance (or a true copy thereof) with respect to any such Mortgage Loan, or, if such policy has not yet been delivered by the insurer, the title commitment or title binder to issue same;

(vii) if any, with respect to each Mortgage Loan (other than a Cooperative Loan), the original power of attorney and guaranty agreement with respect to such Mortgage Loan;

(viii) [reserved];

(ix) with respect to each Mortgage Loan which constitutes a Cooperative Loan:
(a) the original of any security agreement or similar document executed in connection with the
Cooperative Loan;
(b) the original Recognition Agreement and the original Assignment of Recognition Agreement;
(c) UCC-1 financing statements with recording information thereon from the appropriate governmental recording offices if necessary to perfect the security interest of the Cooperative Loan under the Uniform Commercial Code in the jurisdiction in which the Cooperative Property is located, accompanied by UCC-3 financing statements executed in blank for recordation of the change in the secured party thereunder;
(d) an Estoppel Letter and/or Consent;
(e) a search for (i) federal tax liens, mechanics' liens, lis pendens, judgments of record or otherwise against (x) the Cooperative Corporation and (y) the seller of the Cooperative Unit, (ii) filings of financing statements and (iii) the deed of the cooperative project into the Cooperative Corporation;
(f) the guaranty of the Mortgage Note and Cooperative Loan, if any;
(g) the original Proprietary Lease and the Assignment of Proprietary Lease executed by the Mortgagor in blank or if the Proprietary Lease has been assigned by the Mortgagor to the Seller, then the Seller must execute an assignment of the Assignment of Proprietary Lease in blank; and
(h) if any, the original or certified copy of the certificates evidencing ownership of the Cooperative Shares issued by the Cooperative Corporation and related assignment of such certificates or an assignment of such Cooperative Shares, in blank, executed by the Mortgagor with such signature guaranteed;

(x) [reserved]; and

## Exhibit C

| | |
|---|---|
| | (xi) any other document or instruments required to be delivered under the related Custodial Agreement." |
| TBW PSA § 2.01 | "(i) In connection with the transfer and assignment set forth in clause (a) above, the Depositor has delivered or caused to be delivered to the Custodian, on behalf of the Trustee, for the benefit of the Certificateholders and the Certificate Insurer the following documents or instruments with respect to each Mortgage Loan that is not a Cooperative Mortgage Loan so assigned:<br><br>(A) the original Mortgage Note endorsed by manual or facsimile signature in blank in the following form: 'Pay to the order of _____ without recourse,' with all intervening endorsements showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note); or, with respect to any Lost Mortgage Note, a lost note affidavit from the related originator or the Transferor stating that the original Mortgage Note was lost or destroyed, together with a copy of such Mortgage Note;<br>(B) except as provided below, the original recorded Mortgage or a copy of such Mortgage certified by the related originator as being a true and complete copy of the Mortgage;<br>(C) a duly executed assignment of the Mortgage (which may be included in a blanket assignment or assignments), endorsed in blank (except with respect to MERS designated Mortgage Loans) together with, except as provided below, all interim recorded assignments of such mortgage (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates); provided that, if the related Mortgage has not been returned from the applicable public recording office, such assignment of the Mortgage may exclude the information to be provided by the recording office;<br>(D) the original or copies of each assumption, modification, written assurance or substitution agreement, if any; and<br>(E) except as provided below, the original or duplicate original lender's title policy and all riders thereto.<br><br>(ii) In connection with the transfer and assignment set forth in clause (a) above, the Depositor has delivered or caused to be delivered to the Custodian, on behalf of the Trustee, for the benefit of the Certificateholders and the Certificate Insurer the following documents or instruments with respect to each Cooperative Mortgage Loan so assigned: |

## Exhibit C

| | |
|---|---|
| | (A) the Cooperative Shares, together with the Stock Power in blank;<br>(B) the executed Security Agreement;<br>(C) the executed Proprietary Lease and the Assignment of Proprietary Lease to the originator of the Cooperative Mortgage Loan;<br>(D) the executed Recognition Agreement, if any;<br>(E) copies of the original Financing Statement, and any continuation statements, filed by the originator of such Cooperative Mortgage Loan as secured party, each with evidence of recording thereof, evidencing the interest of the originator under the Security Agreement and the Assignment of Proprietary Lease;<br>(F) copies of the filed UCC assignments or amendments of the security interest referenced in clause (v) above showing an unbroken chain of title from the originator to the Trust, each with evidence of recording thereof, evidencing the interest of the assignee under the Security Agreement and the Assignment of Proprietary Lease;<br>(G) an executed assignment of the interest of the originator in the Security Agreement, the Assignment of Proprietary Lease and the Recognition Agreement, showing an unbroken chain of title from the originator to the Trust; and<br>(H) for any Cooperative Mortgage Loan that has been modified or amended, the original instrument or instruments effecting such modification or amendment." |
| WAMU PSA § 1.01 | "(i) The original Mortgage Note endorsed (A) in blank, without recourse, (B) to the Trustee, without recourse, or (C) to the Trust, without recourse, and all intervening endorsements evidencing a complete chain of endorsements from the originator to the endorser last endorsing the Mortgage Note. . . .;<br><br>(ii) The Buydown Agreement, if applicable;<br><br>(iii) (1) (x) the original recorded Mortgage with evidence of recording thereon for the jurisdiction in which the Mortgaged Property is located . . . (y) unless the Mortgage Loan is a MERS Loan, an original assignment of the Mortgage duly executed and acknowledged in recordable form (A) in blank, (B) to the Trustee or (C) to the Trust, and (z) unless the Mortgage Loan is a MOM Loan, recorded originals of all intervening assignments evidencing a complete chain of assignment from the originator to the person executing the assignment described in clause (y); or (2) (x) a copy (which may be in electronic form) of the Mortgage . . . which represents a true and correct reproduction of the original Mortgage and which has either been certified (i) on the face thereof by the public recording office in the appropriate jurisdiction in which the |

**Exhibit C**

| | |
|---|---|
| | Mortgaged Property is located, or (ii) by the originator, the applicable Seller, the Servicer or the escrow or title company which provided closing services in connection with such Mortgage Loan as a true and correct copy the original of which has been sent for recordation, (y) unless the Mortgage Loan is a MERS Loan, an original assignment of the Mortgage duly executed and acknowledged in recordable form (A) in blank, (B) to the Trustee or (C) to the Trust, and (z) unless the Mortgage Loan is a MOM Loan, true and correct copies, certified by the applicable county recorder or by the originator, the applicable Seller, or the Servicer as described above, of all intervening assignments evidencing a complete chain of assignment from the originator to the person executing the assignment described in clause (y);… <br><br> (iv) For any Mortgage Loan that has been modified or amended, the original instrument or instruments effecting such modification or amendment." |
| WFMBS PSA § 2.01 | "In connection with such assignment, the Depositor shall, with respect to each Mortgage Loan, deliver, or cause to be delivered, to the Custodian, on or before the Closing Date the following documents or instruments with respect to each Mortgage Loan: <br><br> (i) The original Mortgage Note either (A) endorsed in blank or (B) endorsed as provided in Section 2.01(d), with all prior and intervening endorsements as may be necessary to show a complete chain of endorsements or with respect to any Mortgage Loan as to which the original Mortgage Note has been permanently lost or destroyed and has not been replaced, a lost note affidavit with a copy of the Mortgage Note and, in the case of any Mortgage Loan originated in the State of New York documented by a NYCEMA, the NYCEMA, the new Mortgage Note, if applicable, the consolidated Mortgage Note and the consolidated Mortgage; <br><br> (ii) A recorded original assignment of the related Mortgage from Wells Fargo Bank assigning the related Mortgage to the Trustee (which may be assigned in blank), certified by the recording office, or, if such assignment is in the process of being recorded, a copy of the related Mortgage transmitted for recordation certified by an officer of Wells Fargo Bank or applicable Wells Fargo Bank Correspondent to be a true and correct copy of such assignment submitted for recordation; provided, however, if recordation is not required as described below, an assignment in recordable form (which may be assigned in blank) with respect to the related Mortgage; <br><br> (iii) The original of each assumption agreement, modification, |

## Exhibit C

| | written assurance or substitution agreement pertaining to such Mortgage Note, if any; and<br><br>(iv) For each Mortgage Loan secured by Co-op Shares, the originals of the following documents or instruments:<br>(a) The loan security agreement;<br>(b) The stock certificate;<br>(c) The stock power, executed in blank;<br>(d) The executed proprietary lease;<br>(e) The executed recognition agreement;<br>(f) The executed UCC-1 financing statement with evidence of recording thereon; and<br>(g) The executed UCC-3 financing statements or other appropriate UCC financing statements required by state law, evidencing a complete and unbroken chain from the mortgagee to the Trustee with evidence of recording thereon (or in a form suitable for recordation)." |
|---|---|

## Section IV

| BAFC PSA § 2.02 | "Within 90 days after the execution and delivery of this Agreement, the Trustee shall review, or cause a Custodian, on behalf of the Trustee, to review, the Mortgage Files in such Person's possession, and shall deliver to the Depositor, the Master Servicer and the NIMS Insurer a certification in the form attached hereto as Exhibit L (the 'Final Certification') to the effect that, as to each Mortgage Loan listed in the Mortgage Loan Schedule, except as may be specified in a list of exceptions attached to such Final Certification, such Mortgage File contains all of the items required to be delivered pursuant to Section 2.01(b). In performing any such review, the Trustee or a Custodian, as the case may be, may conclusively rely on the purported genuineness of any such document and any signature thereon." |
|---|---|
| BSARM SSA § 2.02(b) | "No later than 180 days after the Closing Date (or within 180 days of the applicable Subsequent Transfer Date, with respect to the related Subsequent Mortgage Loans), the Custodian, in accordance with the Custodial Agreement, will review, for the benefit of the Noteholders, the Mortgage Files delivered to it and will execute and deliver or cause to be executed and delivered to the Depositor, the Seller, the Indenture Trustee and the Issuer a Final Certification." |
| Citibank PSA § 2.3;<br>Exhibit C | "Pursuant to the Mortgage Document Custodial Agreement, the Mortgage Document Custodian will review each mortgage file within 90 days after the closing date to ascertain that all required documents have been executed, received and recorded, if |

27

## Exhibit C

| | applicable, and that such documents relate to the mortgage loans identified in exhibit B." Citibank PSA § 2.3(b). |
|---|---|
| | "Citibank will attend to all non-discretionary details in connection with maintaining custody of the Mortgage Files, including reviewing each Mortgage File within 90 days after issuance of the certificates, ascertaining that all documents required to be delivered pursuant to section 2.1, 'Transfer of mortgage loans,' of the Pooling Agreement have been executed, received and recorded, if applicable, and, in connection therewith, delivering, in electronic form, such reports and certifications to the Trustee and CMSI as are required by the Pooling Agreement. If in the course of such review, or if at any time during the term of this agreement, Citibank determines that a document or documents constituting part of a Mortgage File is defective or missing, it will promptly so notify, in electronic form, the Trustee and CitiMortgage in accordance with the provisions of section 2.3, 'Repurchase or substitution of mortgage loans,' of the Pooling Agreement, and will, within 30 days thereafter, provide the Trustee with an updated report certifying as to the completeness of the Mortgage File, with any applicable exceptions noted thereon." Citibank PSA Exhibit C (Mortgage Document Custodial Agreement). |
| Credit Suisse PSA § 2.02 | "Pursuant to the related Custodial Agreement, each Custodian agrees to execute and deliver on the Closing Date to the Depositor, the Trustee and the Trust Administrator a Trust Receipt and Initial Certification in the form annexed hereto as Exhibit I-1. Based on its review and examination, and only as to the documents identified in such Trust Receipt and Initial Certification, each Custodian acknowledges that such documents appear regular on their face and relate to such Initial Mortgage Loan. The Custodians shall be under no duty or obligation to inspect, review or examine said documents, instruments, certificates or other papers to determine that the same are genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded in the real estate records or that they are other than what they purport to be on their face. Pursuant to the related Custodial Agreement, not later than 90 days after the Closing Date, each Custodian shall deliver to the Depositor, the Trustee and the Trust Administrator a Trust Receipt and Final Certification in the form annexed hereto as Exhibit J, with any applicable exceptions noted thereon." |
| GSR MSTA § 2.02 | "Each applicable Custodian will review, for the benefit of the Trustee and Certificateholders and the parties hereto, each applicable Trustee Mortgage Loan File and deliver to the Trustee (with a copy to the Depositor) on the Closing Date a Trust Receipt, in the form annexed hereto as Exhibit A with respect to each applicable Mortgage Loan to the effect that, except as specifically |

## Exhibit C

| | noted on a schedule of exceptions thereto (the 'Exceptions List'). . . .'' |
|---|---|
| JPMorgan PSA §§ 2.01, 2.02 | "In connection with such transfer and assignment of the Mortgage Loans, the Custodian acting on the Trustee's behalf, will continue to hold the documents or instruments listed below with respect to each Mortgage Loan (each, a 'Trustee Mortgage File') so transferred and assigned. . . On the Closing Date, the Custodian shall deliver to the Trustee, the Securities Administrator and the Depositor, a certification ('Custodian Certification') substantially in the form attached hereto as Exhibit L certifying that, pursuant to each related Custodial Agreement, the applicable Originator delivered and released to the Custodian, subject to and in accordance with the relevant section of each related Purchase and Servicing Agreement, Purchase Agreement or Custodial Agreement, the following documents pertaining to each of the Mortgage Loans identified in the Mortgage Loan Schedule (provided, however, that the Custodian shall not be required nor does it intend to re-examine the contents of the Trustee Mortgage File for any of the Mortgage Loans in connection with entering into this Agreement or providing the Custodian Certification required pursuant to this Section 2.01)." JPMorgan PSA § 2.01.<br><br>"With respect to the Mortgage Loans, in the event there exist exceptions noted on the related Custodian Certification (substantially in the form of Exhibit L), not later than 90 days after the Closing Date the Custodian shall deliver to the Trustee and the Depositor a further certification with any applicable exceptions noted thereon. . . Each of the parties hereto acknowledges that (i) the Custodian has performed the applicable review of the Mortgage Loans and has delivered the Custodian Certification as provided herein and in the Custodial Agreements on the Closing Date and (ii) thereafter, if applicable, the Custodian shall perform the applicable review of the Mortgage Loans and deliver the further certifications as provided herein and in the applicable Custodial Agreements." JPMorgan PSA § 2.02. |
| MABS PSA § 2.02 | "Not later than 90 days after the Closing Date, the Custodian shall deliver to the Depositor, the Trustee and the Transferor a Final Certification in the form annexed hereto as Exhibit H, with any applicable exceptions noted thereon. The Custodian shall make available, upon request of any Certificateholder, a copy of any exceptions noted on the Initial Certification or the Final Certification. The Custodian shall make available, upon request of the Trustee, the identity of the originator for any Mortgage Loan with a material exception." |
| MSM PSA § 2.02 | "Each of the parties hereto acknowledges that (i) the Custodian has delivered to the Depositor, the Master Servicer and the Trustee, the |

## Exhibit C

| | |
|---|---|
| | Initial Custodial Certification, in the form annexed hereto as Exhibit L-1, stating that it has performed the applicable review of the Mortgage Loans as required herein and in the Custodial Agreements on the Closing Date and (ii) thereafter, if applicable, the Custodian shall perform the applicable review of the Mortgage Loans and deliver the further certifications (including but not limited to the Final Custodial Certification) as provided herein and in the applicable Custodial Agreements. With respect to the MSMCI Mortgage Loans only, not later than 180 days after the Closing Date, the Trustee shall enforce the related Custodian's obligation, to the extent required by the related Custodial Agreement, to deliver to the Depositor, the Master Servicer and the Trustee a Final Custodial Certification in the form annexed hereto as Exhibit L-2 (the 'Final Custodial Certification'), with any applicable exceptions noted thereon. To the extent that a Custodian must deliver a Final Certification under the related Custodial Agreement, the Trustee shall enforce that Custodian's obligation to make available, upon request of any Certificateholder, a copy of any exceptions noted on the related Initial Custodial Certification or the related Final Custodial Certification." |
| TBW PSA § 2.02 | "Not later than 90 days after the Closing Date, the Custodian shall deliver to the Depositor, the Certificate Insurer, the Trustee and the Transferor a Final Certification in the form annexed to the Custodial Agreement as Exhibit 2, with any applicable exceptions noted thereon. Upon receipt of written request from the Depositor, the Master Servicer, the Trust Administrator or the Trustee, the Custodian shall as soon as practicable supply such Person with a list of all of the documents relating to the Mortgage Loans missing from the Custodial Files, in accordance with the Custodial Agreement." |
| WAMU PSA § 2.07 | "The Trustee shall review (or cause the Initial Custodian to review) each Mortgage File within 45 days after the Closing Date and deliver to the Company a certification (or cause the Initial Custodian to deliver to the Company a certification, which satisfies the applicable requirements of this Agreement) in the form attached as Exhibit M hereto, to the effect that, except as noted, all documents required (in the case of instruments described in clauses (X)(ii), (X)(iv) and (Y)(ix) of the definition of 'Mortgage File,' known by the Trustee to be required) pursuant to the definition of 'Mortgage File' and Section 2.05 have been executed and received, and that such documents relate to the Mortgage Loans identified in the Mortgage Loan Schedule. . . ." |
| WFMBS PSA § 2.02 | "The Custodian will review each Owner Mortgage Loan File within 45 days after execution of this Agreement. The Custodian will deliver no later than 30 days after completion of such review to the Depositor and the Trustee a final certification in the form of Exhibit |

## Exhibit C

|  | O hereto to the effect that, except as may be specified in a list of exceptions attached thereto, all required documents set forth in Section 2.01(a) have been executed and received and appear regular on their face, and that such documents relate to the Mortgage Loans identified in the Mortgage Loan Schedule based on a comparison of the Mortgage Loan identifying number, Mortgagor name and street address, and in so doing the Custodian may rely on the purported due execution and genuineness of any such document and on the purported genuineness of any signature thereon." |
|--|--|

## Section V

| BAFC PSA Exhibit L | "Ladies and Gentlemen: |
|--|--|
|  | In accordance with the provisions of Section 2.02 of the above-referenced Pooling and Servicing Agreement (the 'Pooling and Servicing Agreement'), the undersigned, as [Trustee] [Custodian], hereby certifies that, as to each Mortgage Loan listed in the Mortgage Loan Schedule, except as may be specified in any list of exceptions attached hereto, such Mortgage File contains all of the items required to be delivered pursuant to Section 2.01(b) of the Pooling and Servicing Agreement. |
|  | The [Trustee] [Custodian] has made no independent examination of any documents contained in each Mortgage File beyond the review specifically required in the Pooling and Servicing Agreement in connection with this Final Certification. The [Trustee] [Custodian] makes no representations as to: (i) the validity, legality, sufficiency, enforceability, recordability or genuineness of any of the documents contained in each Mortgage File or any of the Mortgage Loans identified in the Mortgage Loan Schedule or (ii) the collectibility, insurability, effectiveness or suitability of any such Mortgage Loan. |
|  | Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Pooling and Servicing Agreement. |
|  | [U.S. BANK NATIONAL ASSOCIATION, as Trustee]" |
| BSARM Custodial Agreement Exhibit 3 | The BSARM Custodial Agreement is not a publicly filed document. Based on information in the publicly filed prospectus Indenture, the Final Certification attached as Exhibit 3 to the BSARM Custodial Agreement is in substantially the same form as the Final Certifications set forth herein and any differences are immaterial to the issues addressed in the Complaint. |

## Exhibit C

| | |
|---|---|
| | This is based upon the definition of Final Certification (below) in the indenture:<br><br>"Final Certification: The final certification delivered by the Custodian pursuant to Section 2.3<br>(c) of the Custodial Agreement in the form attached thereto as Exhibit Three." |
| Citibank PSA § 2.3(b); Exhibit C | "Pursuant to the Mortgage Document Custodial Agreement, the Mortgage Document Custodian will review each mortgage file within 90 days after the closing date to ascertain that all required documents have been executed, received and recorded, if applicable, and that such documents relate to the mortgage loans identified in exhibit B." Citibank PSA § 2.3(b).<br><br>"Citibank will attend to all non-discretionary details in connection with maintaining  custody of the Mortgage Files, including reviewing each Mortgage File within 90 days after issuance of the certificates, ascertaining that all  documents required to be delivered pursuant to section 2.1, 'Transfer of mortgage loans,' of the Pooling Agreement have been executed, received  and recorded, if applicable, and, in connection therewith, delivering, in electronic form, such reports and certifications to the Trustee and CMSI as are required by the Pooling Agreement. If in the course of such review, or if at any time during the term of this agreement, Citibank determines that a  document or documents constituting part of a Mortgage File is defective or missing, it will promptly so notify, in electronic form, the Trustee and  CitiMortgage in accordance with the provisions of section 2.3, 'Repurchase or substitution of mortgage loans,' of the Pooling Agreement, and will,  within 30 days thereafter, provide the Trustee with an updated report certifying as to the completeness of the Mortgage File, with any applicable  exceptions noted thereon." Citibank PSA Exhibit C (Mortgage Document Custodial Agreement). |
| Credit Suisse PSA Exhibit J | "Ladies and Gentlemen:<br><br>In accordance with the provisions of Section [5][6] of the above-referenced Custodial Agreement, the undersigned, as the Custodian, hereby certifies that as to each Mortgage Loan listed on the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or any Mortgage Loan listed on the attachment hereto) it has reviewed the Custodial Files and has determined that (i) all documents required to be delivered to it pursuant to Sections 2(i)-(ix) of the Custodial Agreement are in its possession; (ii) such documents have been reviewed by it and appear regular on their face and related to such Mortgage Loan; (iii) all Assignments of |

**Exhibit C**

| | |
|---|---|
| | Mortgage or intervening assignments of mortgage, as applicable, have been submitted for recording in the jurisdictions in which recording is necessary; and (iv) each Mortgage Note has been endorsed as provided in Section 2(ii) of the Custodial Agreement and each Mortgage has been assigned in accordance with Section 2(vi) of the Custodial Agreement. The Custodian makes no representations as to (i) the validity, legality, enforceability, sufficiency, due authorization or genuineness of any of the documents contained in each Custodial File or of any of the Mortgage Loans or (ii) the collectability, insurability, effectiveness or suitability of any such Mortgage Loan.<br><br>The Custodian hereby confirms that it is holding each such Custodial File as agent and bailee of, and custodian for the exclusive use and benefit, and subject to the sole direction, of Trustee pursuant to the terms and conditions of the Custodial Agreement.<br><br>This Trust Receipt and Final Certification is not divisible or negotiable.<br><br>The Custodian will accept and act on instructions with respect to the Mortgage Loans subject hereto upon surrender of this Trust Receipt and Initial Certification at its office at [CUSTODIAN ADDRESS], Attention: Document Custodian.<br><br>Capitalized terms used herein shall have the meaning ascribed to them in the Custodial Agreement.<br><br>[_____], as Custodian<br><br>By: _____<br>Name:<br>Title:" |
| GSR MSTA Exhibit B | "Ladies and Gentlemen:<br><br>In accordance with Section 2.02 of the Standard Terms to the above-referenced Trust Agreement, the undersigned, as Trustee, hereby certifies that, except as noted on the Schedule of Exceptions attached hereto, for each Mortgage Loan listed on the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or listed on the attachment hereto) it, or one or more Custodians on its behalf, has received a complete Trustee Mortgage Loan File (a) (i) all documents required to be delivered to it pursuant to clause (a) through (e) and (g) of the definition of Trustee Mortgage Loan File |

**Exhibit C**

| | |
|---|---|
| | are in its possession; and (ii) all powers of attorney required to be delivered to it pursuant to Section 1(i) of the Custodial Agreement are in its possession; *provided* that the Trustee (or one or more Custodians) has no obligation to verify the receipt o f any such documents, the existence of which was not made known to the Trustee (or any such Custodian) by the Trustee Mortgage Loan File, and *provided*, *further*, that the Trustee (or one or more Custodians) has no obligation to determine whether recordation of any such power of attorney is necessary except the Trustee (or such Custodian) shall conclude that a power of attorney must be recorded if the document to which it relates is recorded; (b) such documents have been reviewed by it and appear regular on their face and related to such Mortgage Loans, except as set forth in the attached exception report; *provided*, *however*, no Custodian makes any representation or has any responsibilities as to the authenticity of such documents, their compliance with applicable law, or the collectibility of any of the Mortgage Loans relating thereto; and (c) each mortgage note has been endorsed in blank and each assignment has been assigned as required under clause (a) of the definition of Trustee Mortgage Loan File.<br><br>Capitalized words and phrases used herein shall have the respective meanings assigned to them in the above-captioned Trust Agreement.<br><br>IN WITNESS WHEREOF, the Trustee has caused this Certificate to be executed by a duly authorized Officer this __ day of _____, 20__.<br><br>[CUSTODIAN]<br>By: _____<br>Its: _____ " |
| JPMorgan PSA Exhibit L | "Ladies and Gentlemen:<br><br>Reference is hereby made to the Pooling and Servicing Agreement, dated as of April 1, 2006 (the 'Pooling and Servicing Agreement'), among J.P. Morgan Acceptance Corporation I, as depositor, Wells Fargo Bank, N.A., as master servicer and as securities administrator, and U.S. Bank National Association, as trustee. Capitalized terms used but not defined herein shall have the meanings provided in the Pooling and Servicing Agreement.<br><br>In accordance with the provisions of Section 2.01 of the Pooling and Servicing Agreement, the undersigned, as the Custodian, hereby certifies that, as to each Mortgage Loan listed on the Mortgage Loan Schedule, it has reviewed the Trustee Mortgage File and has determined that except as set forth in the attached |

## Exhibit C

| | |
|---|---|
| | exception report (a) all documents required to be delivered to it pursuant to Section 2.01 (a) (i) through (ix) of the Pooling and Servicing Agreement are in its possession; provided, that the Custodian has no obligation to verify the receipt of any documents the existence of which was not made known to the Custodian by the Trustee Mortgage File, and provided, further, that the Custodian has no obligation to determine whether recordation of any such modification is necessary (except as set forth in Section 2.01 of the Pooling and Servicing Agreement); (b) such documents have been reviewed by it and appear regular on their face and to relate to such Mortgage Loans; *provided, however*, that the Custodian makes no representation and has no responsibilities as to the authenticity of such documents, their compliance with applicable law, or the collectability of any of the Mortgage Loans relating thereto; (c) based upon its examination, and only as to the foregoing documents, the information set forth on the Mortgage Loan Schedule accurately reflects, within permitted tolerances, the information reviewed by the Custodian with respect to each Mortgage Loan; and (d) each Mortgage Note has been endorsed and each assignment has been assigned as required under Section 2.01 of the Pooling & Servicing Agreement.<br><br>JPMORGAN CHASE BANK, N.A., as Custodian" |
| MABS Exhibit H | "Gentlemen:<br><br>In accordance with Section 2.02 of the above-captioned Pooling and Servicing Agreement (the 'Pooling and Servicing Agreement'), the undersigned, as Custodian acting on behalf of the Trustee with respect to the related Mortgage Loans, hereby certifies that, as to each related Mortgage Loan listed in the Mortgage Loan Schedule (other than any related Mortgage Loan paid in full or any related Mortgage Loan listed on the attached schedule) it has received:<br><br>(i) the original Mortgage Note endorsed in the form provided in Section 2.01(b) of the Pooling and Servicing Agreement, with all intervening endorsements showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note.<br>(ii) The original recorded Mortgage.<br>(iii) A duly executed assignment of the Mortgage in the form provided in Section 2.01(b) of the Pooling and Servicing Agreement, or, if the Depositor has certified or the Custodian otherwise knows that the related Mortgage has not been returned from the applicable recording office, a copy of the assignment of the Mortgage (excluding information to be provided by the recording office). |

## Exhibit C

| | |
|---|---|
| | (iv) The original or duplicate original recorded assignment or assignments of the Mortgage showing a complete chain of assignment from the originator to the Depositor. (v) The original or duplicate original lender's title policy and all riders thereto.

Based on its review and examination and only as to the foregoing documents, (a) such documents appear regular on their face and related to such Mortgage Loan, and (b) the information set forth in items (1), (2), (3), (4), (9), (16) and (21) of the definition of the 'Mortgage Loan Schedule' in Section 1.01 of the Pooling and Servicing Agreement accurately reflects information set forth in the Mortgage File.   The Custodian on behalf of the Trustee has made no independent examination of any documents contained in each related Mortgage File beyond the review specifically required in the Pooling and Servicing Agreement.

The Custodian on behalf of the Trustee makes no representations as to: (i) the validity, legality, sufficiency, enforceability or genuineness of any of the documents contained in each related Mortgage File of any of the related Mortgage Loans identified on the Mortgage Loan Schedule, or (ii) the collectability, insurability, effectiveness or suitability of any such Mortgage Loan.

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Pooling and Servicing Agreement.

        [NAME OF CUSTODIAN],
        as Custodian" |
| MSM PSA Exhibit L-2 | "Ladies and Gentlemen:

In accordance with and subject to the provisions of Section 2.02 of the Pooling and Servicing Agreement, the undersigned, as Custodian, hereby certifies that, except for the exceptions noted on the schedule attached hereto, (a) all documents required to be delivered to the Custodian pursuant to Sections 2.01(a)(i) through (iv) and (ix)(b), (c) (solely to the extent of the UCC-1), (g) and (h), and if delivered to it, the documents identified in Section 2.01(a)(v) through (vii) and (ix)(c) (solely to the extent of the UCC-3) and (f) of the Pooling and Servicing Agreement are in its possession, (b) such documents have been reviewed by it and have not been mutilated, damaged, defaced, torn or otherwise physically altered, and such documents relate to such Mortgage Loan, (c) based on its examination and only as to the foregoing documents, these documents with respect to each Mortgage Loan accurately reflect the information contained in the Mortgage Note and Mortgage and |

## Exhibit C

| | |
|---|---|
| | (d) each Mortgage Note has been endorsed and each assignment of Mortgage has been delivered as provided in Section 2.01 of the Pooling and Servicing Agreement. The Custodian has made no independent examination of any documents contained in each Mortgage File beyond the review specifically mentioned above. The Custodian makes no representations as to: (i) the validity, legality, sufficiency, enforceability or genuineness of any of the documents delivered in accordance with Section 2.01 of the Pooling and Servicing Agreement or any of the Mortgage Loans identified in the Mortgage Loan Schedule, or (ii) the collectibility, insurability, effectiveness or suitability of any such Mortgage Loan.<br><br>The Custodian acknowledges receipt of notice that the Depositor has granted to the Trustee for the benefit of the Certificateholders a security interest in all of the Depositor's right, title and interest in and to the Mortgage Loans.<br><br>Capitalized terms used herein without definition shall have the meaning assigned to them in the Pooling and Servicing Agreement.<br><br>         [LASALLE BANK NATIONAL ASSOCIATION, as Custodian]<br><br>         [J.P. MORGAN TRUST COMPANY, NATIONAL ASSOCIATION, as Custodian]<br><br>         [WELLS FARGO BANK, NATIONAL ASSOCIATION,] as Custodian<br>         By: _____<br>         Authorized Representative" |
| TBW Custodial Agreement Exhibit 2 | "The TBW Custodial Agreement is not a publicly filed document. Based on information in the publicly filed prospectus supplement, the Final Certification attached as Exhibit 2 to the BSARM Custodial Agreement is in substantially the same form as the Final Certifications set forth herein and any differences are immaterial to the issues addressed in the Complaint.<br><br>This is based upon the definition of Final Certification (below) in the prospectus supplement:<br><br>"Final Certification: With respect to the Custodian, the certification required to be delivered by the Custodian not later than 90 days after the Closing Date to the Depositor, the Trustee, the Certificate |

**Exhibit C**

| | |
|---|---|
| | Insurer and the Transferor pursuant to Section 6 of the Custodial Agreement in the form annexed thereto as Exhibit 2." |
| WAMU PSA Exhibit M | "Ladies and Gentlemen:<br><br>In accordance with Section 2.07 of the above-captioned Pooling and Servicing Agreement, the undersigned, as [Trustee] [Initial Custodian], hereby certifies that, except as noted on the attachment hereto, as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or listed on the attachment hereto) it has reviewed the documents delivered to it pursuant to Section 2.05 of the Pooling and Servicing Agreement and has determined that (i) all documents required (in the case of instruments described in clauses (X)(ii), (X)(iv) and (Y)(ix) of the definition of 'Mortgage File,' known by it to be required) pursuant to the definition of 'Mortgage File' and Section 2.05 of the Pooling and Servicing Agreement to have been executed and received as of the date hereof are in its possession and (ii) all such documents have been executed and relate to the Mortgage Loans identified in the Mortgage Loan Schedule. The [Trustee] [Initial Custodian] has made no independent examination of such documents beyond the review specifically required in the above referenced Pooling and Servicing Agreement and has relied upon the purported genuineness and due execution of any such documents and upon the purported genuineness of any signature thereon. The [Trustee] [Initial Custodian] makes no representations as to: (i) the validity, legality, enforceability or genuineness of any of the documents contained in each Mortgage File or any of the Mortgage Loans identified on the Mortgage Loan Schedule, or (ii) the collectability, insurability, effectiveness or suitability of any such Mortgage Loan. Capitalized words and phrases used herein shall have the respective meanings assigned to them in the above-captioned Pooling and Servicing Agreement.<br><br>_____<br>as [Trustee] [Initial Custodian]" |
| WFMBS PSA Exhibit O | "Ladies and Gentlemen:<br><br>In accordance with the provisions of Section 2.02 of the above-referenced Pooling and Servicing Agreement (the 'Pooling and Servicing Agreement'), the undersigned, as Custodian on behalf of the Trustee, hereby certifies that, as to each Mortgage Loan listed in the Mortgage Loan Schedule, except as may be specified in any list of exceptions attached hereto, such Mortgage File contains all of the items required to be delivered pursuant to Section 2.01 of the Pooling and Servicing Agreement. |

## Exhibit C

| | |
|---|---|
| | The Custodian has made no independent examination of any documents contained in each Mortgage File beyond the review specifically required in the Pooling and Servicing Agreement in connection with this final certification. The Custodian makes no representations as to: (i) the validity, legality, sufficiency, enforceability, recordability or genuineness of any of the documents contained in each Mortgage File or any of the Mortgage Loans identified in the Mortgage Loan Schedule or (ii) the 39collectability, insurability, effectiveness or suitability of any such Mortgage Loan.<br><br>Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Pooling and Servicing Agreement.<br><br>WELLS FARGO BANK, N.A.,<br>as Custodian on behalf of the Trustee" |

## Section VI

| | |
|---|---|
| BAFC PSA § 2.02 | "If, in the course of such review, the Trustee or a Custodian finds any document constituting a part of a Mortgage File which does not meet the requirements of Section 2.01 or is omitted from such Mortgage File or if the Depositor, the Master Servicer, the Trustee, a Custodian, the NIMS Insurer or the Securities Administrator discovers a breach by a Servicer, North Fork Bank, the Sponsor or the Depositor of any representation, warranty or covenant under the Servicing Agreements, the North Fork Assignment Agreements, the Mortgage Loan Purchase Agreement or this Agreement, as the case may be, in respect of any Mortgage Loan and such breach materially adversely affects the interest of the Certificateholders in the related Mortgage Loan (provided that any such breach that causes the Mortgage Loan not to be a 'qualified mortgage' within the meaning of Section 860G(a)(3) of the Code shall be deemed to materially and adversely affect the interests of the Certificateholders), then such party shall promptly so notify the Master Servicer, the Sponsor, such Servicer, North Fork Bank (if applicable), the Securities Administrator, the Trustee, the NIMS Insurer and the Depositor of such failure to meet the requirements of Section 2.01 or of such breach and request that the applicable Servicer, North Fork Bank, the Sponsor or the Depositor, as applicable, deliver such missing documentation or cure such defect or breach within 90 days of its discovery or its receipt of notice of any such failure to meet the requirements of Section 2.01 or of such breach. If the Trustee receives written notice that the Depositor, the Sponsor or the applicable Servicer or North Fork Bank, as the case |

## Exhibit C

| | |
|---|---|
| | may be, has not delivered such missing document or cured such defect or breach in all material respects during such period, the Trustee, on behalf of the Trust, shall enforce the applicable Servicer's, North Fork Bank's, the Sponsor's or the Depositor's obligation, as the case may be, under the applicable Servicing Agreement, the North Fork Bank Assignment Agreement, the Mortgage Loan Purchase Agreement or this Agreement, as the case may be, and cause the applicable Servicer, North Fork Bank, the Sponsor or the Depositor, as the case may be, to either (a) other than in the case of North Fork Bank, substitute for the related Mortgage Loan a Substitute Mortgage Loan, which substitution shall be accomplished in the manner and subject to the conditions set forth below or (b) purchase such Mortgage Loan from the Trust at the Purchase Price for such Mortgage Loan; provided, however, that in no event shall such a substitution occur more than two years from the Closing Date; provided, further, that such substitution or repurchase must occur within 90 days of when such defect was discovered if such defect will cause the Mortgage Loan not to be a 'qualified mortgage' within the meaning of Section 860G(a)(3) of the Code." |
| BSARM SSA § 2.02(a) | "In performing any such review, the Custodian may conclusively rely on the purported due execution and genuineness of any such document and on the purported genuineness of any signature thereon. If the Custodian finds any document constituting part of the Mortgage File has not been executed or received, or is unrelated, determined on the basis of the Mortgagor name, original principal balance and loan number, to the Initial Mortgage Loans identified in Exhibit A, or the Subsequent Mortgage Loans identified on Exhibit 1 to the related Subsequent Transfer Instrument, as the case may be, or does not conform on its face to the review criteria specified in this Section (a 'Material Defect'), the Custodian shall notify the Seller and the Indenture Trustee of such Material Defect in writing. In accordance with the Mortgage Loan Purchase Agreement or the applicable Subsequent Mortgage Loan Purchase Agreement, as the case may be, the Seller shall correct or cure any such Material Defect within ninety (90) days from the date of notice from the Indenture Trustee of the defect and if the Seller fails to correct or cure the Material Defect within such period, the Indenture Trustee shall enforce the Seller's obligation under the Mortgage Loan Purchase Agreement or the applicable Subsequent Mortgage Loan Purchase Agreement, as the case may be, within 90 days from the Indenture Trustee's notification, provide a Substitute Mortgage Loan or purchase such Mortgage Loan at the Repurchase Price; provided, however, that if such Material Defect relates solely to the inability of the Seller to deliver the original Security Instrument or intervening assignments thereof, |

## Exhibit C

<table>
<tr>
<td></td>
<td>or a certified copy because the originals of such documents, or a certified copy have not been returned by the applicable jurisdiction, the Seller shall not be required to purchase such Mortgage Loan if the Seller delivers such original documents or certified copy promptly upon receipt, but in no event later than 360 days after the Closing Date. The foregoing repurchase obligation shall not apply in the event that the Seller cannot deliver such original or copy of any document submitted for recording to the appropriate recording office in the applicable jurisdiction because such document has not been returned by such office; provided that the Seller shall instead deliver a recording receipt of such recording office or, if such receipt is not available, a certificate confirming that such documents have been accepted for recording, and delivery to the Custodian shall be effected by the Seller within thirty days of its receipt of the original recorded document."</td>
</tr>
<tr>
<td>Citibank PSA § 2.3</td>
<td>"Each of CMSI, CitiMortgage and the Trustee will promptly notify the other parties if it discovers a breach of any of the representations and warranties in section 2.2 that materially and adversely affects the interests of the certificate holders or any Insurer in a mortgage loan (including a mortgage loan substituted for a nonconforming mortgage loan pursuant to section 2.4) (a *material breach*). . . . Pursuant to the Mortgage Document Custodial Agreement, the Mortgage Document Custodian will review each mortgage file within 90 days after the closing date to ascertain that all required documents have been executed, received and recorded, if applicable, and that such documents relate to the mortgage loans identified in exhibit B. If the Mortgage Document Custodian finds that a document in a mortgage file is missing or materially defective, the Mortgage Document Custodian will promptly notify CitiMortgage and CMSI by e-mail. (c) If CMSI is notified of a material breach, CMSI will have 60 days after the notice (or a longer period approved in advance in writing by a Responsible Officer of the Trustee) to cure the breach in all material respects, or to repurchase the mortgage loan or substitute eligible substitute mortgage loans, as provided in this section 2.3. . . . If CMSI is notified by the Mortgage Document Custodian that the documentation for a mortgage loan is defective, CMSI will have 180 days after the notice to cure the breach in all material respects, or to repurchase the mortgage loan or substitute eligible substitute mortgage loans, as provided in this section 2.3, except that CMSI will only have 90 days after the notice to cure, cure, repurchase, or substitute if the defect causes the mortgage loan to fail to be a 'qualified mortgage' under Internal Revenue Code section 860G(a)(3). . . . CMSI may, instead of repurchasing a mortgage loan pursuant to this section 2.3, substitute one or more eligible substitute mortgage loans (as defined below) for one or more</td>
</tr>
</table>

## Exhibit C

| | |
|---|---|
| | nonconforming mortgage loans. Such a substitution will take place on a business day designated by CMSI (the *substitution day*) occurring before the second anniversary of the startup day. . . ." |
| Credit Suisse PSA § 2.03(c) | "Upon discovery by any of the parties hereto of a breach of a representation or warranty made pursuant to Section 2.03(b) that materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach shall give prompt notice thereof to the other parties. Each Seller hereby covenants that within 90 days of the earlier of its discovery or its receipt of written notice from any party of a breach of any representation or warranty made by it pursuant to Section 2.03(b) which materially and adversely affects the interests of the Certificateholders in any Mortgage Loan sold by the related Seller to the Trust, it shall cure such breach in all material respects, and if such breach is not so cured, shall, (i) if such 90 day period expires prior to the second anniversary of the Closing Date, remove such Mortgage Loan (a 'Deleted Mortgage Loan') from the Trust Fund and substitute in its place a Qualified Substitute Mortgage Loan, in the manner and subject to the conditions set forth in this Section; or (ii) repurchase the affected Mortgage Loan or Mortgage Loans at the Purchase Price in the manner set forth below; provided, however, that any such substitution pursuant to (i) above shall not be effected prior to the delivery to the Trustee and the Trust Administrator of the Opinion of Counsel required by Section 2.05 hereof, if any, and any such substitution pursuant to (i) above shall not be effected prior to the additional delivery to the Trustee or the Trust Administrator of a Request for Release substantially in the form of Exhibit K relating to the Deleted Mortgage Loan and the Mortgage File for any such Qualified Substitute Mortgage Loan. The related Seller shall promptly reimburse the Trustee, the Trust Administrator, the Special Servicer and the related Servicer (if such Servicer is not the Seller of such Mortgage Loan) for any actual out of pocket expenses reasonably incurred by the Trustee, the Trust Administrator, the Special Servicer and the related Servicer (if such Servicer is not the Seller of such Mortgage Loan) in respect of enforcing the remedies for such breach. With respect to any representation and warranties described in this Section which are made to the best of a Seller's knowledge, if it is discovered by any of the Depositor, the Master Servicer, the Sellers, any Servicer, the Special Servicer, the Trustee or the Trust Administrator that the substance of such representation and warranty is inaccurate and such inaccuracy materially and adversely affects the value of the related Mortgage Loan or the interests of the Certificateholders therein, notwithstanding the related Seller's lack of knowledge with respect to the substance of |

**Exhibit C**

| | |
|---|---|
| | such representation or warranty, such inaccuracy shall be deemed a breach of the applicable representation or warranty." |
| GSR MSTA § 2.03(d) | "Within 90 days of the earlier of its discovery or receipt of notice by the Depositor of the breach of any of its representations or warranties set forth in Section 2.04 hereof with respect to any Mortgage Loan, which breach materially and adversely affects the value of the related Mortgage Loan or the interest of the Trust therein (it being understood that any such defect or breach shall be deemed to have materially and adversely affected the value of the related Mortgage Loan or the interest of the Trust therein if the Trust incurs a loss as a result of such defect or breach), the Depositor shall (i) cure such breach in all material respects, or (ii) purchase the Mortgage Loan from the Trustee. |
| | In the event the Depositor has breached a representation or warranty under Section 2.04 hereof that is substantially identical to a representation or warranty breached by a Servicer or Seller, the Trustee shall first proceed against the applicable Servicer or Seller, as appropriate. If such Servicer or Seller, as appropriate, does not within the cure period set forth in the related Sale Agreement or Servicing Agreement, as applicable, either take steps to cure such breach (which may be evidenced by a certificate asking for an extension of time in which to effectuate a cure) or complete the purchase of the Mortgage Loan, then (i) the Trustee shall enforce the obligations of the Depositor to cure such breach or to purchase the Mortgage Loan from the Trust, and (ii) the Depositor shall succeed to the rights of the Trustee to enforce the obligations of such Servicer or Seller to cure such breach or repurchase such Mortgage Loan under the related Servicing Agreement or Sale Agreement, as applicable, with respect to such Mortgage Loan. Notwithstanding the foregoing, however, if so requested by the Depositor, which request shall be in writing and shall be delivered to the Trustee within such cure period, the Trustee shall, in lieu of enforcing such cure or purchase obligation against such Servicer or Seller, as applicable, permit the Depositor to substitute for such Mortgage Loan a Qualified Substitute Mortgage Loan *plus* any applicable Substitution Adjustment Amount. |
| | Notwithstanding the foregoing, however, if any breach of a representation or warranty by the Depositor is a Qualification Defect, a cure, purchase or substitution must take place within 75 days of the Defect Discovery Date." |
| JPMorgan PSA § 2.05 | "Upon discovery by the Depositor, the Seller or the related Originator or receipt of written notice of any materially defective document in, or, following the date of delivery to the Trustee of the Custodian's certifications as required under the related Custodial |

**Exhibit C**

Agreements, that a document is missing from, a Trustee Mortgage File, or discovery by the Trustee, the Securities Administrator, the Depositor, the Seller or the related Originator of the breach by such Originator or Seller of any representation or warranty under the related Purchase and Servicing Agreement or Purchase Agreement, as applicable, as modified by the Acknowledgement, in the case of the Originator, or under this Agreement, in the case of the Seller, in respect of any Mortgage Loan which materially adversely affects the value of that Mortgage Loan or the interest therein of the Certificateholders (a 'Defective Mortgage Loan') ( each of the Depositor, the Seller and the related Originator hereby agreeing to give written notice thereof to the Trustee, the Securities Administrator and the other of such parties), the Securities Administrator, or its designee, shall promptly notify the Depositor, the Trustee and the Seller or the related Originator, as applicable, in writing of such defective or missing document or breach and request that the Seller or related Originator deliver such missing document or cure or cause the cure of such defect or breach within a period of time specified in the related Purchase and Servicing Agreement or Purchase Agreement, as applicable, and if the Trustee receives written notice that the Seller or related Originator, as applicable, has not delivered such missing document or cured such defect or breach in all material respects during such period, the Trustee, on behalf of the Trust, shall enforce the obligations of the related Originator under the related Purchase and Servicing Agreement or Purchase Agreement, as applicable, as modified by the Acknowledgement or, to the extent that the related Originator fails to cure such defect or breach, the Seller under this Agreement, and shall cause the related Originator or the Seller, as the case may be, to repurchase that Mortgage Loan from the Trust Fund at the Purchase Price on or prior to the Determination Date following the expiration of such specified period (subject to Section 2.05(b) below); provided, however, that, in connection with any such breach that could not reasonably have been cured within such specified period (unless permitted a greater period of time to cure under the related Purchase and Servicing Agreement or Purchase Agreement, as applicable), subject to Section 2.05 (c) below, if the related Originator or the Seller, as applicable, shall have commenced to cure such breach within such specified period, the related Originator or the Seller shall be permitted to proceed thereafter diligently and expeditiously to cure the same within such additional time as is reasonably determined by the Trustee to cure such breach. To the extent that any costs and damages are incurred by the Trust Fund as a result of any violation of any applicable federal, state, or local predatory or abusive lending law arising from or in connection with the origination of any Mortgage Loan

**Exhibit C**

| | |
|---|---|
| | repurchased by the related Originator or the Seller, such costs and damages shall be included in the Purchase Price of such repurchased Mortgage Loan and shall be borne by the Seller. The Purchase Price for the repurchased Mortgage Loan shall be deposited in the related Distribution Account, and the Trustee, or its designee, upon receipt of written certification from the Securities Administrator of such deposit, shall release or cause the Custodian to release to the related Originator or the Seller, as applicable, the related Trustee Mortgage File and shall execute and deliver such instruments of transfer or assignment, in each case without recourse, representation or warranties, as either party shall furnish to it and as shall be necessary to vest in such party any Mortgage Loan released pursuant hereto and the Trustee, or its designee, shall have no further responsibility with regard to such Trustee Mortgage File (it being understood that the Trustee shall have no responsibility for determining the sufficiency of such assignment for its intended purpose). If pursuant to the foregoing provisions the related Originator or the Seller repurchases a Mortgage Loan that is a MERS Mortgage Loan, the related Servicer shall cause MERS to designate on the MERS® System the related Originator or the Seller, as applicable, as the beneficial holder of such Mortgage Loan. In lieu of repurchasing any such Mortgage Loan as provided above, either party may cause such Mortgage Loan to be removed from the Trust Fund (in which case it shall become a Deleted Mortgage Loan) and substitute one or more Replacement Mortgage Loans in the manner and subject to the limitations set forth in Section 2.05(b) below. It is understood and agreed that the obligations of the Originators and the Seller to cure or to repurchase (or to substitute for) any related Mortgage Loan as to which a document is missing, a material defect in a constituent document exists or as to which such a breach has occurred and is continuing shall constitute the sole remedy against the such party respecting such omission, defect or breach available to the Trustee on behalf of the Certificateholders. . . . Any substitution of Replacement Mortgage Loans for Deleted Mortgage Loans made pursuant to Section 2.05(a) above must be effected prior to the last Business Day that is within two years after the Closing Date." |
| MABS PSA § 2.03 | "Upon discovery by any the Depositor, the Transferor, the Master Servicer, the Trust Administrator or the Custodian of a breach of a representation or warranty made by the Transferor pursuant to this Section 2.03 that materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach shall give prompt notice thereof to the other parties and the Trustee. A breach which causes a Mortgage Loan not to constitute a 'qualified mortgage' within the meaning of Section 860G(a)(3) of the Code, will be deemed automatically to materially |

**Exhibit C**

|  | and adversely affect the interests of the Certificateholders in such Mortgage Loan. Upon receiving notice of a breach, the Trustee shall in turn notify the Transferor of such breach. The Trustee shall enforce the obligations of the Transferor in accordance with this Section 2.03 to correct or cure any such breach of a representation or warranty made herein, and if the Transferor fails to correct or cure the defect within such period, and such defect materially and adversely affects the interests of the Certificateholders in the related Mortgage Loan, the Trustee shall enforce the Transferor's obligations hereunder to (i) purchase such Mortgage Loan at the Purchase Price or (ii) substitute for the related Mortgage Loan an Eligible Substitute Mortgage Loan. In each case, such Mortgage Loan (a 'Deleted Mortgage Loan') will be removed from the Trust Fund. The Transferor hereby covenants that within ninety (90) days of the earlier of its discovery or its receipt of written notice from any party of a breach of any representation or warranty made pursuant to this Section 2.03 which materially and adversely affects the interest of the Certificateholders in any Mortgage Loan, it shall cure such breach in all material respects, and if such breach is not so cured, shall, (i) if such ninety (90) day period expires prior to the second anniversary of the Closing Date, remove such Deleted Mortgage Loan from the Trust Fund and substitute in its place an Eligible Substitute Mortgage Loan or Mortgage Loans into the Trust Fund, in the manner and subject to the conditions set forth in this Section; or (ii) repurchase the affected Mortgage Loan or Mortgage Loans from the Trustee at the Purchase Price in the manner set forth below. The Transferor shall promptly reimburse the Master Servicer, the NIMS Insurer and the Trustee for any expenses reasonably incurred by the Master Servicer, the NIMS Insurer or the Trustee in respect of enforcing the remedies for such breach by the Transferor." |
|---|---|
| MSM PSA § 2.05 | "Upon discovery by the Depositor, the Seller or the related Originator or receipt of written notice of any materially defective document in, or, following the date of delivery to the Trustee of the Custodian's certifications as required under the related Custodial Agreements, that a document is missing from, a Trustee Mortgage File, or discovery by the Trustee, the Depositor, the Seller or the related Originator of the breach by such Originator or Seller of any representation or warranty under the related Purchase and Servicing Agreement, as modified by the Acknowledgement, in the case of the Originator, or under this Agreement, in the case of the Seller, in respect of any Mortgage Loan which materially adversely affects the value of that Mortgage Loan or the interest therein of the Certificateholders (a 'Defective Mortgage Loan') (each of the Depositor, the Seller and the related Originator hereby agreeing to give written notice thereof to the Trustee and the other of such |

**Exhibit C**

parties), the Trustee, or its designee, shall promptly notify the Depositor and the Seller or the related Originator, as applicable, in writing of such nonconforming or missing document or breach and request that the Seller or related Originator deliver such missing document or cure or cause the cure of such defect or breach within a period of time specified in the related Purchase and Servicing Agreement, and if the Seller or related Originator, as applicable, does not deliver such missing document or cure such defect or breach in all material respects during such period, the Trustee, shall enforce the obligations of the related Originator under the related Purchase and Servicing Agreement, as modified by the Acknowledgement, or the Seller under this Agreement, as applicable, and cause the related Originator or the Seller, as the case may be, to repurchase that Mortgage Loan from the Trust Fund at the Purchase Price on or prior to the Determination Date following the expiration of such specified period (subject to Section 2.05(c) below); provided, however, that, in connection with any such breach that could not reasonably have been cured within such specified period (unless permitted a greater period of time to cure under the related Purchase and Servicing Agreement), subject to Section 2.05(c) below, if the related Originator or the Seller, as applicable, shall have commenced to cure such breach within such specified period, the related Originator or the Seller shall be permitted to proceed thereafter diligently and expeditiously to cure the same within such additional time as is reasonably necessary to cure such breach. To the extent that the amount by which the Purchase Price (as defined in this Agreement) exceeds the repurchase price payable by the related Originator under the related Purchase and Servicing Agreement, including any costs and damages that are incurred by the Trust Fund as a result of any violation of any applicable federal, state, or local predatory or abusive lending law arising from or in connection with the origination of any Mortgage Loan repurchased by the related Originator or the Seller, the payment of such excess shall be borne by the Seller. The Purchase Price for the repurchased Mortgage Loan shall be deposited in the related Distribution Account, and the Trustee, or its designee, upon receipt of written certification from the Securities Administrator of such deposit, shall release or cause the Custodian to release to the related Originator or the Seller, as applicable, the related Trustee Mortgage File and shall execute and deliver such instruments of transfer or assignment, in each case without recourse, representation or warranties, as either party shall furnish to it and as shall be necessary to vest in such party any Mortgage Loan released pursuant hereto and the Trustee, or its designee, shall have no further responsibility with regard to such Trustee Mortgage File (it being understood that the Trustee shall

## Exhibit C

| | |
|---|---|
| | have no responsibility for determining the sufficiency of such assignment for its intended purpose). If pursuant to the foregoing provisions the related Originator or the Seller repurchases a Mortgage Loan that is a MERS Mortgage Loan, the related Servicer shall cause MERS to designate on the MERS(R) System the related Originator or the Seller, as applicable, as the beneficial holder of such Mortgage Loan. . . .<br><br>In lieu of repurchasing any such Mortgage Loan as provided above, either party may cause such Mortgage Loan to be removed from the Trust Fund (in which case it shall become a Deleted Mortgage Loan) and substitute one or more Replacement Mortgage Loans in the manner and subject to the limitations set forth in Section 2.05(b) below. It is understood and agreed that the obligations of the Originators and the Seller to cure or to repurchase (or to substitute for) any related Mortgage Loan as to which a document is missing, a material defect in a constituent document exists or as to which such a breach has occurred and is continuing shall constitute the sole remedy against the such party respecting such omission, defect or breach available to the Trustee on behalf of the Certificateholders. (b) Any substitution of Replacement Mortgage Loans for Deleted Mortgage Loans made pursuant to Section 2.05(a) above must be effected prior to the last Business Day that is within two years after the Closing Date." |
| TBW PSA § 2.03 | "Upon discovery by any of the Depositor, the Certificate Insurer, the Transferor, the Master Servicer, the Trust Administrator or the Custodian of a breach of a representation or warranty made by the Transferor pursuant to this Section 2.03 that materially and adversely affects the interests of the Certificateholders or the Certificate Insurer in any Mortgage Loan, the party discovering such breach shall give prompt notice thereof to the other parties and the Trustee. Notwithstanding the foregoing, a breach which causes a Mortgage Loan not to constitute a 'qualified mortgage' within the meaning of Section 860G(a)(3) of the Code will be deemed automatically to materially and adversely affect the interests of the Certificateholders in such Mortgage Loan. Upon receiving notice of a breach, the Trustee shall in turn notify the Transferor of such breach. The Trustee shall enforce the obligations of the Transferor in accordance with this Section 2.03 to correct or cure any such breach of a representation or warranty made herein, and if the Transferor fails to correct or cure the defect within such period, and such defect materially and adversely affects the interests of the Certificateholders or the Certificate Insurer in the related Mortgage Loan, the Trustee shall enforce the Transferor's obligations hereunder to (i) purchase such Mortgage Loan at the Purchase Price or (ii) substitute for the related Mortgage Loan an Eligible |

## Exhibit C

| | |
|---|---|
| | Substitute Mortgage Loan. In each case, such Deleted Mortgage Loan will be removed from the Trust Fund. The Transferor hereby covenants that within ninety (90) days of the earlier of its discovery or its receipt of written notice from any party of a breach of any representation or warranty made pursuant to this Section 2.03 which materially and adversely affects the interest of the Certificateholders or the Certificate Insurer in any Mortgage Loan, it shall cure such breach in all material respects, and if such breach is not so cured, shall, (i) if such ninety (90) day period expires prior to the second anniversary of the Closing Date, remove such Deleted Mortgage Loan from the Trust Fund and substitute in its place an Eligible Substitute Mortgage Loan or Mortgage Loans into the Trust Fund, in the manner and subject to the conditions set forth in this Section; or (ii) repurchase the affected Mortgage Loan or Mortgage Loans from the Trustee at the Purchase Price in the manner set forth below. The Transferor s hall promptly reimburse the Master Servicer, the NIMS Insurer, the Certificate Insurer and the Trustee for any expenses reasonably incurred by the Master Servicer, the NIMS Insurer, the Certificate Insurer or the Trustee in respect of enforcing the remedies for such breach by the Transferor." |
| WAMU PSA § 2.07 | "If the Trustee finds any document or documents required to be included in the Mortgage File for a Mortgage Loan pursuant to the definition of 'Mortgage File' not to have been executed and received, the Trustee shall promptly so notify the Servicer. An exception report delivered by the Custodian to the Servicer pursuant to the Custodial Agreement shall be deemed to constitute such notice. Upon notice from the Trustee or the Custodian that any document required to be included in the Mortgage File for a Mortgage Loan has not been executed and received, the Servicer shall promptly notify the applicable Seller of such defect and take appropriate steps on behalf of the Trust to enforce such Seller's obligation, pursuant to Section 2.4 of the Mortgage Loan Purchase Agreement, to correct or cure such defect or repurchase or substitute for such Mortgage Loan, in accordance with and subject to the time limitations set forth in such Section 2.4; *provided, however,* that the Servicer shall not require or permit a Seller to repurchase a Mortgage Loan pursuant to such Section 2.4 of the Mortgage Loan Purchase Agreement more than two years after the Closing Date. . . ." |
| WFMBS PSA § 2.02 | "If within such 45 day period the Custodian finds any document constituting a part of an Owner Mortgage Loan File not to have been executed or received or to be unrelated to the Mortgage Loans identified in the Mortgage Loan Schedule or not to appear regular on its face, the Custodian shall promptly (and in no event more than 30 days after completion of the review) notify the Trustee and the |

## Exhibit C

| | |
|---|---|
| | Trustee shall notify the Depositor. The Depositor shall have a period of 60 days after the date of such notice within which to correct or cure any such defect. The Depositor hereby covenants and agrees that, if any material defect is not so corrected or cured, the Depositor will, not later than 60 days after the Trustee's notice to it referred to above respecting such defect, either (i) repurchase the related Mortgage Loan or any property acquired in respect thereof from the Trust Estate at a price equal to the Repurchase Price or (ii) if within two years of the Startup Day. . . ." |

### Section VII

| | |
|---|---|
| BAFC PSA § 9.01 | "In case an Event of Default has occurred of which a Responsible Officer of the Trustee shall have actual knowledge (which has not been cured or waived), the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a reasonably prudent investor would exercise or use under the circumstances in the conduct of such investor's own affairs. . . . The Trustee and the Securities Administrator, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to the Trustee and the Securities Administrator which are specifically required to be furnished pursuant to any provision of this Agreement. No provision of this Agreement shall be construed to relieve the Trustee or the Securities Administrator from liability for its own grossly negligent action, its own grossly negligent failure to act or its own willful misfeasance. . . . The Trustee shall not be charged with knowledge of any default or an Event of Default under Section 8.01 unless a Responsible Officer of the Trustee obtains actual knowledge of such default or Event of Default or any Responsible Officer of the Trustee receives written notice of such default or Event of Default at its Corporate Trust Office from the Master Servicer, the Securities Administrator, the Depositor or any Certificateholder. The Securities Administrator shall not be charged with knowledge of any default or an Event of Default under Section 8.01 unless a Responsible Officer of the Securities Administrator obtains actual knowledge of such failure or -144- event or any Responsible Officer of the Securities Administrator receives written notice of such default or Event of Default at its Corporate Trust Office from the Master Servicer, the Trustee, the Depositor or any Certificateholder." |
| BSARM Indenture § 6.01 | "If an Event of Default has occurred and is continuing, the Indenture Trustee shall exercise the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the |

**Exhibit C**

| | |
|---|---|
| | circumstances in the conduct of such person's own affairs. (b) Except during the continuance of an Event of Default of which the Indenture Trustee has actual knowledge or has received written notice, in the case of the Indenture Trustee and, at any time, in the case of the Securities Administrator:<br><br>(i) the Indenture Trustee and the Securities Administrator undertakes to perform such duties and only such duties as are specifically set forth in this Indenture and the other Basic Documents to which it is a party and no implied covenants or obligations shall be read into this Indenture and the other Basic Documents against the Indenture Trustee or the Securities Administrator; and<br>(ii) in the absence of bad faith on its part, the Indenture Trustee and the Securities Administrator may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates, reports, documents, Issuer Requests or other instruments or opinions furnished to each of the Indenture Trustee and the Securities Administrator and conforming to the requirements of this Indenture or the other Basic Documents; however, the Indenture Trustee and the Securities Administrator shall examine the certificates, reports, documents, Issuer Requests or other instruments and opinions to determine whether or not they conform on their face to the requirements of this Indenture.<br><br>(c) The Indenture Trustee and the Securities Administrator may not be relieved from liability for each of its own negligent action, its own negligent failure to act or its own willful misconduct, except that:<br><br>(i) this paragraph does not limit the effect of paragraph (b) of this Section 6.01;<br>(ii) neither the Indenture Trustee nor the Securities Administrator shall not be liable for any error of judgment made in good faith by a Responsible Officer unless it is proved that the Indenture Trustee or the Securities Administrator, as applicable, was negligent in ascertaining the pertinent facts; and<br>(iii) neither the Indenture Trustee nor the Securities Administrator shall be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it from Noteholders, the Certificateholders or from the Issuer, which they are entitled to give under the Basic Documents." |
| Citibank PSA § 8.1 | "If the Trustee has notice that an Event of Default is continuing, then notwithstanding anything to the contrary in this agreement, the Trustee will exercise those rights and powers vested in it by this agreement, and use the same degree of care and skill in their |

**Exhibit C**

| | |
|---|---|
| | exercise, as a prudent man would exercise under the circumstances in the conduct of his own affairs. If the Trustee is incorporated or organized under the laws of the State of New York, then, in considering what actions are prudent in the circumstances, the Trustee will consider, to the extent applicable, the matters enumerated in Section 126(2) (a) through (e) of the New York Real Property Law, as in effect on the date of this agreement, and will comply with subdivisions (3),(4) and (5) of Section 126 of the New York Real Property Law, as in effect on the date of this agreement. The Trustee will not be charged with notice of an Event of Default (other than a default in payment to the Trustee) unless a Responsible Officer of the Trustee obtains actual knowledge of such failure or receives written notice of such Event of Default at its corporate trust office from CitiMortgage or the holders of the Required Amount of Certificates." |
| Credit Suisse PSA § 9.01 | "In case an Event of Default of which a Responsible Officer of the Trustee shall have actual knowledge has occurred and remains uncured, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs. . . . The Trustee, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to the Trustee that are specifically required to be furnished pursuant to any provision of this Agreement shall examine them to determine whether they conform to the requirements of this Agreement. The Trustee shall have no duty to recompute, recalculate or verify the accuracy of any resolution, certificate, statement, opinion, report, document, order or other instrument so furnished to the Trustee. If any such instrument is found not to conform in any material respect to the requirements of this Agreement. . . . If any such instrument is found not to conform in any material respect to the requirements of this Agreement, the Trustee shall notify the Certificateholders of such instrument in the event that the Trustee, after so requesting, does not receive a satisfactorily corrected instrument. No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own misconduct, its negligent failure to perform its obligations in compliance with this Agreement, or any liability which would be imposed by reason of its willful misfeasance or bad faith. . . . The Trustee shall not be deemed to have knowledge of any Event of Default or event which, with notice or lapse of time, or both, would become an Event of Default, unless a Responsible Officer of the Trustee shall have received written notice thereof from a Servicer, the Depositor or a Certificateholder, or a Responsible Officer of the |

**Exhibit C**

| | |
|---|---|
| | Trustee has actual notice thereof, and in the absence of such notice no provision hereof requiring the taking of any action or the assumption of any duties or responsibility by the Trustee following the occurrence of any Event of Default or event which, with notice or lapse of time or both, would become an Event of Default, shall be effective as to the Trustee." |
| GSR MSTA § 9.01 | "The Trustee, prior to the occurrence of a Master Servicer Event of Default and after the curing of any such Master Servicer Event of Default, undertakes to perform such duties and only such duties as are specifically set forth in the Trust Agreement. Notwithstanding anything to the contrary herein, the appointment by the Trustee of Wells Fargo Bank, N.A. as Securities Administrator to perform the duties and obligations specifically set forth in Sections 2.03, 3.01, 3.02, 3.03, 3.05, 4.01, 4.03, 4.04, 5.02, 5.03, 5.04, 5.08, 7.01, 7.02 and 10.03 hereof, and any other duties and obligations as may be set forth in a letter agreement between Wells Fargo Bank, N.A. and the Trustee, shall not release the Trustee from its duty to perform such duties and obligations hereunder. During a Master Servicer Event of Default relating to the Trustee of which a Responsible Officer of the Trustee has notice, the Trustee shall exercise such of the rights and powers vested in it by the Trust Agreement and use the same degree of care and skill in their exercise as a prudent Person would exercise or use under the circumstances in the conduct of such Person's own affairs.<br><br>The Trustee upon receipt of all resolutions, certificates, statements, reports, documents, orders or other instruments created by any Person other than itself and furnished to it which are specifically required to be furnished pursuant to any provision of the Trust Agreement, Custodial Agreement, Servicing Agreement, Sale Agreement or Assignment Agreement shall examine them to determine whether they conform to the requirements of such agreement; *provided, however*, that the Trustee shall not be under any duty to recalculate, verify or recompute the information provided to it hereunder by the Servicer or the Depositor. If any such instrument is found not to conform to the requirements of such agreement in a material manner, the Trustee shall take action as it deems appropriate to have the instrument corrected, and if the instrument is not corrected to its satisfaction, then it will provide notice thereof to the other and to the Certificateholders.<br><br>No provision of the Trust Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct; *provided, however*, that: |

**Exhibit C**

(a) Prior to the occurrence of any Master Servicer Event of Default and after the curing of all of such Events of Default, the respective duties and obligations of the Trustee shall be determined solely by the express provisions of the Trust Agreement (including the obligation, if any, of the Trustee to enforce each Servicing Agreement against the related Servicer, each Custodial Agreement against the related Custodian, each Sale Agreement against the related Seller, each Assignment Agreement against GSMC and otherwise to act as owner under such agreements for the benefit of the Certificateholders), the Trustee shall not be liable except for the performance of the respective duties and obligations as are specifically set forth in the Trust Agreement, no implied covenants or obligations shall be read into the Trust Agreement against the Trustee and, in the absence of bad faith on the part of the Trustee, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee that conform to the requirements of the Trust Agreement;

(b) The Trustee shall not be personally liable for an error of judgment made in good faith by an Officer of the Trustee unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts;

(c) The Trustee shall not be personally liable with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the direction of Holders of Certificates entitled to at least 25% of the Voting Rights relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under the Trust Agreement;

(d) Any determination of negligence, bad faith, willful misconduct or breach of conduct of the Trustee shall be made only upon a finding that there is clear and convincing evidence (and not upon the mere preponderance of evidence) thereof in a proceeding before a court of competent jurisdiction in which the Trustee has had an opportunity to defend; and

(e) In no event shall the Trustee be held liable for the actions or omissions of any Master Servicer, Securities Administrator, Servicer or Custodian (excepting the Trustee's own actions as Master Servicer, Securities Administrator, Servicer or Custodian). Prior to the occurrence of any Event of Default and after the curing of all such Events of Default, other than those obligations assumed by the Trustee as successor Servicer under Article VII, no provision of the Trust Agreement shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for

## Exhibit C

| | |
|---|---|
| | believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it unless such risk or liability relates to duties set forth herein." |
| JPMorgan PSA § 6.01 | "If an Event of Default has occurred and has not otherwise been cured or waived, the Trustee shall exercise such of the rights and powers vested in it by this Agreement and use the same degree of care and skill in their exercise as a prudent Person would exercise or use under the circumstances in the conduct of such Person's own affairs, unless the Trustee is acting as master servicer of the Mortgage Loans, in which case it shall use the same degree of care and skill as a master servicer of the Mortgage Loans hereunder. . . . No provision of this Agreement shall be construed to relieve the Trustee or the Securities Administrator from liability for its own negligent action, its own negligent failure to act or its own willful misconduct. . . ." |
| MABS PSA § 8.01 | "The Trustee, prior to the occurrence of a Master Servicer Event of Termination and after the curing or waiver of all Master Servicer Events of Termination that may have occurred, shall undertake to perform such duties and only such duties as are specifically set forth in this Agreement. In case a Master Servicer Event of Termination has occurred and remains uncured or unwaived, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs, but only until such time as a successor Master Servicer shall have been appointed hereunder.<br><br>The Trustee, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to the Trustee that are specifically required to be furnished pursuant to any provision of this Agreement shall examine them to determine whether they are in the form required by this Agreement to the extent that forms of such documents have been provided to the Trustee; provided, however, that the Trustee shall not be responsible for the accuracy or content of any such resolution, certificate, statement, opinion, report, document, order or other instrument. If any such instrument is found not to conform in any material respect to the requirements of this Agreement, the Trustee shall notify the NIMS Insurer and the Certificateholders of such non-conforming instrument in the event the Trustee, after so requesting, does not receive a satisfactorily corrected instrument.<br><br>No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct. . . ." |

**Exhibit C**

| MSM PSA § 6.01 | "If an Event of Default has occurred and has not otherwise been cured or waived, the Trustee or the Securities Administrator shall exercise such of the rights and powers vested in it by this Agreement and use the same degree of care and skill in their exercise as a prudent Person would exercise or use under the circumstances in the conduct of such Person's own affairs, unless the Trustee is acting as master servicer, in which case it shall use the same degree of care and skill (in its capacity as successor Master Servicer) as a master servicer hereunder. . . . No provision of this Agreement shall be construed to relieve the Trustee or the Securities Administrator from liability for its own negligent action, its own negligent failure to act or its own willful misconduct. . . ." |
|---|---|
| TBW PSA § 8.01 | "The Trustee, prior to the occurrence of a Master Servicer Event of Termination and after the curing or waiver of all Master Servicer Events of Termination that may have occurred, shall undertake to perform such duties and only such duties as are specifically set forth in this Agreement. In case a Master Servicer Event of Termination has occurred and remains uncured or unwaived, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs, but only until such time as a successor Master Servicer shall have been appointed hereunder. The Trustee, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to the Trustee that are specifically required to be furnished pursuant to any provision of this Agreement shall examine them to determine whether they are in the form required by this Agreement to the extent that forms of such documents have been provided to the Trustee; provided, however, that the Trustee shall not be responsible for the accuracy or content of any such resolution, certificate, statement, opinion, report, document, order or other instrument. If any such instrument is found not to conform in any material respect to the requirements of this Agreement, the Trustee shall notify the NIMS Insurer, the Certificate Insurer and the Certificateholders of such non-conforming instrument in the event the Trustee, after so requesting, does not receive a satisfactorily corrected instrument. No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct. . . ." |
| WAMU PSA § 8.01 | "In case an Event of Default has occurred (which has not been cured or waived) the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own |

## Exhibit C

| | affiliation. (b) The Trustee, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to it which are specifically required to be furnished to it pursuant to any provision of this Agreement, shall examine them to determine whether they are in the form required by this Agreement; provided, however, that the Trustee shall not be responsible for the accuracy or content of any such certificate, statement, opinion, report, or other order or instrument furnished by the Company or Servicer to the Trustee pursuant to this Agreement. (c) No provision of this Agreement shall be construed to relieve the Trustee or the Delaware Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct. . . ." |
|---|---|
| WFMBS PSA § 8.01 | "In case an Event of Default has occurred (which has not been cured), the Trustee, subject to the provisions of Sections 7.01, 7.03, 7.04 and 7.05, shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in its exercise as a prudent investor would exercise or use under the circumstances in the conduct of such investor's own affairs. The Trustee, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to the Trustee, which are specifically required to be furnished pursuant to any provision of this Agreement, shall examine them to determine whether they are in the form required by this Agreement; provided, however, that the Trustee shall not be responsible for the accuracy or content of any certificate, statement, instrument, report, notice or other document furnished by the Master Servicer or the Servicers pursuant to Articles III, IV and IX. No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct. . . ." |

### Section VIII

| | |
|---|---|
| BAFC PSA § 5.05 | "No later than each Distribution Date, the Securities Administrator, based upon information supplied to it on the Master Servicer's Certificate, shall make available to each Holder of a Certificate, each Rating Agency and the Master Servicer, a single statement. . . . The Securities Administrator will make the Monthly Statement to Certificateholders (and, at its option, any additional files containing the same or additional information in an alternative format) available each month to Certificateholders, the NIMS Insurer and other parties to this Agreement via the Securities Administrator's Internet website. The Securities Administrator's Internet website shall initially be located at www.ctslink.com. Assistance in using the website can be obtained by calling the Securities |

## Exhibit C

| | |
|---|---|
| | Administrator's customer service desk at (866) 846-4526. Parties that are unable to use the website are entitled to have a paper copy mailed to them via first class mail by calling the customer service desk and indicating such." |
| BSARM Indenture § 7.04 | "The Securities Administrator will make the monthly statements provided for in this section (and, at its option, any additional files containing the same information in an alternative format) available each month to Noteholders, each Noteholder and each Certificateholder, the Depositor, the Issuer, the Seller, the Owner Trustee, the Certificate Paying Agent and the Rating Agency via the Securities Administrator's website. The Securities Administrator's website shall initially be located at www.ctslink.com. Assistance in using the website can be obtained by calling the Securities Administrator's customer service desk at (301) 815-6600. Parties that are unable to use the website are entitled to have a paper copy mailed to them via first class mail by calling the Securities Administrator's customer service desk and indicating such. The Securities Administrator may have the right to change the way the monthly statements are distributed in order to make such distribution more convenient and/or more accessible to the above parties and the Securities Administrator shall provide timely and adequate notification to all above parties regarding any such changes." |
| Citibank PSA § 3.14 | "On or before each distribution day, CitiMortgage will deliver to each certificate and residual certificate holder, any Insurer, the Trustee, the Paying Agent, each rating agency and each Underwriter, a distribution report. . . . The distribution report will provide appropriate introductory and explanatory information to introduce any material terms, parties or abbreviations used, and shall state the applicable record, determination and distribution dates. CitiMortgage will determine the format of the distribution report, and may include additional information relating to the series if CitiMortgage believes such information may be material to certificate holders. CitiMortgage will provide certificate holders that are federally insured savings and loan associations with certain reports, and will provide access to information and documentation regarding the mortgage loans included in the Trust Fund, sufficient to permit such associations to comply with applicable regulations of the Office of Thrift Supervision. Any report required by this subsection (a) to be delivered to any person will be deemed delivered when it is posted to CitiMortgage's website, www-.citimortgagembs.-com, or to any other website of which CitiMortgage gives prior notice to the person, and the person can access the statement or report on the website without paying an additional charge or subscription fee." |

## Exhibit C

| | |
|---|---|
| Credit Suisse PSA § 4.05 | "Not later than each Distribution Date, the Trust Administrator shall prepare and cause to be made available to each Certificateholder, the Master Servicer, each Servicer, the Trustee, the Depositor, and each Rating Agency, a statement. . . . The Trust Administrator will also make the monthly statements to Certificateholders available each month to each party referred to in Section 4.05(a) via the Trust Administrator's website. The Trust Administrator's website can be accessed at http://www.ctslink.com or at such other site as the Trust Administrator may designate from time to time. Persons that are unable to use the above website are entitled to have a paper copy mailed to them via first class mail by calling the Trust Administrator at 301-815-6600." |
| GSR MSTA § 4.01 | "On each Distribution Date, the Securities Administrator shall prepare a statement as to the distributions to be made on such date (the 'Distribution Statement'), based solely on information provided by the Servicers in the related Remittance Reports, and on each Distribution Date, such statement will be made available at a website located at http://www.ctslink.com to the Depositor and each Certificateholder. . . ." |
| JPMorgan PSA § 4.04 | "On each Distribution Date, the Securities Administrator shall have prepared and shall make available to the Trustee, the Depositor and each Certificateholder a written report. . . . The Securities Administrator shall make such reports available each month via the Securities Administrator's website at http://www.ctslink.com." |
| MABS PSA § 4.04 | "Not later than two Business Days prior to each Distribution Date, the Master Servicer shall prepare and make available to the Trust Administrator and not later than each Distribution Date, the Trust Administrator shall make available to each Certificateholder, the Depositor, the Rating Agencies, the NIMS Insurer, the Trustee and any other interested parties a statement. . . . The Trust Administrator will make a copy of each statement provided pursuant to this Section 4.03 (and, at its option, any additional files containing the same information in an alternative format) available each month to Certificateholders, the NIMS Insurer and other interested parties, and other parties to this Agreement via the Trust Administrator's internet website located at www.ctslink.com." |
| MSM PSA § 4.05 | "On each Distribution Date, the Securities Administrator shall have prepared and shall make available to the Trustee, the Depositor, the Rating Agencies and each Certificateholder a written report. . . . The Securities Administrator shall make such reports available each month via its website at http://www.ctslink.com." |
| TBW PSA § 4.04 | "Not later than two Business Days prior to each Distribution Date, the Master Servicer shall prepare and make available to the Trust Administrator and not later than each Distribution Date, the Trust Administrator shall make available to each Certificateholder, the Certificate Insurer, the Depositor, the Rating Agencies, the NIMS |

## Exhibit C

|  | Insurer, the Trustee and any other interested parties a statement. . . . The Trust Administrator will make a copy of each statement provided pursuant to this Section 4.04 (and, at its option, any additional files containing the same information in an alternative format) available each month to Certificateholders, the NIMS Insurer, the Certificate Insurer and other interested parties, and other parties to this Agreement via the Trust Administrator's internet website located at www.ctslink.com." |
|---|---|
| WAMU PSA § 4.05 | "With each distribution from the Certificate Account on a Distribution Date, the Trustee shall send to each Rating Agency and shall make available to each Certificateholder the statement required by Section 4.02(b). The Trustee may make available such statement and certain other information, including, without limitation, information required to be provided by the Trustee pursuant to Section 3.13, to Certificateholders through the Trustee's Corporate Trust home page on the world wide web. Such web page is currently located at www.etrustee.net." |
| WFMBS PSA § 4.04 | "On each Distribution Date, the Master Servicer shall make available in accordance with subsection (b) of this Section 4.04 to each Holder of a Certificate, the Trustee, the Paying Agent and the Depositor a statement (the 'Distribution Date Statement'). . . . The Master Servicer will make a copy of each Distribution Date Statement provided pursuant to this Section 4.04 (and, at its option, any additional files containing the same information in an alternative format) available each month to Certificateholders and other interested parties, and other parties to this Agreement via the Master Servicer's internet website, which in the case of Wells Fargo Bank, is located at www.ctslink.com." |

### Section IX

| BAFC PSA § 3.01 | "For and on behalf of the Certificateholders, the Master Servicer shall supervise, monitor and oversee the obligations of the Servicers to service and administer their respective Mortgage Loans in accordance with the terms of the applicable Servicing Agreement and shall have full power and authority to do any and all things which it may deem necessary or desirable in connection with such master servicing and administration. In performing its obligations hereunder, the Master Servicer shall act in a manner consistent with this Agreement, subject to the prior sentence, and with Customary Servicing Procedures. Furthermore, the Master Servicer shall oversee and consult with each Servicer as necessary from time-to-time to carry out the Master Servicer's obligations hereunder, shall receive, review and evaluate all reports, information and other data provided to the Master Servicer by each Servicer and shall cause each Servicer to perform and observe the covenants, obligations |
|---|---|

**Exhibit C**

| | |
|---|---|
| | and conditions to be performed or observed by such Servicer under the applicable Servicing Agreement. The Master Servicer shall independently and separately monitor each Servicer's servicing activities with respect to each related Mortgage Loan, reconcile the results of such monitoring with such information provided in the previous sentence on a monthly basis and coordinate corrective adjustments to the Servicers' and the Master Servicer's records, and based on such reconciled and corrected information, prepare the Master Servicer's Certificate and any other information and statements required hereunder." |
| BSARM SSA § 3.01<br><br>BSARM Indenture – Appendix A | "The Master Servicer shall supervise, monitor and oversee the obligations of the Servicers to service and administer the Mortgage Loans in accordance with the terms of the related Servicing Agreement and shall have full power and authority to do any and all things which it may deem necessary or desirable in connection with such master servicing and administration. In performing its obligations hereunder, the Master Servicer shall act in a manner consistent with Accepted Master Servicing Practices." BSARM SSA § 3.01.<br><br>"Accepted Master Servicing Practices: With respect to any Mortgage Loan, those customary mortgage servicing practices of prudent mortgage servicing institutions that master service Mortgage Loans of the same type and quality as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located, to the extent applicable to the Master Servicer (except in its capacity as successor to the Servicer)." BSARM Indenture, Appendix A. |
| Citibank PSA § 3.1(e) | "In connection with its servicing and master servicing, CitiMortgage. . . will master service the third-party mortgage loans, in accordance with prudent mortgage loan servicing standards and procedures accepted in the mortgage banking industry and in accordance with the Guide." |
| Credit Suisse PSA § 3.01; Article I | "For and on behalf of the Certificateholders, as independent contractors of the Trust, (i) each Servicer, severally and not jointly, shall service and administer the related Non-Designated Mortgage Loans in accordance with the terms of this Agreement and with Accepted Servicing Practices." Credit Suisse PSA § 3.01.<br><br>"Accepted Servicing Practices: With respect to any Mortgage Loan, those mortgage servicing practices of prudent mortgage lending institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located." Credit Suisse PSA Article I (Definitions). |
| Mortgage Loan Sale and Servicing Agreement | "The Servicer shall service and administer the Mortgage Loans in accordance with this Agreement and Accepted Servicing |

## Exhibit C

| | |
|---|---|
| related to GSR 2006-AR1 dated as of December 1, 2005 ("GSR MLSSA") §§ 11.01, 1 | Procedures and the terms of the Mortgage Notes and Mortgages, and shall have full power and authority, acting alone or through sub-servicers or agents, to do or cause to be done any and all things in connection with such servicing and administration which the Servicer may deem necessary or desirable and consistent with the terms of this Agreement." GSR MLSSA § 11.01.<br><br>"Accepted Servicing Procedures: Procedures (including collection procedures) that the Servicer customarily employs and exercises in servicing and administering mortgage loans for its own account that are similar to the Mortgage Loans and which are in accordance with accepted mortgage servicing practices of prudent mortgage lending institutions which service mortgage loans of the same type as the Mortgage Loans in the jurisdictions where the related Mortgaged Properties are located." GSR MLSSA § 1. |
| JPMorgan PSA § 9.01 | "The Master Servicer, on behalf of the Trustee, the Depositor and the Certificateholders shall monitor the performance of the Servicers under the Purchase and Servicing Agreements and the Servicing Agreements, and shall use its reasonable good faith efforts to enforce the obligations of the Servicers to duly and punctually to perform all of their respective duties and obligations thereunder." |
| MABS PSA § 3.01 | "For and on behalf of the Certificateholders, the Master Servicer shall supervise, monitor and oversee the obligation of each Servicer to service and administer its respective Mortgage Loans in accordance with the terms of the applicable Servicing Agreement and shall have full power and authority to do any and all things which it may deem necessary or desirable in connection with such master servicing and administration. In performing its obligations hereunder, the Master Servicer shall act in a manner consistent with this Agreement, subject to the prior two sentences, and with customary and usual standards of practice of prudent mortgage loan master servicers." |
| MSM PSA § 9.01 | "The Master Servicer, on behalf of the Trustee, the Depositor and the Certificateholders shall monitor the performance of the Servicers under the Purchase and Servicing Agreements, and shall use its reasonable good faith efforts to cause the Servicers duly and punctually to perform all of their respective duties and obligations thereunder." |
| TBW PSA § 3.01 | "For and on behalf of the Certificateholders and the Certificate Insurer, the Master Servicer shall supervise, monitor and oversee the obligation of the Servicer to service and administer the Mortgage Loans in accordance with the terms of the Servicing Agreement and shall have full power and authority to do any and all things which it may deem necessary or desirable in connection with such master servicing and administration. In performing its |

**Exhibit C**

| | |
|---|---|
| | obligations hereunder, the Master Servicer shall act in a manner consistent with this Agreement, subject to the prior sentence, and with customary and usual standards of practice of prudent mortgage loan master servicers." |
| WAMU PSA § 3.01 | "Washington Mutual Bank shall act as Servicer to service and administer the Mortgage Loans on behalf of the Trust in accordance with the terms hereof, consistent with prudent mortgage loan servicing practices and (unless inconsistent with prudent mortgage loan servicing practices) in the same manner in which, and with the same care, skill, prudence and diligence with which, it services and administers similar mortgage loans for other portfolios, and shall have full power and authority to do or cause to be done any and all things in connection with such servicing and administration which a prudent servicer of mortgage loans would do under similar circumstances, including, without limitation, the power and authority to bring actions and defend the Mortgage Pool Assets on behalf of the Trust in order to enforce the terms of the Mortgage Notes." |
| WFMBS PSA § 3.08; Article I | "The Master Servicer shall supervise, monitor and oversee the servicing of the Mortgage Loans by each Servicer and the performance by each Servicer of all services, duties, responsibilities and obligations (including the obligation to maintain an Errors and Omissions Policy and Fidelity Bond) that are to be observed or performed by the Servicer under its respective Servicing Agreement. In performing its obligations hereunder, the Master Servicer shall act in a manner consistent with Accepted Master Servicing Practices and in a manner consistent with the terms and provisions of any insurance policy required to be maintained by the Master Servicer or any Servicer pursuant to this Agreement or any Servicing Agreement." WFMBS PSA § 3.08 <br><br> "Accepted Master Servicing Practices: Accepted Master Servicing Practices shall consist of the customary and usual master servicing practices of prudent master servicing institutions which master service mortgage loans of the same type as the Mortgage Loans in the jurisdictions in which the related Mortgaged Properties are located, regardless of the date upon which the related Mortgage Loans were originated." WFMBS PSA Article I. |

**Section X**

| | |
|---|---|
| BAFC PSA § 8.01 | "If any one of the following events ('Events of Default') shall occur and be continuing: . . . (b) failure on the part of the Master Servicer duly to observe or perform in any material respect any other covenants or agreements of the Master Servicer set forth in the Certificates or in this Agreement, which covenants and |

## Exhibit C

| | | |
|---|---|---|
| | | agreements continue unremedied for a period of 30 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Securities Administrator, the Trustee, the NIMS Insurer or the Depositor, or to the Master Servicer, the Depositor, the Securities Administrator, the NIMS Insurer and the Trustee by the Holders of Certificates evidencing Voting Rights aggregating not less than 25% of all Certificates affected thereby." |
| BSARM SSA § 6.01 | | "Master Servicer Events of Default. 'Master Servicer Event of Default,' wherever used herein, means any one of the following events (whatever the reason for such Master Servicer Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body) and only with respect to the defaulting Master Servicer: . . . (ii) The Master Servicer fails to observe or perform in any material respect any other material covenants and agreements set forth in this Agreement to be performed by it, which covenants and agreements materially affect the rights of Noteholders, and such failure continues unremedied for a period of 60 days after the date on which written notice of such failure, properly requiring the same to be remedied, shall have been given to the Master Servicer by the Indenture Trustee or to the Master Servicer and the Indenture Trustee by the Holders of Notes aggregating at least 25% of the Note Principal Balance of the Notes." |
| Citibank PSA § 7.1 | | "If any of the following events (Events of Default) is continuing: . . . (c) CitiMortgage fails to observe or perform in any material respect any other covenant or agreement of CitiMortgage set forth in the certificates or in this agreement, and the failure materially and adversely affects the rights of the certificate holders, and continues unremedied for 60 business days after the Trustee gives CitiMortgage written notice of the failure, requiring the failure to be remedied, or the holders of the Required Amount of Certificates give such notice to CitiMortgage and the Trustee . . . then the Trustee or the holders of the Required Amount of certificates, by notice in writing to CitiMortgage (and to the Trustee if given by the certificate holders) may terminate all of CitiMortgage's rights and obligations as servicer of the affiliated mortgage loans and as master servicer of the third-party mortgage loans under this agreement. Upon CitiMortgage's receipt of such notice, all CitiMortgage's authority under this agreement, whether for the certificates or the mortgage loans or otherwise." |
| Credit Suisse PSA § 8.01 | | "'Event of Default,' wherever used herein, and as to the Master Servicer or any Servicer, means any one of the following events (whatever reason for such Event of Default and whether it shall be |

**Exhibit C**

| | |
|---|---|
| | voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body): . . . (b) any failure by the Master Servicer or a Servicer to observe or perform in any material respect any other of the covenants or agreements on the part of the Master Servicer or a Servicer contained in this Agreement . . . which failure (i) materially affects the rights of the Certificateholders and (ii) shall continue unremedied for a period of 60 days after the date on which written notice of such failure shall have been given to the Master Servicer or such Servicer by the Trust Administrator or the Depositor, or to the Master Servicer or a Servicer and the Trust Administrator by the Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates; or (c) if a representation or warranty set forth in Section 2.03 hereof made solely in its capacity as the Master Servicer or a Servicer shall prove to be materially incorrect as of the time made in any respect that materially and adversely affects interests of the Certificateholders, and the circumstances or condition in respect of which such representation or warranty was incorrect shall not have been eliminated or cured within 90 days after the date on which written notice thereof shall have been given to the Master Servicer or the related Servicer and the Sellers by the Trust Administrator for the benefit of the Certificateholders or by the Depositor. . . . If an Event of Default due to the actions or inaction of the Master Servicer or a Servicer described in clauses (a) through (f) of this Section shall occur, then, and in each and every such case, so long as such Event of Default shall not have been remedied, (i) the Trust Administrator shall at the direction of the Trustee or the Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates, by notice in writing to the Master Servicer or such Servicer (with a copy to the Rating Agencies), terminate all of the rights and obligations of the Master Servicer or such Servicer under this Agreement (other than rights to reimbursement for Advances and Servicing Advances previously made, as provided in Section 3.08) and (ii) the Master Servicer may, if such Event of Default is due to the actions or inactions of a Servicer, by notice in writing to such Servicer (with a copy to the Rating Agencies), terminate all of the rights and obligations of such Servicer under this Agreement (other than rights to reimbursement for Advances and Servicing Advances previously made, as provided in Section 3.08)." |
| GSR MSTA § 8.04 | "Each of the following shall constitute a Master Servicer Event of Default: . . . (b) failure by the Master Servicer to duly observe or perform, in any material respect, any other covenants, obligations or agreements of the Master Servicer as set forth in this Trust |

## Exhibit C

| | |
|---|---|
| | Agreement which failure continues unremedied for a period of thirty (30) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Securities Administrator." |
| JPMorgan PSA § 6.14 | "The occurrence of any one or more of the following events shall constitute an 'Event of Default': . . . Any failure on the part of the Master Servicer duly to observe or perform in any material respect any other of the covenants or agreements (other than those referred to in (viii) and (ix) below) on the part of the Master Servicer contained in this Agreement which continues unremedied for a period of 30 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Trustee or the Securities Administrator, or to the Master Servicer, the Securities Administrator and the Trustee by the Holders of more than 50% of the Aggregate Voting Interests of the Certificates. . . . If an Event of Default described in clauses (i) through (ix) of this Section shall occur, then, in each and every case, subject to applicable law, so long as any such Event of Default shall not have been remedied within any period of time prescribed by this Section, the Trustee, by notice in writing to the Master Servicer may, and shall, if so directed by Certificateholders evidencing more than 50% of the Class Principal Amount of each Class of Certificates, terminate all of the rights and obligations of the Master Servicer hereunder and in and to the Mortgage Loans and the proceeds thereof." |
| MABS PSA § 7.01 | "'Master Servicer Event of Termination,' wherever used herein, means any one of the following events: . . . (ii) The Master Servicer fails to observe or perform in any material respect any other material covenants and agreements set forth in this Agreement to be performed by it, which covenants and agreements materially affect the rights of Certificateholders, and such failure continues unremedied for a period of 60 days after the date on which written notice of such failure, properly requiring the same to be remedied, shall have been given to the Master Servicer by the Trustee or the NIMS Insurer or to the Master Servicer and the Trustee or the Trust Administrator by the Holders of Certificates evidencing Voting Rights aggregating not less than 25% of the Certificates." |
| MSM PSA § 6.14 | "The occurrence of any one or more of the following events shall constitute an 'Event of Default' with respect to the Master Servicer: . . . (ii) [a]ny failure on the part of the Master Servicer duly to observe or perform in any material respect any other of the covenants or agreements (other than those referred to in (vii) and (ix) below) on the part of the Master Servicer contained in this Agreement (including any obligation to enforce any Purchase and Servicing Agreement) or any representation or warranty of the Master Servicer shall prove to be untrue in any material respect, |

**Exhibit C**

| | |
|---|---|
| | which failure or breach continues unremedied for a period of 60 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Trustee or the Securities Administrator, or to the Master Servicer, the Securities Administrator and the Trustee by the Holders of more than 50% of the Aggregate Voting Interests of the Certificates; provided that the sixty-day cure period shall not apply so long as the Depositor is required to file Exchange Act Reports with respect to the Trust Fund, the failure to comply with the requirements set forth in Section 9.11, Section 9.05 and Section 9.06 (with respect to notice and information to be provided to the Depositor) or Article XII, for which the grace period shall not exceed the lesser of 10 calendar days or such period in which the applicable Exchange Act Report can be filed timely (without taking into account any extensions); . . . If an Event of Default described in clauses (i) through (ix) or (xi) of this Section shall occur with respect to the Master Servicer, then, in each and every case, subject to applicable law, so long as any such Event of Default shall not have been remedied within any period of time prescribed by this Section, the Trustee, by notice in writing to the Master Servicer may, and, if so directed by (a) Certificateholders evidencing more than 50% of the Class Principal Balance of each Class of Certificates or (b) the Depositor, in the case of a failure related to a filing obligation triggered by a Reportable Event; the Trustee shall by notice in writing to the Master Servicer (with a copy to each Rating Agency and the Depositor), terminate all of the respective rights and obligations of the Master Servicer hereunder and in and to the Mortgage Loans and the proceeds thereof." |
| TBW PSA § 7.01 | "'Master Servicer Event of Termination,' wherever used herein, means any one of the following events: . . . (ii) The Master Servicer fails to observe or perform in any material respect any other material covenants and agreements set forth in this Agreement to be performed by it, which covenants and agreements materially affect the rights of Certificateholders or the Certificate Insurer, and such failure continues unremedied for a period of 60 days after the date on which written notice of such failure, properly requiring the same to be remedied, shall have been given to the Master Servicer by the Trustee or the NIMS Insurer or to the Master Servicer and the Trustee or the Trust Administrator by the Holders of Certificates evidencing Voting Rights aggregating not less than 25% of the Certificates." |
| WAMU PSA § 7.01 | "In case one or more of the following Events of Default by the Servicer shall occur and be continuing, that is to say: . . . [f]ailure on the part of the Servicer duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Servicer contained in the Certificates or in this |

## Exhibit C

| | |
|---|---|
| | Agreement which continues unremedied for a period of 60 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Trustee, or to the Servicer and the Trustee by the Holders of Certificates evidencing Percentage Interests aggregating not less than 25%." |
| WFMBS PSA § 7.01 | "In case one or more of the following Events of Default by the Master Servicer shall occur and be continuing, that is to say: . . . any failure on the part of the Master Servicer duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Master Servicer in the Certificates or in this Agreement, which continues unremedied for a period of 60 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Trustee or the Depositor, or to the Master Servicer and the Trustee by the holders of Certificates evidencing in the aggregate not less than 25% of the aggregate Voting Interest represented by all Certificates." |

## Section XI

| | |
|---|---|
| BAFC PSA § 8.05 | "Within 90 days of the time the Master Servicer (and the Trustee if such notice of termination is delivered by the Depositor) receives a notice of termination pursuant to Section 8.01, the Trustee (or other named successor) shall, subject to Section 3.07, be the successor in all respects to the Master Servicer in its capacity as master servicer under this Agreement and the transactions set forth or provided for herein and shall be subject to all the responsibilities, duties and liabilities relating thereto placed on the Master Servicer by the terms and provisions hereof and thereof, as applicable, or shall appoint a successor pursuant to Section 3.07. Notwithstanding the foregoing, (i) the parties hereto agree that the Trustee, in its capacity as successor Master Servicer, immediately will assume all of the obligations of the Master Servicer to make advances (including, without limitation, Advances pursuant to Section 3.19) under this Agreement." |
| BSARM SSA § 6.02 | "Indenture Trustee to Act; Appointment of Successor. (a) Upon the receipt by the Master Servicer of a notice of termination pursuant to Section 6.01 or an Opinion of Counsel pursuant to Section 5.05 to the effect that the Master Servicer is legally unable to act or to delegate its duties to a Person which is legally able to act, the Indenture Trustee shall automatically become the successor in all respects to the Master Servicer in its capacity under this Agreement and the transactions set forth or provided for herein and shall thereafter be subject to all the responsibilities, duties, liabilities and limitations on liabilities relating thereto |

## Exhibit C

| | placed on the Master Servicer by the terms and provisions hereof." |
|---|---|
| Citibank PSA § 7.2 | "Trustee to act; appointment of successor. Once CitiMortgage receives a notice of termination under section 7.1, the Trustee will be the successor in all respects to CitiMortgage in its capacity as servicer and master servicer, and will be subject to all CitiMortgage's rights and obligations under this agreement." |
| Credit Suisse PSA § 8.02 | "On and after the time the Master Servicer or a Servicer receives a notice of termination pursuant to Section 8.01 hereof . . . the Trustee (in the case of the Master Servicer), the Trust Administrator or the Back-Up Servicer (in the case of SPS), shall be the successor in all respects to the Master Servicer or such Servicer, as applicable, in its capacity as servicer under this Agreement and with respect to the transactions set forth or provided for herein and shall be subject to all the responsibilities, duties and liabilities relating thereto placed on the Master Servicer or such Servicer, as applicable, by the terms and provisions hereof." |
| GSR MSTA § 8.06 | "If no successor Master Servicer has accepted its appointment within 90 days of the time the Trustee receives the resignation of or the date of the notice of termination of the Master Servicer, the Trustee shall be the successor Master Servicer in all respects under the Trust Agreement and shall have all the rights and powers and be subject to all the responsibilities, duties and liabilities relating thereto, including the obligation to make Monthly Advances." |
| JPMorgan PSA § 6.14(b) | "On and after the time the Master Servicer receives a notice of termination from the Trustee pursuant to Section 6.14(a) or the Trustee receives the resignation of the Master Servicer evidenced by an Opinion of Counsel pursuant to Section 9.06, the Trustee, unless another master servicer shall have been appointed, shall be the successor in all respects to the Master Servicer in its capacity as such under this Agreement and the transactions set forth or provided for herein and shall have all the rights and powers and be subject to all the responsibilities, duties and liabilities relating thereto and arising thereafter placed on the Master Servicer hereunder." |
| MABS PSA § 7.02 | "On and after the time the Master Servicer receives a notice of termination pursuant to Section 7.01 hereof, the Trustee shall, subject to and to the extent provided in Section 3.05, be the successor to the Master Servicer in its capacity as Master Servicer under this Agreement and the transactions set forth or provided for herein and shall be subject to all the responsibilities, duties, liabilities and limitations on liabilities relating thereto placed on the Master Servicer by the terms and provisions hereof and applicable law, including the obligation to make Advances pursuant to Section 4.01." |
| MSM PSA § 6.14(b) | "On and after the time the Master Servicer receives a notice of |

## Exhibit C

| | termination from the Trustee or the Securities Administrator, as applicable, pursuant to Section 6.14(a) or the Trustee or the Securities Administrator, as applicable, receives the resignation of the Master Servicer evidenced by an Opinion of Counsel pursuant to Section 9.06, the Trustee, unless another master servicer shall have been appointed, shall be the successor in all respects to the Master Servicer, in its capacity as such under this Agreement and the transactions set forth or provided for herein and shall have all the rights and powers and be subject to all the responsibilities, duties and liabilities relating thereto and arising thereafter placed on the Master Servicer, hereunder." |
|---|---|
| TBW PSA § 7.02 | "On and after the time the Master Servicer receives a notice of termination pursuant to Section 7.01 hereof, the Trustee shall, subject to and to the extent provided in Section 3.05, be the successor to the Master Servicer in its capacity as Master Servicer under this Agreement and the transactions set forth or provided for herein and shall be subject to all the responsibilities, duties, liabilities and limitations on liabilities relating thereto placed on the Master Servicer by the terms and provisions hereof and applicable law, including the obligation to make Advances pursuant to Section 4.01." |
| WAMU PSA § 7.02 | "On and after the date on which the Servicer receives a notice of termination pursuant to Section 7.01 or the Servicer resigns pursuant to Section 6.04, the Trustee shall be the successor in all respects to the Servicer under this Agreement with respect to the Mortgage Loans in the Mortgage Pool and with respect to the transactions set forth or provided for herein and shall have all the rights and powers and be subject to all the responsibilities, duties and liabilities relating thereto arising on or after such date of termination or resignation placed on the Servicer by the terms and provisions hereof and thereof, and shall have the same limitations on liability herein granted to the Servicer." |
| WFMBS PSA § 7.05 | "When the Master Servicer receives notice of termination pursuant to Section 7.01 or the Trustee receives the resignation of the Master Servicer evidenced by an Opinion of Counsel pursuant to Section 6.04, the Trustee shall be the successor in all respects to the Master Servicer in its capacity as master servicer under this Agreement and the transactions set forth or provided for herein and shall have the rights and powers and be subject to all the responsibilities, duties and liabilities relating thereto placed on the Master Servicer by the terms and provisions hereof and in its capacity as such successor shall have the same limitation of liability herein granted to the Master Servicer." |

## Section XII

**Exhibit C**

| | |
|---|---|
| Mortgage Loan Purchase Agreement related to BAFC 2007-D dated as of May 31, 2007 ("BAFC MLPA") § 4 | "4. Representations and Warranties as to the BANA Mortgage Loans. The Seller hereby represents and warrants to the Purchaser with respect to the BANA Mortgage Loans or each BANA Mortgage Loan, as the case may be, as of the date hereof or such other date set forth herein that as of the Closing Date: (a) The information set forth in the mortgage loan schedule attached hereto as Exhibit II (the 'BANA Mortgage Loan Schedule' and together with the Assigned Mortgage Loan Schedule, the 'Mortgage Loan Schedules') is true and correct in all material respects; (b) There are no delinquent taxes, ground rents, governmental assessments, insurance premiums, leasehold payments, including assessments payable in future installments or other outstanding charges, affecting the lien priority of the related Mortgaged Property (a 'BANA Mortgaged Property'); (c) The terms of the BANA Mortgage Notes and the related Mortgages (each, a 'BANA Mortgage') have not been impaired, waived, altered or modified in any respect, except by written instruments, recorded in the applicable public recording office if necessary to maintain the lien priority of the BANA Mortgage, and which have been delivered to the custodian; the substance of any such waiver, alteration or modification has been approved by the insurer under the primary insurance policy, if any, the title insurer, to the extent required by the related policy, and is reflected on the BANA Mortgage Loan Schedule. No instrument of waiver, alteration or modification has been executed, and no mortgagor of a BANA Mortgage Loan (a 'BANA Mortgagor') has been released, in whole or in part, except in connection with an assumption agreement approved by the insurer under the Primary Mortgage Insurance Policy, if any, the title insurer, to the extent required by the policy, and which assumption agreement has been delivered to the Trustee; (d) The BANA Mortgage Notes and the BANA Mortgages are not subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, nor will the operation of any of the terms of the BANA Mortgage Notes and the BANA Mortgages, or the exercise of any right thereunder, render either the BANA Mortgage Notes or the BANA Mortgages unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto; (e) All buildings upon each BANA Mortgaged Property are insured by an insurer generally acceptable to prudent mortgage lending institutions against loss by fire, hazards of extended coverage and such other hazards as are customary in the area the |

**Exhibit C**

related BANA Mortgaged Property is located, pursuant to insurance policies conforming to the requirements of Customary Servicing Procedures and the Pooling and Servicing Agreement. All such insurance policies contain a standard mortgagee clause naming the originator of the BANA Mortgage Loan, its successors and assigns as mortgagee and all premiums thereon have been paid. If the BANA Mortgaged Property is in an area identified on a flood hazard map or flood insurance rate map issued by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available), a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration is in effect which policy conforms to the requirements of FNMA or FHLMC. The BANA Mortgage obligates the mortgagor thereunder to maintain all such insurance at the mortgagor's cost and expense, and on the mortgagor's failure to do so, authorizes the holder of the BANA Mortgage to maintain such insurance at mortgagor's cost and expense and to seek reimbursement therefor from the mortgagor;

(f) Any and all requirements of any federal, state or local law including, without limitation, usury, truth in lending, real estate settlement procedures, consumer credit protections, all applicable predatory and abusive lending laws, equal credit opportunity or disclosure laws applicable to the origination and servicing of BANA Mortgage Loans have been complied with;

(g) No BANA Mortgage has been satisfied, canceled, subordinated or rescinded, in whole or in part (other than as to Principal Prepayments in full which may have been received prior to the Closing Date), and no BANA Mortgaged Property has been released from the lien of the related BANA Mortgage, in whole or in part, nor has any instrument been executed that would effect any such satisfaction, cancellation, subordination, rescission or release;

(h) The BANA Mortgage is a valid, existing and enforceable first lien on the BANA Mortgaged Property, including all improvements on the BANA Mortgaged Property subject only to (A) the lien of current real property taxes and assessments not yet due and payable, (B) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording being acceptable to mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the BANA Mortgage Loan and which do not adversely affect the Appraised Value of the BANA Mortgaged Property, (C) if the BANA Mortgaged Property consists of Cooperative Stock, any lien for amounts due to the cooperative housing corporation for

72

**Exhibit C**

unpaid assessments or charges or any lien of any assignment of rents or maintenance expenses secured by the real property owned by the cooperative housing corporation, and (D) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the BANA Mortgage or the use, enjoyment, value or marketability of the related BANA Mortgaged Property. Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the BANA Mortgage Loan establishes and creates a valid, existing and enforceable first lien and first priority security interest on the property described therein and the Seller has the full right to sell and assign the same to the Purchaser;

(i) The BANA Mortgage Note and the related BANA Mortgage are genuine and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms except as enforceability may be limited by (A) bankruptcy, insolvency, liquidation, receivership, moratorium, reorganization or other similar laws affecting the enforcement of the rights of creditors and (B) general principles of equity, whether enforcement is sought in a proceeding in equity or at law;

(j) All parties to the BANA Mortgage Note and the BANA Mortgage had legal capacity to enter into the BANA Mortgage Loan and to execute and deliver the BANA Mortgage Note and the BANA Mortgage, and the BANA Mortgage Note and the BANA Mortgage have been duly and properly executed by such parties;

(k) The proceeds of the BANA Mortgage Loan have been fully disbursed to or for the account of the related BANA Mortgagor and there is no obligation for the mortgagee to advance additional funds thereunder and any and all requirements as to completion of any on-site or off-site improvements and as to disbursements of any escrow funds therefor have been complied with. All costs, fees and expenses incurred in making or closing the BANA Mortgage Loan and the recording of the BANA Mortgage have been paid, and the Mortgagor is not entitled to any refund of any amounts paid or due to the mortgagee pursuant to the BANA Mortgage Note or BANA Mortgage;

(l) To the best of the Seller's knowledge, all parties which have had any interest in the BANA Mortgage Loan, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) in compliance with any and all applicable 'doing business' and licensing requirements of the laws of the state wherein the BANA Mortgaged Property is located;

**Exhibit C**

| | (m) Either (A) the BANA Mortgage Loan is covered by an ALTA lender's title insurance policy, acceptable to FNMA or FHLMC, issued by a title insurer acceptable to FNMA or FHLMC and qualified to do business in the jurisdiction where the BANA Mortgaged Property is located, insuring (subject to the exceptions contained in (h)(A), (B), (C) and (D) above) the Seller, its successors and assigns as to the first priority lien of the BANA Mortgage in the original principal amount of the BANA Mortgage Loan, (B) a title search has been done showing no lien (other than the exceptions contained in (h)(A), (B), (C) and (D) above) on the BANA Mortgaged Property senior to the lien of the BANA Mortgage or (C) in the case of any BANA Mortgage Loan secured by a BANA Mortgaged Property located in a jurisdiction where such policies are generally not available, an opinion of counsel of the type customarily rendered in such jurisdiction in lieu of title insurance is instead received. For each BANA Mortgage Loan covered by a title insurance policy (x) the Seller is the sole insured of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated by this Agreement and (y) no claims have been made under such lender's title insurance policy, and the Seller has not done, by act or omission, anything which would impair the coverage of such lender's title insurance policy; <br><br> (n) There is no default, breach, violation or event of acceleration existing under the BANA Mortgage or the BANA Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and the Seller has not waived any default, breach, violation or event of acceleration; <br><br> (o) As of the date of origination of the BANA Mortgage Loan, there were no mechanics' or similar liens or claims filed for work, labor or material (and no rights are outstanding that under law could give rise to such lien) affecting the relating BANA Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related BANA Mortgage; <br><br> (p) All improvements which were considered in determining the Appraised Value of the related BANA Mortgaged Property lay wholly within the boundaries and building restriction lines of the BANA Mortgaged Property, and no improvements on adjoining properties encroach upon the BANA Mortgaged Property; <br><br> (q) The BANA Mortgage Loan was originated by a savings and loan association, savings bank, commercial bank, credit |
|---|---|

**Exhibit C**

union, insurance company, or similar institution which is supervised and examined by a federal or state authority, or by a mortgagee approved by the Secretary of Housing and Urban Development pursuant to sections 203 and 211 of the National Housing Act;

(r) Payments on the BANA Mortgage Loan commenced no more than sixty days after the proceeds of the BANA Mortgaged Loan were disbursed. The BANA Mortgage Loans are adjustable-rate mortgage loans having an original term to maturity of not more than 40 years, with interest payable in arrears on the first day of the month. Except with respect to the Option ARM Mortgage Loans, each BANA Mortgage Note requires a monthly payment which is sufficient to fully amortize the original principal balance over the original term thereof and to pay interest at the related Mortgage Interest Rate. Except with respect to the Option ARM Mortgage Loans, no BANA Mortgage Note permits negative amortization;

(s) There is no proceeding pending or, to the Seller's knowledge, threatened for the total or partial condemnation of the BANA Mortgaged Property and such property is in good repair and is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty, so as to affect adversely the value of the BANA Mortgaged Property as security for the BANA Mortgage Loan or the use for which the premises were intended;

(t) The BANA Mortgage and related BANA Mortgage Note contain customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the BANA Mortgaged Property of the benefits of the security provided thereby, including (A) in the case of a BANA Mortgage designated as a deed of trust, by trustee's sale, and (B) otherwise by judicial foreclosure. To the best of the Seller's knowledge, following the date of origination of the BANA Mortgage Loan, the related BANA Mortgaged Property has not been subject to any bankruptcy proceeding or foreclosure proceeding and the related BANA Mortgagor has not filed for protection under applicable bankruptcy laws. There is no homestead or other exemption or right available to the BANA Mortgagor or any other person which would interfere with the right to sell the BANA Mortgaged Property at a trustee's sale or the right to foreclose the BANA Mortgage;

(u) Other than any Borrowers Protection Plan(R) addendum to the Mortgage Note of a BPP Mortgage Loan, with respect to the BANA Mortgage Loans, each BANA Mortgage Note and BANA Mortgage are on forms acceptable to FNMA or FHLMC;

**Exhibit C**

(v) With respect to the BANA Mortgage Loans, the BANA Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding BANA Mortgage on the BANA Mortgaged Property and the security interest of any applicable security agreement or chattel mortgage referred to in (h) above;

(w) Each appraisal of the related BANA Mortgaged Property is in a form acceptable to FNMA or FHLMC and such appraisal complies with the requirements of FIRREA, and was made and signed, prior to the approval of the BANA Mortgage Loan application, by an appraiser who met the qualifications of Fannie Mae or Freddie Mac and satisfied this requirements of Title XI of FIRREA;

(x) In the event the BANA Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves, and no fees or expenses are or will become payable by the Trustee to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor;

(y) No BANA Mortgage Loan is a graduated payment mortgage loan, no BANA Mortgage Loan has a shared appreciation or other contingent interest feature, and no BANA Mortgage Loan contains a 'buydown' provision;

(z) The BANA Mortgagor has received all disclosure materials required by applicable law with respect to the making of mortgage loans of the same type as the BANA Mortgage Loan and rescission materials required by applicable law if the BANA Mortgage Loan is a refinanced mortgage loan, i.e., the proceeds of such BANA Mortgage Loan were not used to purchase the related Mortgaged Property;

(aa) Each Primary Mortgage Insurance Policy to which any BANA Mortgage Loan is subject will be issued by an insurer acceptable to FNMA or FHLMC, which insures that portion of the BANA Mortgage Loan in excess of the portion of the Appraised Value of the BANA Mortgaged Property required by FNMA or FHLMC. All provisions of such Primary Mortgage Insurance Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid. Any BANA Mortgage subject to any such Primary Mortgage Insurance Policy obligates the Mortgagor thereunder to maintain such insurance and to pay all premiums and charges in connection therewith at least until Loan-to-Value Ratio of such BANA Mortgage Loan is reduced to less than 80%. The Mortgage Interest Rate for the BANA Mortgage Loan does not include any such insurance premium;

**Exhibit C**

(bb) To the best of the Seller's knowledge as of the date of origination of the BANA Mortgage Loan, (A) the BANA Mortgaged Property is lawfully occupied under applicable law, (B) all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the BANA Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy, have been made or obtained from the appropriate authorities and (C) no improvement located on or part of the BANA Mortgaged Property is in violation of any zoning law or regulation;

(cc) With respect to each BANA Mortgage Loan, the related Assignment of Mortgage (except with respect to any BANA Mortgage that has been recorded in the name of MERS or its designee) is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the related BANA Mortgaged Property is located;

(dd) All payments required to be made prior to the Cut-off Date for such BANA Mortgage Loan under the terms of the BANA Mortgage Note have been made and no more than 0.20% of the BANA Mortgage Loans (as a percentage of the aggregate Stated Principal Balance of the BANA Mortgage Loans as of the Cut-off Date) has been more than 30 days delinquent more than once in the twenty-four month period immediately prior to the Cut-off Date and no BANA Mortgage Loan has been more than 30 days delinquent more than twice in the twenty-four month period immediately prior to the Cut-off Date; (ee) With respect to each BANA Mortgage Loan, the Seller is in possession of a complete BANA Mortgage File except for the documents which have been delivered to the Trustee or which have been submitted for recording and not yet returned;

(ff) Except with respect to each BANA Mortgage Loan for which the related Mortgage is recorded in the name of MERS, immediately prior to the transfer and assignment contemplated herein, the Seller was the sole owner of record and holder of the BANA Mortgage Loan. With respect to the BANA Mortgage Loans, the BANA Mortgage Loans were not assigned or pledged by the Seller and the Seller had good and marketable title thereto, and the Seller had full right to transfer and sell the BANA Mortgage Loans to the Trustee free and clear of any encumbrance, participation interest, lien, equity, pledge, claim or security interest and had full right and authority subject to no interest or participation in, or agreement with any other party to sell or otherwise transfer the BANA Mortgage Loans;

(gg) With respect to the BANA Mortgage Loans, any future advances made prior to the Cut-off Date have been consolidated with the outstanding principal amount secured by the BANA

**Exhibit C**

Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term. With respect to each BANA Mortgage Loan, the lien of the related BANA Mortgage securing the consolidated principal amount is expressly insured as having first lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to FNMA and FHLMC. The consolidated principal amount does not exceed the original principal amount of the BANA Mortgage Loan;

(hh) The BANA Mortgage Loan was underwritten in accordance with the applicable underwriting guidelines in effect at the time of origination with exceptions thereto exercised in a reasonable manner;

(ii) If the BANA Mortgage Loan is secured by a long-term residential lease, (1) the lessor under the lease holds a fee simple interest in the land; (2) the terms of such lease expressly permit the mortgaging of the leasehold estate, the assignment of the lease without the lessor's consent and the acquisition by the holder of the BANA Mortgage of the rights of the lessee upon foreclosure or assignment in lieu of foreclosure or provide the holder of the BANA Mortgage with substantially similar protections; (3) the terms of such lease do not (a) allow the termination thereof upon the lessee's default without the holder of the BANA Mortgage being entitled to receive written notice of, and opportunity to cure, such default, (b) allow the termination of the lease in the event of damage or destruction as long as the BANA Mortgage is in existence, (c) prohibit the holder of the BANA Mortgage from being insured (or receiving proceeds of insurance) under the hazard insurance policy or policies relating to the BANA Mortgaged Property or (d) permit any increase in the rent other than pre-established increases set forth in the lease; (4) the original term of such lease in not less than 15 years; (5) the term of such lease does not terminate earlier than five years after the maturity date of the BANA Mortgage Note; and (6) the BANA Mortgaged Property is located in a jurisdiction in which the use of leasehold estates in transferring ownership in residential properties is a widely accepted practice;

(jj) With respect to each BANA Mortgage Loan, the related BANA Mortgaged Property is located in the state identified in the BANA Mortgage Loan Schedule and consists of a parcel of real property with a detached single family residence erected thereon, or a two- to four-family dwelling, or an individual condominium unit, or an individual unit in a planned unit development, or, in the case of BANA Mortgage Loans secured by Cooperative Stock, leases or occupancy agreements; provided, however, that

**Exhibit C**

<table>
<tr>
<td></td>
<td>any condominium project or planned unit development generally conforms with the applicable underwriting guidelines regarding such dwellings, and no residence or dwelling is a mobile home or a manufactured dwelling;<br>
(kk) The Seller used no adverse selection procedures in selecting the BANA Mortgage Loan for inclusion in the Trust Estate;<br>
(ll) Each BANA Mortgage Loan is a 'qualified mortgage' within the meaning of Section 860G(a)(3) of the Code and Treas. Reg. ss. 1.860G-2;<br>
(mm) With respect to each BANA Mortgage where a lost note affidavit has been delivered to the Trustee in place of the related BANA Mortgage Note, the related BANA Mortgage Note is no longer in existence;<br>
(nn) No BANA Mortgage Loan is a 'high cost' loan as defined under any federal, state or local law applicable to such BANA Mortgage Loan at the time of its origination;<br>
(oo) No BANA Mortgage Loan is a High Cost Loan or Covered Loan, as applicable (as such terms are defined in the then current S&P's LEVELS(R) Glossary, which is now Version 5.7 Revised, Appendix E) and no BANA Mortgage Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act;<br>
(pp) No BANA Mortgage Loan permits the outstanding principle amount of such BANA Mortgage Loan to exceed, as a result of negative amortization, 115% of the original principal amount of such BANA Mortgage Loan;<br>
(qq) As of the Cut-off Date, no BANA Mortgage Loan had a loan-to-value ratio of greater than 100%, where loan-to-value ratio means outstanding principal amount of the related BANA Mortgage Loan as of the Cut-off Date divided by the Appraised Value of the related Mortgage Property; and<br>
(rr) Other than any Borrowers Protection Plan(R) addendum to the Mortgage Note of a BPP Mortgage Loan, with respect to the BANA Mortgage Loans, each BANA Mortgage Note and BANA Mortgage are on forms acceptable to FNMA or FHLMC."</td>
</tr>
<tr>
<td>Mortgage Loan Purchase Agreement related to BSARM 2005-7 dated as July 29, 2005 ("BSARM MLPA") § 7</td>
<td>"Representations and Warranties of Mortgage Loan Seller Concerning the Mortgage Loans. The Mortgage Loan Seller hereby represents and warrants to the Purchaser as of the Closing Date, or such other date as may be specified below with respect to each Mortgage Loan being sold by it, that:<br>
(i) the information set forth in the Mortgage Loan Schedule hereto is true and correct in all material respects and the information provided to the Rating Agencies, including the Mortgage Loan level detail, is true and correct according to the Rating Agency requirements;</td>
</tr>
</table>

**Exhibit C**

| | |
|---|---|
| | (ii) immediately prior to the transfer to the Purchaser, the Mortgage Loan Seller was the sole owner of beneficial title and holder of each Mortgage and Mortgage Note relating to the Mortgage Loans and is conveying the same free and clear of any and all liens, claims, encumbrances, participation interests, equities, pledges, charges or security interests of any nature and the Mortgage Loan Seller has full right and authority to sell or assign the same pursuant to this Agreement; |
| | (iii) each Mortgage Loan at the time it was made complied in all material respects with all applicable laws and regulations, including, without limitation, usury, equal credit opportunity, disclosure and recording laws and all applicable anti-predatory lending laws; and each Mortgage Loan has been serviced in all material respects in accordance with all applicable laws and regulations, including, without limitation, usury, equal credit opportunity, disclosure and recording laws and all applicable anti-predatory lending laws and the terms of the related Mortgage Note, the Mortgage and other loan documents; |
| | (iv) there is no monetary default existing under any Mortgage or the related Mortgage Note and there is no material event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach or event of acceleration; and neither the Mortgage Loan Seller, any of its affiliates nor any servicer of any related Mortgage Loan has taken any action to waive any default, breach or event of acceleration; and no foreclosure action is threatened or has been commenced with respect to the Mortgage Loan; |
| | (v) the terms of the Mortgage Note and the Mortgage have not been impaired, waived, altered or modified in any respect, except by written instruments, (i) if required by law in the jurisdiction where the Mortgaged Property is located, or (ii) to protect the interests of the Indenture Trustee on behalf of the Noteholders; |
| | (vi) no selection procedure reasonably believed by the Mortgage Loan Seller to be adverse to the interests of the Noteholders was utilized in selecting the Mortgage Loans; |
| | (vii) each Mortgage is a valid and enforceable first lien on the property securing the related Mortgage Note and each Mortgaged Property is owned by the Mortgagor in fee simple (except with respect to common areas in the case of condominiums, PUDs and de minimis PUDs) or by leasehold for a term longer than the term of the related Mortgage, subject only to (i) the lien of current real property taxes and assessments, (ii) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage, such exceptions being acceptable to mortgage lending institutions generally or specifically reflected in the appraisal obtained in |

**Exhibit C**

connection with the origination of the related Mortgage Loan or referred to in the lender's title insurance policy delivered to the originator of the related Mortgage Loan and (iii) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by such Mortgage;

(viii) there is no mechanics' lien or claim for work, labor or material affecting the premises subject to any Mortgage which is or may be a lien prior to, or equal with, the lien of such Mortgage except those which are insured against by the title insurance policy referred to in (xiii) below;

(ix) there was no delinquent tax or assessment lien against the property subject to any Mortgage, except where such lien was being contested in good faith and a stay had been granted against levying on the property;

(x) there is no valid offset, defense or counterclaim to any Mortgage Note or Mortgage, including the obligation of the Mortgagor to pay the unpaid principal and interest on such Mortgage Note;

(xi) except to the extent insurance is in place which will cover such damage, the physical property subject to any Mortgage is free of material damage and is in good repair and there is no proceeding pending or threatened for the total or partial condemnation of any Mortgaged Property;

(xii) the Mortgaged Property and all improvements thereon comply with all requirements of any applicable zoning and subdivision laws and ordinances;

(xiii) a lender's title insurance policy (on an ALTA or CLTA form) or binder, or other assurance of title customary in the relevant jurisdiction therefor in a form acceptable to Fannie Mae or Freddie Mac, was issued on the date that each Mortgage Loan was created by a title insurance company which, to the best of the Mortgage Loan Seller's knowledge, was qualified to do business in the jurisdiction where the related Mortgaged Property is located, insuring the Mortgage Loan Seller and its successors and assigns that the Mortgage is a first priority lien on the related Mortgaged Property in the original principal amount of the Mortgage Loan. The Mortgage Loan Seller is the sole insured under such lender's title insurance policy, and such policy, binder or assurance is valid and remains in full force and effect, and each such policy, binder or assurance shall contain all applicable endorsements including a negative amortization endorsement, if applicable;

(xiv) at the time of origination, each Mortgaged Property was the subject of an appraisal which conformed to the underwriting requirements of the originator of the Mortgage Loan and, the appraisal is in a form acceptable to Fannie Mae or FHLMC;

**Exhibit C**

(xv) as of the Closing Date, the improvements on each Mortgaged Property securing a Mortgage Loan are insured (by an insurer which is acceptable to the Mortgage Loan Seller) against loss by fire and such hazards as are covered under a standard extended coverage endorsement in the locale in which the Mortgaged Property is located, in an amount which is not less than the lesser of the maximum insurable value of the improvements securing such Mortgage Loan or the outstanding principal balance of the Mortgage Loan, but in no event in an amount less than an amount that is required to prevent the Mortgagor from being deemed to be a co-insurer thereunder; if the improvement on the Mortgaged Property is a condominium unit, it is included under the coverage afforded by a blanket policy for the condominium project; if upon origination of the related Mortgage Loan, the improvements on the Mortgaged Property were in an area identified as a federally designated flood area, a flood insurance policy is in effect in an amount representing coverage not less than the least of (i) the outstanding principal balance of the Mortgage Loan, (ii) the restorable cost of improvements located on such Mortgaged Property or (iii) the maximum coverage available under federal law; and each Mortgage obligates the Mortgagor thereunder to maintain the insurance referred to above at the Mortgagor's cost and expense;

(xvi) each Mortgage Loan constitutes a 'qualified mortgage' under Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1);

(xvii) Each Mortgage Loan was originated with an initial mortgagee of record, or was originated in conformity with the underwriting standards of and purchased by a subsequent mortgagee, that was either (x) a savings and loan association, savings bank, commercial bank, credit union, insurance company, or similar institution which is supervised and examined by a Federal or State authority or (y) a mortgagee approved by the Secretary of Housing and Urban Development pursuant to sections 203 and 211 of the National Housing Act;

(xviii) none of the Mortgage Loans are (a) loans subject to 12 CFR Part 226.31, 12 CFR Part 226.32 or 12 CFR Part 226.34 of Regulation Z, the regulation implementing TILA, which implements the Home Ownership and Equity Protection Act of 1994, as amended or (b) classified and/or defined as a 'high cost home loan' under any federal, state or local law, including, but not limited to, the States of Georgia or North Carolina;

(xix) the information set forth in Schedule A of the Prospectus Supplement with respect to the Mortgage Loans is true and correct in all material respects; and

(xx) no Mortgage Loan is a High Cost Loan or Covered Loan, as

**Exhibit C**

| | |
|---|---|
| | applicable (as such terms are defined in the then current Standard & Poor's LEVELS® Glossary, which is now, Version 5.6b Revised, Appendix E, attached hereto as Exhibit 6) and no Mortgage Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the 'Georgia Fair Lending Act.'<br>(xxi) each Mortgage Loan was originated in accordance with the underwriting guidelines of the related originator;<br>(xxii) each original Mortgage has been recorded or is in the process of being recorded in accordance with the requirements of Section 2.01 of the Sale and Servicing Agreement in the appropriate jurisdictions wherein such recordation is required to perfect the lien thereof for the benefit of the Trust Fund;<br>(xxiii) the related Mortgage File contains each of the documents and instruments listed in Section 2.01 of the Sale and Servicing Agreement, subject to any exceptions, substitutions and qualifications as are set forth in such Section;<br>(xxiv) the Mortgage Loans are currently being serviced in accordance with accepted servicing practices;<br>(xxv) at the time of origination, each Mortgaged Property was the subject of an appraisal which conformed to the underwriting requirements of the originator of the Mortgage Loan, and the appraisal is in a form which was acceptable to Fannie Mae or FHLMC at the time of origination; and<br>(xxvi) none of the Mortgage Loans that are secured by property located in the State of Illinois are in violation of the provisions of the Illinois Interest Act." |
| Citibank PSA § 2.2 | "CMSI represents and warrants to the Trustee and any Insurer that as of the closing date:<br>(i) The information in exhibit B was true and correct in all material respects as of the dates respecting which such information is furnished, and the information provided to the rating agencies, including the loan-level detail, is true and correct according to rating agency requirements.<br>(ii) As of the closing date, each mortgage will be a valid first lien on the property securing the related mortgage note . . . .<br>(iii) Immediately before the transfer and assignment of the mortgage loans to the Trustee, CMSI has good title to, and is the sole legal owner of, each mortgage loan (except as set forth in clause (v) below) and immediately upon the transfer and assignment, CMSI will have taken all steps necessary so that the Trustee will have good title to, and will be the sole legal owner of, each mortgage loan (except as set forth in clause (v) below);<br>(iv) As of the cut-off date, no payment of principal of or interest on any mortgage loan was 30 days or more past due (a mortgage loan being considered 30 days past due in a given month when payment due on the first day of the prior month has not been made |

## Exhibit C

on or before the last day of such prior month) or has been 30 days or more past due more than once for the twelve months preceding the cut-off date;

(v) As of the closing date, there is no mechanics' lien or claim for work, labor or material affecting the mortgaged property that is or may be a lien prior to, or equal with, the lien of the mortgage except those that are insured against by the title insurance policy referred to in (x) below;

(vi) As of the closing date, there is no delinquent tax or assessment lien against any mortgaged property;

(vii) As of the closing date, there is no valid offset, defense or counterclaim to any mortgage note or mortgage, including the obligation of the mortgagor to pay the unpaid principal and interest on the mortgage note;

(viii) As of the closing date, each mortgaged property is free of material damage and is in good repair;

(ix) Each mortgage at the time it was originated complied in all material respects with applicable state, local and federal laws, including, without limitation, all applicable usury, equal credit opportunity, recording, disclosure and predatory lending laws. No mortgage loan is a high cost loan under the predatory lending law of any jurisdiction in which a mortgaged property is located, no mortgage loan is a 'High Cost Loan' or 'Covered Loan,' as such terms are defined in the current version of Standard & Poor's LEVELS® Glossary, (Version 5.7 Revised, Appendix E), and no mortgage loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act;

(x) A lender's title insurance policy or binder approved as such by Fannie Mae or Freddie Mac, or other assurance of title customary in the relevant jurisdiction, was issued on the date of the origination of each mortgage loan (other than a mortgage loan for a cooperative apartment), and, as of the closing date, each such policy, binder or assurance is valid and in full force and effect;

(xi) The mortgage loans conform in all material respects with their descriptions in the prospectus relating to the certificates;

(xii) Each mortgage loan with an original principal balance exceeding 80% (or, for certain mortgage loans originated before 1995, 90%) of its original value is covered by primary mortgage insurance at least until its outstanding principal balance is less than or equal to 80% of the original value, either through principal payments by the mortgagor or as determined by a new appraisal delivered subsequent to origination. So long as it is in effect, the primary mortgage insurance covers losses from defaults in an amount equal to the excess, of the outstanding principal balance of the mortgage loan over 75% of the original value of the mortgage loan;

**Exhibit C**

| | |
|---|---|
| | (xiii) The original principal balance of each mortgage loan was not more than 95% of the original value of the mortgage loan; . . . .<br>(xv) Each mortgage loan is a 'qualified mortgage' within the meaning of Section 860G(a)(3) of the Internal Revenue Code.<br>(xvi) For each mortgaged property at the time the mortgage loan was originated, no improvement located on or part of the mortgaged property violated any applicable zoning or subdivision laws or ordinances.<br>(xvii) For each mortgaged property, the terms of the mortgage note and the mortgage loan have not been impaired, altered or modified in any material respect, except by a written instrument which has been recorded or is in the process of being recorded.<br>(xviii) For each mortgaged property, no default or waiver exists under the mortgage documents, and no modifications to the mortgage documents have been made, that have not been disclosed.<br>(xix) If a mortgaged property is in a Federal Emergency Management Agency designated flood area, a flood insurance policy is in effect covering the mortgaged property.<br>(xx) For each mortgaged property as of the closing date, a hazard insurance policy is in place.   The representations and warranties in this section 2.2 will survive delivery of the mortgage files to the Trustee." |
| Credit Suisse PSA § 2.03; Schedule III | "Representations and Warranties of the Sellers, Master Servicer and Servicers. . . . (b) (i) DLJMC, in its capacity as a Seller, hereby makes the representations and warranties set forth in Schedule IIIA as to the DLJMC Mortgage Loans and by this reference incorporated herein, to the Depositor, the Trustee and the Trust Administrator, as of the Closing Date, or if so specified therein, as of the Cut-off Date or such other date as may be specified and (ii) WMB, in its capacity as a Seller, hereby makes the representations and warranties set forth in Schedule IIIB as to the WMB Mortgage Loans and by this reference incorporated herein, to the Depositor, the Trustee and the Trust Administrator, as of the Closing Date, or if so specified therein, as of the Cut-off Date or such other date as may be specified." Credit Suisse PSA § 2.03.<br><br>"DLJMC, in its capacity as Seller, hereby makes the representations and warranties set forth in this Schedule IIIA to the Depositor, the Trustee and the Trust Administrator, as of the Closing Date, or if so specified herein, as of be specified, with respect to the hereto, except as specified herein.<br>(i) The information   the Mortgage Loans, is complete, true and correct in all material respects;<br>(ii) [Reserved]; |

**Exhibit C**

(iii) No Mortgage Loan will be 30 or more days delinquent as of the Cut-off Date. There are no material defaults under the terms of any Mortgage Loan;

(iv) All taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid, or escrow funds have been established in an amount sufficient to pay for every such escrowed item which remains unpaid and which has been assessed but is not yet due and payable;

(v) The terms of the Mortgage Note and the Mortgage have not been impaired, waived, altered or modified in any respect, except by written instruments which have been recorded or sent for recording to the extent any such recordation is required by law, or, necessary to protect the interest of the Depositor. No other instrument of waiver, alteration or modification has been executed, and no Mortgagor has been released, in whole or in part, from the terms thereof except in connection with an assumption agreement and which assumption agreement is part of the Mortgage File and the terms of which are reflected in Schedule IA; the substance of any such waiver, alteration or modification has been approved by the issuer of any related Mortgage Guaranty Insurance Policy and title insurance policy, to the extent required by the related policies;

(vi) The Mortgage Note and the Mortgage are not subject to any right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render the Mortgage Note or Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto;

(vii) All buildings or other customarily insured improvements upon the Mortgaged Property are insured by an insurer acceptable under the FNMA Guides, against loss by fire, hazards of extended coverage and such other hazards as are provided for in the FNMA Guides or by FHLMC, the Cut off Date or such other date as may Mortgage Loans identified on Schedule I set forth in Schedule I, with respect to as well as all additional requirements set forth in Section 4.10 of this Agreement. All such standard hazard policies are in full force and effect and on the date of origination contained a standard mortgagee clause naming DLJMC and its successors in interest and assigns as loss payee and such clause is still in effect and all premiums due thereon have been paid. If required by the Flood Disaster Protection Act of 1973, as amended, the Mortgage Loan is covered by a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance

**Exhibit C**

Administration which policy conforms to FNMA and FHLMC requirements, as well as all additional requirements set forth in Section 4.10 of this Agreement. Such policy was issued by an insurer acceptable under FNMA or FHLMC guidelines. The Mortgage obligates the Mortgagor thereunder to maintain all such insurance at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to maintain such insurance at the Mortgagor's cost and expense and to seek reimbursement therefor from the Mortgagor;

(viii) Each Mortgage Loan at the time it was made complied in all material respects with all applicable local, state and federal laws, including, without limitation, usury, equal credit opportunity, disclosure, recording and all applicable predatory and abusive lending laws;

(ix) The related Mortgage is a valid, subsisting, enforceable and perfected first lien on the Mortgaged Property, including for Mortgage Loans that are not Cooperative Loans, all buildings on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems affixed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing securing the Mortgage Note's original principal balance. The Mortgage and the Mortgage Note do not contain any evidence of any security interest or other interest or right thereto. Such lien is free and clear of all adverse claims, liens and encumbrances having priority over the first lien, as applicable, of the Mortgage subject only to (1) the lien of non-delinquent current real property taxes and assessments not yet due and payable, (2) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording which are acceptable to mortgage lending institutions generally and either (A) which are referred to or otherwise considered in the appraisal made for the originator of the Mortgage Loan, or (B) which do not adversely affect the appraised value of the Mortgaged Property as set forth in such appraisal, and (3) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property. Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid, subsisting, enforceable and perfected first lien and first priority security interest on the property described therein, and the Seller has the full right to sell and assign the same to the Depositor;

(x) The Mortgage Note and the related Mortgage are original and genuine and each is the legal, valid and binding obligation of the

**Exhibit C**

maker thereof, enforceable in all respects in accordance with its terms subject to bankruptcy, insolvency, moratorium, reorganization and other laws of general application affecting the rights of creditors and by general equitable principles;

(xi) DLJMC or its affiliate is the sole owner of record and holder of the Mortgage Loan and the indebtedness evidenced by the Mortgage Note. Immediately prior to the transfer and assignment to the Depositor on the Closing Date, the Mortgage Loan, including the Mortgage Note and the Mortgage, were not subject to an assignment or pledge, and DLJMC had good and marketable title to and was the sole owner thereof and had full right to transfer and sell the Mortgage Loan to the Depositor free and clear of any encumbrance, equity, lien, pledge, charge, claim or security interest and has the full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign the Mortgage Loan and following the sale of the Mortgage Loan, the Depositor will own such Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest;

(xii) There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to or equal to the lien of the related Mortgage;

(xiii) All improvements subject to the Mortgage which were considered in determining the appraised value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of the Mortgaged Property (and wholly within the project with respect to a condominium unit) except for de minimis encroachments permitted by the FNMA Guide and which have been noted on the appraisal or the title policy affirmatively insures against loss or damage by reason of any violation, variation or encroachment adverse circumstances which is either disclosed or would have been disclosed by an accurate survey, and no improvements on adjoining properties encroach upon the Mortgaged Property except those which are insured against by the title insurance policy referred to in clause (v) above or are acceptable under FNMA or FHLMC guidelines and all improvements on the property comply with all applicable zoning and subdivision laws and ordinances;

(xiv) The Mortgaged Property is not subject to any material damage by waste, fire, earthquake, windstorm, flood or other casualty. At origination of the Mortgage Loan there was, and there currently is, no proceeding pending for the total or partial condemnation of the Mortgaged Property;

(xv) Each Mortgage Loan has been serviced in all material

**Exhibit C**

respects in compliance with accepted servicing practices;

(xvi) With respect to each Cooperative Loan, the related Mortgage is a valid, enforceable and subsisting first security interest on the related Cooperative Shares securing the related Mortgage Note, subject only to (a) liens of the Cooperative Property for unpaid assessments representing the Mortgagor's pro rata share of the Cooperative Property's payments for its blanket mortgage, current and future real property taxes, insurance premiums, maintenance fees and other assessments to which like collateral is commonly subject and (b) other matters to which like collateral is commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Security Agreement. There are no liens against or security interest in the Cooperative Shares relating to each Cooperative Loan (except for unpaid maintenance, assessments and other amounts owed to the related Cooperative Property which individually or in the aggregate will not have a material adverse effect on such Cooperative Loan), which have priority over DLJMC's security interest in such Cooperative Shares;

(xvii) The Mortgage Loan complies with all terms, conditions and requirements of the originator's underwriting standards in effect at the time of origination of such Mortgage Loan;

(xviii) Each Mortgage Loan constitutes a qualified mortgage under Section 860G(a)(3)(A) of the Code and Treasury Regulations Section 1.860G-2(a)(1);

(xix) With respect to each Mortgage Loan sold by the Seller, to the knowledge of DLJMC, (i) no borrower obtained a prepaid single-premium credit life, credit disability, credit unemployment or credit property insurance policy in connection with the origination of such Mortgage Loan, (ii) the related Servicer of each such Mortgage Loan has fully furnished, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information on its borrower credit files to Equifax, Experian and Trans Union Credit Information Company, on a monthly basis; and (iii) no Mortgage Loan will impose a Prepayment Premium for a term in excess of five years;

(xx) DLJMC has delivered or caused to be delivered to the Trustee or the Custodian on behalf of the Trustee the original Mortgage bearing evidence that such instruments have been recorded in the appropriate jurisdiction where the Mortgaged Property is located as determined by DLJMC (or in lieu of the original of the Mortgage or the assignment thereof, a duplicate or conformed copy of the Mortgage or the instrument of assignment, if any, together with a certificate of receipt from DLJMC or the settlement agent who handled the closing of the Mortgage Loan, certifying that such copy or copies represent true and correct

**Exhibit C**

| | |
|---|---|
| | copies represent true and correct copy(ies) of the originals) and that such original(s) have been or are currently submitted to be recorded in the appropriate governmental recording office of the jurisdiction where the Mortgaged Property is located or a certification or receipt of the recording authority evidencing the same; |
| | (xxi) The Mortgage File contains each of the documents specified in Section 2.01(b) of this Agreement; |
| | (xxii) No Mortgage Loan sold by the Seller secured by a Mortgaged Property located in the State of Georgia was originated on or after October 1, 2002 and before March 7, 2003 and no Mortgage Loan secured by Mortgaged Property located in the State of Georgia that was originated on or after March 7, 2003 is a 'high cost home loan' as defined in the Georgia Fair Lending Act (HB 1361), as amended; |
| | (xxiii) With respect to each Cooperative Loan, the Cooperative Shares that is pledged as security for the Cooperative Loan is held by a person as a tenant-stockholder (as defined in Section 216 of the Code) in a cooperative housing corporation (as defined in Section 216 of the Code); |
| | (xxiv) None of the Mortgage Loans sold by the Seller are classified as (a) a 'high cost mortgage' loan under the Home Ownership and Equity Protection Act of 1994 or (b) a 'high cost home,' 'covered,' 'high cost,' 'high risk home' or 'predatory' loan under any other applicable state, federal or local law; . . . |
| | (xxx) Each Mortgage Loan that is secured by residential real property(or a leasehold interest therein) has a loan-to-value ratio of 100% or less by Cut-Off Date Principal Balance; |
| | (xxxi) No Mortgage Loan sold by the Seller is a 'High Cost Loan' or 'Covered Loan,' as applicable, as such terms are defined in the then current Standard & Poor's LEVELS® Glossary which is now Version 5.6c Revised, Appendix E, in effect as of the Closing Date." Credit Suisse PSA Schedule III. |
| GSR MLSSA § 7.02 | "(A) The Seller hereby represents and warrants to the Purchaser and its successors and assigns that, as of the related Closing Date: |
| | (a) Due Organization and Authority. The Seller is a New York corporation, validly existing, and in good standing under the laws of its jurisdiction of incorporation or formation and has all licenses necessary to carry on its business as now being conducted, except where the failure to be licensed or qualified would not have a material effect on the Seller or on any Mortgage Loan, and is licensed, qualified and in good standing in the states where the Mortgaged Property is located if the laws of such state require licensing |

**Exhibit C**

or qualification in order to conduct business of the type conducted by the Seller. The Seller has corporate power and authority to execute and deliver this Agreement and to perform its obligations hereunder; the execution, delivery and performance of this Agreement (including all instruments of transfer to be delivered pursuant to this Agreement) by the Seller r and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement has been duly executed and delivered and constitutes the valid, legal, binding and enforceable obligation of the Seller, except as enforceability may be limited by (i) bankruptcy, insolvency, liquidation, receivership, moratorium, reorganization or other similar laws affecting the enforcement of the rights of creditors and (ii) general principles of equity, whether enforcement is sought in a proceeding in equity or at law. All requisite corporate action has been taken by the Seller to make this Agreement valid and binding upon the Seller in accordance with its terms;

(b) No Consent Required. No consent, approval, authorization or order is required for the transactions contemplated by this Agreement from any court, governmental agency or body, or federal or state regulatory authority having jurisdiction over the Seller is required or, if required, such consent, approval, authorization or order has been or will, prior to the related Closing Date, be obtained;

(c) Ordinary Course of Business. The consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Seller, and the transfer, assignment and conveyance of the Mortgage Notes and the Mortgages by the Seller pursuant to this Agreement are not subject to the bulk transfer or any similar statutory provisions in effect in any applicable jurisdiction;

(d) No Conflicts. Neither the execution and delivery of this Agreement, the acquisition or origination of the Mortgage Loans by the Seller, the sale of the Mortgage Loans to the Purchaser, the consummation of the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of (i) the Seller's charter or by-laws or (ii) any legal restriction or any agreement or instrument to which the Seller is now a party or by which it is bound, or constitute a

**Exhibit C**

default or result in an acceleration under any of the foregoing, except, in the case of clause (ii), any defaults or breaches that would not, either in any one instance or in the aggregate, result in a material adverse effect on the Seller, or result in the violation of any law, rule, regulation n, order, judgment or decree to which the Seller or its property is subject, or result in the creation or imposition of any lien, charge or encumbrance that would have a material adverse effect upon any of its properties pursuant to the terms of any mortgage, contract, deed of trust or other instrument, or impair the ability of the Purchaser to realize on the Mortgage Loans, impair the value of the Mortgage Loans, or impair the ability of the Purchaser to realize the full amount of any insurance benefits accruing pursuant to this Agreement;

(e) No Litigation Pending. There is no action, suit, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against the Seller, before any court, administrative agency or other tribunal asserting the invalidity of this Agreement, seeking to prevent the consummation of any of the transactions contemplated by this Agreement or which, either in any one instance or in the aggregate, would result in any material adverse change in the business, operations, financial condition, properties or assets of the Seller, or in any material impairment of the right or ability of the Seller to carry on its business substantially as now conducted, or which would draw into question the validity of this Agreement or the Mortgage Loans or of any action taken or to be taken in connection with the obligations of the Seller contemplated herein, or which would be likely to imp air materially the ability of the Seller to perform under the terms of this Agreement;

(f) Ability to Perform; Solvency. The Seller does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement. The Seller is solvent and the sale of the Mortgage Loans will not cause the Seller to become insolvent. The sale of the Mortgage Loans is not undertaken with the intent to hinder, delay or defraud any of Seller's creditors;

(g) Seller's Origination. The Seller's decision to originate any mortgage loan or to deny any mortgage loan application is an independent decision based upon the Underwriting Guidelines, and is in no way made as a result of Purchaser's

## Exhibit C

decision to purchase, or not to purchase, or the price Purchaser may offer to pay for, any such mortgage loan, if originated;

(h) Anti-Money Laundering Laws. The Seller has complied with all applicable anti-money laundering laws and regulations, including without limitation the USA Patriot Act of 2001 (collectively, the 'Anti-Money Laundering Laws'); the Seller has established an anti-money laundering compliance program as required by the Anti-Money Laundering Laws, has conducted the requisite due diligence in connection with the origination of each Mortgage Loan for purposes of the Anti-Money Laundering Laws, including with respect to the legitimacy of the applicable Mortgagor and the origin of the assets used by the said Mortgagor to purchase the property in question, and maintains, and will maintain, sufficient information to identify the applicable Mortgagor for purposes of the Anti-Money Laundering Laws

(i) Financial Statements; Other Information. The Seller has delivered to the Purchaser financial statements as to its last three complete fiscal years and any later quarter ended more than 60 days prior to the execution of this Agreement. All such financial statements fairly present the pertinent results of operations and changes in financial position for each of such periods and the financial position at the end of each such period of the Seller and its subsidiaries and have been prepared in accordance with generally accepted accounting principles consistently applied throughout the periods involved, except as set forth in the notes thereto. In addition, the Seller has delivered information as to its loan gain and loss experience in respect of foreclosures and its loan delinquency experience for the immediately preceding three year period, in each case with respect to mortgage loans owned by it and such mortgage loans serviced for others during such period, and all such information so delivered shall be true and correct in all material respects.

There has been no change in the business, operations, financial condition, properties or assets of the Seller since the date of the Seller's financial Statements that would have a material adverse effect on its ability to perform its obligations under this Agreement;

(j) Ability to Service. Seller has the facilities, procedures, and experienced personnel necessary for the sound servicing of mortgage loans of the same type as the Mortgage Loans. The

## Exhibit C

Seller is duly qualified, licensed, registered and otherwise authorized under all applicable federal, state and local laws, and regulations, if applicable, meets the minimum capital requirements set forth by HUD, the OTS, the OCC or the FDIC, if applicable, and is in good standing to enforce, originate, sell mortgage loans to, and service mortgage loans in the jurisdiction wherein the Mortgaged Properties are located;

(k)  [Reserved];

(l)  Selection Process. The Mortgage Loans were selected from among the outstanding one- to four-family mortgage loans in the Seller's portfolio at the related Closing Date as to which the representations and warranties set forth in Subsection 7.01 could be made and such selection was not made in a manner so as to affect adversely the interests of the Purchaser;

(m) Delivery to the Custodian. The Mortgage Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered with respect to each Mortgage Loan pursuant to the Custodial Agreement, shall be delivered to the Custodian all in compliance with the specific requirements of the Custodial Agreement. With respect to each Mortgage Loan, the Servicer will be in possession of a complete Mortgage File in compliance with Exhibit 2 hereto, except for such documents as will be delivered to the Custodian;

(n) Mortgage Loan Characteristics. The characteristics of the related Mortgage Loan Package are as set forth on the description of the pool characteristics for the applicable Mortgage Loan Package delivered pursuant to Section 9 on the related Closing Date in the form attached as Exhibit B to each related Assignment and Conveyance Agreement;

(o) No Untrue Information. Neither this Agreement nor any information, statement, tape, diskette, report, form, or other document furnished or to be furnished pursuant to this Agreement or any Reconstitution Agreement or in connection with the transactions contemplated hereby (including any Securitization Transaction or Whole Loan Transfer) contains or will contain any untrue statement of fact or omits or will omit to state a fact necessary to make the statements contained herein or therein not misleading;

(p) No Brokers. The Seller has not dealt with any broker, investment banker, agent or other person that may be entitled

## Exhibit C

to any commission or compensation in connection with the sale of the Mortgage Loans;

(q) Sale Treatment. The Seller expects to be advised by its independent certified public accountants that under generally accepted accounting principles the transfer of the Mortgage Loans will be treated as a sale on the books and records of the Seller and the Seller has determined that the disposition of the Mortgage Loans pursuant to this Agreement will be afforded sale treatment for tax and accounting purposes; and

(r) Reasonable Purchase Price. The consideration received by the Seller upon the sale of the Mortgage Loans under this Agreement constitutes fair consideration and reasonably equivalent value for the Mortgage Loans.

(B) The Servicer hereby warrants and represents to the Purchaser and its successor and assigns as of the Closing Date:

(a) Due Organization and Authority. The Servicer is a corporation duly organized, validly existing and in good standing under the laws of Maryland and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in each state where a Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by the Servicer, and in any event the Servicer is in compliance with the laws of any such state to the extent necessary to ensure the enforceability of the related Mortgage Loan in accordance with the terms of this Agreement; the Servicer has the full power and authority to execute and deliver this Agreement and to perform in accordance herewith; the execution, delivery and performance of this Agreement (including all instruments or transfer to be delivered pursuant to this Agreement) by the Servicer and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement evidences the valid, binding and enforceable obligation of the Servicer; and all requisite action has been taken by the Servicer to make this Agreement valid and binding upon the Servicer in accordance with its terms;

(b) Ordinary Course of Business. The consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Servicer;

(c) No Conflicts. Neither the execution and delivery of this Agreement, nor the fulfillment of or compliance with the

**Exhibit C**

terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of the Servicer's certificate of formation or limited liability company agreement or any legal restriction or any agreement or instrument to which the Servicer is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment or decree to which the Servicer or its property is subject, or impair the ability of the Purchaser to realize on the Mortgage Loans, or impair the value of the Mortgage Loans;

(d) Ability to Service. The Servicer is a seller/servicer of residential mortgage loans, with the facilities, procedures, and experienced personnel necessary for the sound servicing of mortgage loans of the same type as the Mortgage Loans;

(e) Ability to Perform. The Servicer does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement;

(f) No Litigation Pending. There is no action, suit, proceeding or investigation pending or, to the best of the Servicer's knowledge, threatened against the Servicer which, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties or assets of the Servicer, or in any material impairment of the right or ability of the Servicer to carry on its business substantially as now conducted, or in any material liability on the part of the Servicer, or which would draw into question the validity of this Agreement or the Mortgage Loans or of any action taken or to be taken in connection with the obligations of the Servicer contemplated herein, or which would be likely to impair materially the ability of the Servicer to perform under the terms of this Agreement;

(g) No Consent Required. No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Servicer of or compliance by the Servicer with this Agreement or the servicing of the Mortgage Loans as evidenced by the consummation of the transactions contemplated by this Agreement, or if required, such approval has been obtained prior to the related Closing Date;

(h) No Untrue Information. Neither this Agreement nor any

96

## Exhibit C

| | |
|---|---|
| | statement, report or other document furnished or to be furnished pursuant to this Agreement or in connection with the transactions contemplated hereby contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading; <br><br> (i) Prior Servicing. Prior to the date hereof, each Mortgage Loan has been serviced in all material respects in strict compliance with Accepted Servicing Practices and the Servicer has reported the Mortgagor credit files to each of the three credit repositories on a monthly basis in a timely manner; and <br><br> (j) Reasonable Servicing Fee. The Servicer acknowledges and agrees that the Servicing Fee represents reasonable compensation for performing such services and that the entire Servicing Fee shall be treated by the Servicer, for accounting and tax purposes, as compensation for the servicing and administration of the Mortgage Loans pursuant to this Agreement." |
| JPMorgan PSA §§ 2.04, 2.05(d) | "The Depositor hereby represents and warrants to the Trustee with respect to the Mortgage Loans or each Mortgage Loan, as the case may be, as of the date hereof or such other date set forth herein that as of the Closing Date: <br><br> (i) Immediately prior to the transfer and assignment contemplated herein, the Depositor was the sole owner and holder of the Mortgage Loans. The Mortgage Loans were not assigned or pledged by the Depositor and the Depositor had good and marketable title thereto, and the Depositor had full right to transfer and sell the Mortgage Loans to the Trustee free and clear of any encumbrance, participation interest, lien, equity, pledge, claim or security interest and had full right and authority subject to no interest or participation in, or agreement with any other party to sell or otherwise transfer the Mortgage Loans. <br><br> (ii) As of the Closing Date, the Depositor has transferred all right, title and interest in the Mortgage Loans to the Trustee on behalf of the Trust. <br><br> (iii) As of the Closing Date, the Depositor has not transferred the Mortgage Loans to the Trustee on behalf of the Trust with any intent to hinder, delay or defraud an of its creditors. <br><br> It is understood and agreed that the representations and warranties set forth in this Section 2.04 shall survive delivery of the respective Mortgage Files to the Trustee or the Custodian and shall inure to the benefit of the Trustee, notwithstanding any restrictive or qualified endorsement or assignment." JPMorgan PSA § 2.04. <br><br> "(d) Representations and Warranties of the Seller as to the |

**Exhibit C**

Mortgage Loans. The Seller hereby represents and warrants to the Trustee:

(i) The representations and warranties of JPMCB with respect to the Chase Originators Mortgage Loans in the JPMCB Purchase and Servicing Agreement, which has been assigned to the Trustee, were made as of the applicable Bring-Down Date, as specified in the related Purchase and Servicing Agreement. With respect to the Chase Originators Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 3.02 of the JPMCB Purchase and Servicing Agreement with respect to each of the Chase Originators Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(ii) The representations and warranties of CTX with respect to the CTX Mortgage Loans in the CTX Purchase Agreement, which has been assigned to the Trustee, were made as of the applicable Bring-Down Date, as specified in the CTX Purchase Agreement. With respect to the CTX Mortgage Loans and the period from such Bring- Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 7.01 of the CTX Purchase Agreement with respect to each of the CTX Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(iii) The representations and warranties of PHH with respect to the PHH Mortgage Loans in the PHH Purchase and Servicing Agreement, which has been assigned to the Trustee, were made as of the applicable Bring-Down Date, as specified in the Cendant Purchase and Servicing Agreement. With respect to the PHH Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in clauses (4), (20), (21), (25), (31) and (57) of Section 3.03 of the PHH Purchase and Servicing Agreement with respect to each of the PHH Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(iv) The representations and warranties of GreenPoint with respect to the GreenPoint Mortgage Loans in the GreenPoint Purchase and Servicing Agreement, which has been assigned to the Trustee, were made as of the applicable Bring-Down Date, as specified in the GreenPoint Purchase and Servicing Agreement. With respect to the GreenPoint Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 7.01 of the GreenPoint Purchase and Servicing Agreement with respect to each of the GreenPoint Mortgage Loans to and for

**Exhibit C**

the benefit of the Depositor, the Trustee and the Trust Fund.

(v) The representations and warranties of SunTrust with respect to the SunTrust Mortgage Loans in the SunTrust Purchase and Servicing Agreement, which has been assigned to the Trustee, were made as of the applicable Bring-Down Date, as specified in the SunTrust Purchase and Servicing Agreement. With respect to the SunTrust Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 7.01 of the SunTrust Purchase and Servicing Agreement with respect to each of the SunTrust Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(vi) The representations and warranties of M&T with respect to the M&T Mortgage Loans in the M&T Purchase and Servicing Agreement, which has been assigned to the Trustee, were made as of the applicable Bring-Down Date, as specified in the M&T Purchase and Servicing Agreement. With respect to the M&T Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 7.01 of the M&T Purchase and Servicing Agreement with respect to each of the M&T Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(vii) The representations and warranties of Weichert with respect to the Weichert Mortgage Loans in the Weichert Purchase Agreement, which has been assigned to the Trustee, were made as of the applicable Bring-Down Date, as specified in the Weichert Purchase Agreement. With respect to the Weichert Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 7.01 of the Weichert Purchase Agreement with respect to each of the Weichert Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund

(viii) The Seller hereby represents and warrants that, as of the Closing Date, (i) no Mortgage Loan is subject to the Home Ownership and Equity Protection Act of 1994 or any applicable, similar federal, state or local statutes or regulations related to 'high cost' mortgage loans or 'predatory,' 'high cost,' 'threshold' or 'covered' lending (as such terms are defined in the applicable statute or regulation); (ii) no Mortgage Loan is (w) a 'High-Cost Home Loan' as defined in the New Jersey Home Ownership Act effective November 27, 2003, (x) a 'High-Cost Home Loan' as defined in the New Mexico Home Loan Protection Act effective January 1, 2004, (y) a 'High Cost Loan' or 'Covered Loan' (as such terms are defined in the current S&P's LEVELS® Glossary),

## Exhibit C

| | |
|---|---|
| | or (z) governed by the Georgia Fair Lending Act, if such Mortgage Loan was originated on or after October 1, 2002 through March 6, 2003, (iii) each Mortgage Loan at origination complied in all material respects with applicable local, state and federal laws, including, but not limited to, applicable anti-predatory and abusive lending laws, and (iv) each Mortgage Loan is a 'qualified mortgage' within the meaning of 860G(a)(3) of the Code.<br><br>(ix) The Seller agrees to comply with the provisions of Section 2.05 in respect of a breach of any of such representations and warranties." JPMorgan PSA § 2.05(d). |
| Seller's Warranties and Servicing Agreement related to MABS 2006-AB1 dated as of November 1, 2005 ("MABS SWSA") § 3.02 | "Representations and Warranties Regarding Individual Mortgage Loans. As to each Mortgage Loan, the Company hereby represents and warrants to the Purchaser that as of the Closing Date:<br><br>(a) Mortgage Loans as Described. The information set forth in the Mortgage Loan Schedule attached hereto as Exhibit A and the information contained on the electronic Data File delivered to the Purchaser is true and correct.<br><br>(b) Payments Current. All payments required to be made up to the Cut-off Date for the Mortgage Loan under the terms of the Mortgage Note have been made and credited.  No payment under any Mortgage Loan has been 30 days delinquent more than one time within twelve months prior to the Closing Date.<br><br>(c) No Outstanding Charges. There are no defaults in complying with the terms of the Mortgages, and all taxes, governmental assessments, insurance premiums, leasehold payments, water, sewer and municipal charges, which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable.  The Company has not advanced funds, or induced, or solicited directly or indirectly, the payment of any amount required under the Mortgage Loan, except for interest accruing from the date of the Mortgage Note or date of disbursement of the Mortgage Loan proceeds, whichever is later, to the day which precedes by one month the Due Date of the first installment of principal and interest.<br><br>(d) Original Terms Unmodified. The terms of the Mortgage Note and Mortgage have not been impaired, waived, altered or modified in any respect, except by a written instrument which has been recorded, if necessary, to protect the interests of the Purchaser and which has been delivered to the Custodian.  The substance of any such waiver, alteration or modification has been approved by the issuer of any related PMI Policy and the title insurer, to the extent required by the policy, and its terms are reflected on the Mortgage Loan Schedule.  No Mortgagor has been released, in whole or in part, except in connection with an assumption agreement approved by the issuer of any related PMI Policy and the title insurer, to the |

**Exhibit C**

extent required by the policy, and which assumption agreement is part of the Mortgage File delivered to the Custodian and the terms of which are reflected in the Mortgage Loan Schedule.

(e) No Defenses. The Mortgage Loan is not subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto.

(f) No Satisfaction of Mortgage. The Mortgage has not been satisfied, canceled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such satisfaction, release, cancellation, subordination or rescission.

(g) Validity of Mortgage Documents. The Mortgage Note and the Mortgage and related documents are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms.  All parties to the Mortgage Note and the Mortgage had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage, and the Mortgage Note and the Mortgage have been duly and properly executed by such parties.  Either the Mortgagor is a natural person or the Mortgagor is an inter-vivos trust acceptable to the Company's Underwriting Guidelines and the party that established the trust is a beneficiary of such trust, occupies the related Mortgaged Property and is eligible to receive process on behalf of such trust.

(h) No Fraud. No error, omission, misrepresentation, negligence, fraud or similar occurrence with respect to a Mortgage Loan has taken place on the part of the Company, the Mortgagor, any broker, the originator, any appraiser, or to the best of the Company's knowledge, any builder, or any developer, or any other party involved in the origination of the Mortgage Loan or in the application of any insurance in relation to such Mortgage Loan.

(i) Compliance with Applicable Laws. Any and all requirements of any federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection and privacy, equal credit opportunity, disclosure or predatory and abusive lending laws applicable to the Mortgage Loan have been complied with.  All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including, but not limited to,

**Exhibit C**

certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities.

(j) Location and Type of Mortgaged Property. The Mortgaged Property is located in the state identified in the Mortgage Loan Schedule and consists of a contiguous parcel of real property with a detached single family residence erected thereon, or a two- to four-family dwelling, or an individual condominium unit in a condominium project, or an individual unit in a planned unit development or a townhouse, provided, however, that any condominium project or planned unit development shall conform with the applicable Fannie Mae or Freddie Mac requirements, or the Underwriting Guidelines, regarding such dwellings, and no residence or dwelling is a mobile home or a Cooperative Apartment. As of the respective appraisal date for each Mortgaged Property, any Mortgaged Property being used for commercial purposes conforms to the Underwriting Guidelines and, to the best of Company's knowledge, since the date of such Appraisal, no portion of the Mortgaged Property has been used for commercial purposes outside of the Underwriting Guidelines. With respect to any Mortgaged Property being used for commercial purposes, the market value of the property as determined by the related appraisal is primarily a function of the Mortgaged Property's residential characteristics rather than of the business use or any special business-use modifications that were made.

(k) Valid First Lien. The Mortgage is a valid, subsisting and enforceable first lien on the Mortgaged Property, including all buildings on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems located in or annexed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing. The lien of such Mortgage is subject only to:

(1) the lien of current real property taxes and assessments not yet due and payable; (2) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the Mortgage Loan and (i) referred to or otherwise considered in the appraisal made for the originator of the Mortgage Loan and (ii) which do not adversely affect the Appraised Value of the Mortgaged Property set forth in such appraisal; and (3) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property.

Any security agreement, chattel mortgage or equivalent document

**Exhibit C**

related to and delivered in connection with each Mortgage Loan establishes and creates a valid, subsisting, enforceable and perfected first lien and first priority security interest on the property described therein and the Company has full right to sell and assign the same to the Purchaser.

(l) Full Disbursement of Proceeds. The proceeds of the Mortgage Loan have been fully disbursed, except for escrows established or created due to seasonal weather conditions, as allowed under the Underwriting Guidelines, and there is no requirement for future advances thereunder.  All costs, fees and expenses incurred in making or closing the Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage.

(m) Consolidation of Future Advances. Any future advances made prior to the Cut-off Date, have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term reflected on the Mortgage Loan Schedule.  The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to Fannie Mae or Freddie Mac; the consolidated principal amount does not exceed the original principal amount of the Mortgage Loan; the Company shall not make future advances after the Cut-off Date.

(n) Ownership. The Company is the sole owner of record and holder of the Mortgage Loan and the related Mortgage Note and the Mortgage are not assigned or pledged, and the Company has good and marketable title thereto and has full right and authority to transfer and sell the Mortgage Loan to the Purchaser.  The Company is transferring the Mortgage Loan free and clear of any and all encumbrances, liens, pledges, equities, participation interests, claims, charges or security interests of any nature encumbering such Mortgage Loan.

(o) Origination/Doing Business. The Mortgage Loan was originated by a savings and loan association, a savings bank, a commercial bank, a credit union, an insurance company, or similar institution that is supervised and examined by a federal or state authority or by a mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act. All parties which have had any interest in the Mortgage Loan, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) (1) in compliance with any and all applicable licensing requirements of the laws of the state wherein the

**Exhibit C**

Mortgaged Property is located, and (2) organized under the laws of such state, or (3) qualified to do business in such state, or (4) federal savings and loan associations or national banks having principal offices in such state, or (5) not doing business in such state.

(p) LTV; PMI Policy; LPMI Policy. No Mortgage Loan has a LTV greater than 95%. Except as indicated on the Data File, if the LTV of the Mortgage Loan was greater than 80% at the time of origination, a portion of the unpaid principal balance of the Mortgage Loan is and will be insured as to payment defaults by a PMI Policy. If the Mortgage Loan is insured by a PMI Policy which is not an LPMI Policy, the coverage will remain in place until (i) the LTV decreases to 78% or (ii) the PMI Policy is otherwise terminated pursuant to the Homeowners Protection Act of 1998, 12 USC §4901, et seq. All provisions of such PMI Policy or LPMI Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid. The Qualified Insurer has a claims paying ability acceptable to Fannie Mae or Freddie Mac. Any Mortgage Loan subject to a PMI Policy other than an LPMI Policy obligates the Mortgagor, thereunder to maintain the PMI Policy other than an LPMI Policy and to pay all premiums and charges in connection therewith;

(q) Title Insurance. The Mortgage Loan is covered by an ALTA lender's title insurance policy or in the case of any Mortgage Loan secured by a Mortgaged Property located in a jurisdiction where such policies are generally not available, an opinion of counsel of the type customarily rendered in such jurisdiction in lieu of title insurance, or other generally acceptable form of policy of insurance acceptable to Fannie Mae or Freddie Mac, issued by a title insurer acceptable to Fannie Mae or Freddie Mac and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Company, its successors and assigns, as to the first priority (lien of the Mortgage in the original principal amount of the Mortgage Loan, subject only to the exceptions contained in clauses (1), (2) and (3) of Paragraph (k) of this Section 3.02, and against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment to the Mortgage Interest Rate and Monthly Payment. Additionally, such lender's title insurance policy includes no exceptions regarding ingress, egress or encroachments that impact the value or the marketability of the Mortgaged Property. The Company, its successors and assigns are the sole insureds of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect and will be in force and effect upon the consummation of the transactions contemplated by this Agreement. No claims have been made under such lender's title insurance policy, and no prior holder of the Mortgage,

## Exhibit C

including the Company, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy. Where required by applicable state law, the Mortgagor has been given the opportunity to choose the carrier of the required mortgage title insurance.

(r) No Defaults. There is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and neither the Company nor its predecessors have waived any default, breach, violation or event of acceleration.

(s) No Mechanics' Liens. There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under the law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage which are not insured against by the title insurance policy referenced in Paragraph (q) above.

(t) Location of Improvements; No Encroachments. Except as insured against by the title insurance policy referenced in Paragraph (q) above, all improvements which were considered in determining the Appraised Value of the Mortgaged Property lay wholly within the boundaries and building restriction lines of the Mortgaged Property (and wholly within the project with respect to a condominium unit) and no improvements on adjoining properties encroach upon the Mortgaged Property. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning laws or regulations.

(u) Payment Terms. Except with respect to the Interest Only Mortgage Loans, principal payments commenced no more than 60 days after the funds were disbursed to the Mortgagor in connection with the Mortgage Loan. Each Mortgage Loan is payable in equal monthly installments of principal and interest, with interest calculated and payable in arrears, sufficient (except with respect to Balloon Loans) to amortize the Mortgage Loan fully by the stated maturity date set for in the Mortgage Note over an original term to maturity of not more than 30 years. With respect to each Balloon Loan, the Mortgage Loan is payable in equal monthly installments of principal and interest based on a fifteen (15) or thirty (30) year amortization schedule, as set forth in the related Mortgage Note, and a final lump sum payment substantially greater than the preceding Monthly Payment is required which is sufficient to amortize the remaining principal balance of the Balloon Loan. No Balloon Loan has an original stated maturity of less than seven (7) years. As to each Adjustable Rate Mortgage Loan on each applicable

**Exhibit C**

Adjustment Date, the Mortgage Interest Rate will be adjusted to equal the sum of the Index plus the applicable Gross Margin, rounded, to the extent required by the related Mortgage Note, up or down to the nearest multiple of 0.125% indicated by the Mortgage Note; provided that the Mortgage Interest Rate will not increase or decrease by more than the Periodic Interest Rate Cap on any Adjustment Date, and will in no event exceed the maximum Mortgage Interest Rate or be lower than the minimum Mortgage Interest Rate listed on the Mortgage Loan Schedule for such Mortgage Loan. As to each Adjustable Rate Mortgage Loan that is not an Interest Only Mortgage Loan, each Mortgage Note requires a monthly payment which is sufficient, during the period prior to the first adjustment to the Mortgage Interest Rate, to fully amortize the outstanding principal balance as of the first day of such period over the then remaining term of such Mortgage Note and to pay interest at the related Mortgage Interest Rate. As to each Adjustable Rate Mortgage Loan, if the related Mortgage Interest Rate changes on an Adjustment Date or, with respect to an Interest Only Mortgage Loan, on an Adjustment Date following the related interest only period, the then outstanding principal balance will be reamortized over the remaining life of such Mortgage Loan. No Mortgage Loan provides for the capitalization or forbearance of interest. No Mortgage Loan contains terms or provisions which would result in negative amortization. No Mortgage Loan is a Convertible Mortgage Loan;

(v) Customary Provisions. The Mortgage and related Mortgage Note contain customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure. There is no homestead or other exemption available to a Mortgagor which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage.

(w) Occupancy of the Mortgaged Property. As of the date of origination the Mortgaged Property was, and to the best of Company's knowledge, as of the Closing Date is, lawfully occupied under applicable law.

(x) No Additional Collateral. The Mortgage Note is not and has not been secured by any collateral, pledged account or other security except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage referred to in Paragraph (k) above and such collateral does not serve as security for any other obligation.

(y) Deeds of Trust. In the event the Mortgage constitutes a deed of

## Exhibit C

trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Mortgagee to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor.

(z) Acceptable Investment. The Company has no knowledge of any circumstances or conditions with respect to the Mortgage Loan, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that can reasonably be expected to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan.

(aa) Transfer of Mortgage Loans. If the Mortgage Loan is not a MERS Mortgage Loan, the Assignment of Mortgage, upon the insertion of the name of the assignee and recording information, is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located.

(bb) Mortgaged Property Undamaged. The Mortgaged Property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect adversely the value of the Mortgaged Property as security for the Mortgage Loan or the use for which the premises were intended.

(cc) Collection Practices; Escrow Deposits. The origination, servicing and collection practices used with respect to the Mortgage Loan have been in accordance with Accepted Servicing Practices, and have been in all material respects legal and proper. With respect to escrow deposits and Escrow Payments, all such payments are in the possession of the Company and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made. All Escrow Payments have been collected in full compliance with state and federal law. No escrow deposits or Escrow Payments or other charges or payments due the Company have been capitalized under the Mortgage Note.

(dd) No Condemnation. There is no proceeding pending or to the best of the Company's knowledge threatened for the total or partial condemnation of the related Mortgaged Property;

(ee) The Appraisal. The Mortgage File includes a full appraisal (with interior inspections) of the related Mortgaged Property by an appraiser who had no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof; and whose compensation is not affected by the approval or disapproval of the Mortgage Loan and the appraisal and the appraiser both satisfy the applicable requirements of Title XI of the Financial Institution Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder, all as in effect on the date the

**Exhibit C**

Mortgage Loan was originated.

(ff) Insurance. The Mortgaged Property securing each Mortgage Loan is insured by an insurer acceptable to Fannie Mae or Freddie Mac against loss by fire and such hazards as are covered under a standard extended coverage endorsement and such other hazards as are customary in the area where the Mortgaged Property is located pursuant to insurance policies conforming to the requirements of Section 4.10, in an amount which is at least equal to the lesser of (a) 100% of the insurable value, on a replacement cost basis, of the improvements on the related Mortgaged Property, or (b) the greater of (i) the outstanding principal balance of the Mortgage Loan and (ii) an amount such that the proceeds of such insurance shall be sufficient to prevent the application to the Mortgagor or the loss payee of any coinsurance clause under the policy. If the Mortgaged Property is a condominium unit, it is included under the coverage afforded by a blanket policy for the project. If the improvements on the Mortgaged Property are in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards, a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration is in effect with a generally acceptable insurance carrier, in an amount representing coverage not less than the least of (A) the outstanding principal balance of the Mortgage Loan, (B) the full insurable value and (C) the maximum amount of insurance which was available under the Flood Disaster Protection Act of 1973, as amended. All individual insurance policies contain a standard mortgagee clause naming the Company and its successors and assigns as mortgagee, and all premiums thereon have been paid. The Mortgage obligates the Mortgagor thereunder to maintain a hazard insurance policy at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor. The hazard insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of the Purchaser upon the consummation of the transactions contemplated by this Agreement. The Company has not acted or failed to act so as to impair the coverage of any such insurance policy or the validity, binding effect and enforceability thereof.

(gg) Servicemembers Civil Relief Act. The Mortgagor has not notified the Company, and the Company has no knowledge of any relief requested or allowed to the Mortgagor under the Servicemembers Civil Relief Act, as amended.

(hh) Balloon Loans, Graduated Payments or Contingent Interests. No Mortgage Loan is a Balloon Loan. No Mortgage Loan is a

**Exhibit C**

graduated payment mortgage loan and the Mortgage Loan does not have a shared appreciation or other contingent interest feature.

(ii) No Construction Loans. No Mortgage Loan was made in connection with (i) the construction or rehabilitation of a Mortgage Property or (ii) facilitating the trade-in or exchange of a Mortgaged Property other than a construction-to-permanent loan which has converted to a permanent Mortgage Loan.

(jj) Underwriting. Each Mortgage Loan was underwritten in accordance with the Underwriting Guidelines and the Mortgage Note and Mortgage are on forms acceptable to Freddie Mac or Fannie Mae.

(kk) Anti-Money Laundering Laws. The Company has complied with all applicable anti-money laundering laws and regulations (the 'Anti-Money Laundering Laws'), and has established an anti-money laundering compliance program as required by the Anti-Money Laundering Laws. No Mortgage Loan is subject to nullification pursuant to Executive Order 13224 (the 'Executive Order') or the regulations promulgated by the Office of Foreign Assets Control of the United States Department of the Treasury (the 'OFAC Regulations') or in violation of the Executive Order or the OFAC Regulations, and as of the origination date of the related Mortgage Loan, no Mortgagor was subject to the provisions of such Executive Order or the OFAC Regulations nor listed as a 'blocked person' for purposes of the OFAC Regulations;

(ll) Credit Reporting. With respect to each Mortgage Loan, the Company has furnished complete information (*e.g.*, favorable and unfavorable) on the related borrower credit files to Equifax, Experian and Trans Union Credit Information Company, in accordance with the Fair Credit Reporting Act and its implementing regulations.

(mm) Single Premium Credit Life Insurance. No Mortgagor was required to purchase any single premium credit insurance policy (e.g. life, disability, accident, unemployment or health insurance product) or debt cancellation agreement as a condition of obtaining the extension of credit. No Mortgagor obtained a prepaid single premium credit insurance policy (e.g. life, disability, accident, unemployment or health insurance product) as part of the origination of the Mortgage Loan. No proceeds from any Mortgage Loan were used to purchase single premium credit insurance policies or debt cancellation agreements as part of the origination of, or as a condition to closing, such Mortgage Loan.

(nn) Prepayment Penalty. The Mortgage Loan Documents with respect to each Mortgage Loan subject to Prepayment Penalties specifically authorizes such Prepayment Penalties to be collected, such Prepayment Penalties are permissible and enforceable in accordance with the terms of the related Mortgage Loan Documents

## Exhibit C

and all applicable federal, state and local laws (except to the extent that the enforceability thereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally or the collectability thereof may be limited due to acceleration in connection with a foreclosure).  No Mortgage Loan provides for the payment of a Prepayment Penalty beyond the five-year term following the origination of the Mortgage Loan.  With respect to any Mortgage Loan that contains a provision permitting imposition of a premium upon a prepayment prior to maturity: (i) prior to the loan's origination, the Mortgagor agreed to such premium in exchange for a monetary benefit, including but not limited to a rate or fee reduction; (ii) prior to the loan's origination, the Mortgagor was offered the option of obtaining a Mortgage Loan that did not require payment of such a premium; (iii) the prepayment premium is disclosed to the Mortgagor in the loan documents pursuant to applicable state and federal law, (iv) for Mortgage Loans originated on or after September 1, 2004, the duration of the prepayment period shall not exceed three (3) years from the date of the Mortgage Note, unless the Mortgage Loan was modified to reduce the prepayment period to no more than three (3) years from the date of the Mortgage Note and the Mortgagor was notified in writing of such reduction in prepayment period, and (v) notwithstanding any state or federal law to the contrary, the Company shall recommend that such prepayment premium is not imposed in any instance when the mortgage debt is accelerated as the result of the Mortgagor's default in making the loan payments;

(oo) No High Cost or Covered Loans. No Mortgage Loan is a High Cost Loan or Covered Loan.

(pp) Arbitration. With respect to each Mortgage Loan, neither the related Mortgage nor the related Mortgage Note requires the Mortgagor to submit to arbitration to resolve any dispute arising out of or relating in any way to the Mortgage Loan transaction.

(qq) No Violation of Environmental Laws. To the best of the Company's knowledge, there is no pending action or proceeding directly involving the Mortgaged Property in which compliance with any environmental law, rule or regulation is an issue; there is no violation of any environmental law, rule or regulation with respect to the Mortgage Property; and nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation constituting a prerequisite to use and enjoyment of said property.

(rr) Due on Sale. The Mortgage contains an enforceable provision, to the extent allowed under applicable law, for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event that the Mortgaged Property is sold or transferred

**Exhibit C**

without the prior written consent of the mortgagee.

(ss) Interest Calculations. Interest on each Mortgage Loan is calculated on the basis of a 360-day year consisting of twelve 30-day months.

(tt) Georgia Loans. There is no Mortgage Loan that was originated on or after October 1, 2002 and on or prior to March 7, 2003, which is secured by property located in the State of Georgia.

(uu) Cooperative Loans. No Mortgage Loan is a Cooperative Loan.

(vv) Leasehold Estates. With respect to each Mortgage Loan secured in whole or in part by the interest of the Mortgagor as a lessee under a ground lease of the related Mortgaged Property (a 'Ground Lease') and not be a fee interest in such Mortgaged Property: (i) The Mortgagor is the owner of a valid and subsisting interest as tenant under the Ground Lease; (ii) The Ground Lease is in full force and effect; (iii) The Mortgagor is not in default under any provision of the lease; (iv) The lessor under the Ground Lease is not in default under any of the terms or provisions thereof on the part of the lessor to be observed or performed; (v) The term of the Ground Lease exceeds the maturity date of the related Mortgage Loan by at least five (5) years; (vi) The Mortgagee under the Mortgage Loan is given at least 60 days' notice of any default and an opportunity to cure any defaults under the Ground Lease or to take over the Mortgagor's rights under the Ground Lease; (vii) The Ground Lease does not contain any default provisions that could give rise to forfeiture or termination of the Ground Lease except for the non-payment of the Ground Lease rents; (viii) The Ground Lease provides that the leasehold can be transferred, mortgaged and sublet an unlimited number of times either without restriction or on payment of a reasonable fee and delivery of reasonable documentation to the lessor; (ix) The Ground Lease or a memorandum thereof has been recorded and by its terms permits the leasehold estate to be mortgaged; and (x) The execution, delivery and performance of the Mortgage do not require consent (other than those consents which have been obtained and are in full force and effect) under, and will not contravene any provision of or cause a default under, the Ground Lease.

(ww) Buydown Mortgage Loans. No Mortgage Loan is a Buydown Mortgage Loan.

(xx) Subsidy Loans. No Mortgage Loan is a Subsidy Loan, or otherwise contains provisions pursuant to which Monthly Payments are (a) paid or partially paid with funds deposited in any separate account established by the Company, the Mortgagor, or anyone on behalf of the Mortgagor or (b) paid by any source other than the Mortgagor.

(zz) Bankruptcy. No Mortgagor was not a debtor in any state or federal bankruptcy or insolvency proceeding at the time the

111

**Exhibit C**

Mortgage Loan was originated and as of the Closing Date, the Company has not received notice that any Mortgagor is a debtor under any state or federal bankruptcy or insolvency proceeding.

(aaa) Disclosure Materials. The Mortgagor has received all disclosure materials required by applicable law with respect to the making of such mortgage loans.

(bbb) MERS. With respect to each MERS Mortgage Loan or those Mortgage Loans designated to be registered with MERS, a mortgage identification number (a 'MIN') has been assigned by MERS and such MIN is accurately provided on the related Mortgage Loan Schedule. The related Assignment of Mortgage to MERS has been duly and properly recorded.

(ccc) Higher Cost Products. No Mortgagor was encouraged or required to select a Mortgage Loan product offered by the Mortgage Loan's originator which is a higher cost product designed for less creditworthy borrowers, unless at the time of the Mortgage Loan's origination, such Mortgagor did not qualify taking into account credit history and debt to income ratios for a lower cost credit product then offered by the Mortgage Loan's originator or any affiliate of the Mortgage Loan's originator. If, at the time of loan application, the Mortgagor may have qualified for a lower cost credit product then offered by any mortgage lending affiliate of the Mortgage Loan's originator, the Mortgage Loan's originator referred the Mortgagor's application to such affiliate for underwriting consideration.

(ddd) Underwriting Methodology. The methodology used in underwriting the extension of credit for each Mortgage Loan employs objective mathematical principles which relate the Mortgagor's income, assets and liabilities to the proposed payment and such underwriting methodology does not rely on the extent of the Mortgagor's equity in the collateral as the principal determining factor in approving such credit extension. Such underwriting methodology confirmed that at the time of origination (application/approval) the Mortgagor had a reasonable ability to make timely payments on the Mortgage Loan.

(eee) Fees and Charges. All fees and charges (including finance charges) and whether or not financed, assessed, collected or to be collected in connection with the origination and servicing of each Mortgage Loan has been disclosed in writing to the Mortgagor in accordance with applicable state and federal law and regulation.

(fff) Points and Fees. All points and fees related to each Mortgage Loan were disclosed in writing to the Mortgagor in accordance with applicable state and federal law and regulation.

(ggg) Yield Spread Premium.
The Mortgagor has not made or caused to be made any payment in the nature of an 'average' or 'yield spread premium' to a mortgage

## Exhibit C

| | |
|---|---|
| | broker or a like Person which has not been fully disclosed to the Mortgagor.<br><br>(hhh) Interest Only Mortgage Loans. No Mortgage Loan is an Interest Only Mortgage Loan.<br><br>(iii) Lost Mortgage Note. With respect to any Mortgage Loan as to which an affidavit has been delivered to the Purchaser certifying that the original Mortgage Note has been lost or destroyed and has not been replaced, if such Mortgage Loan is subsequently in default, the enforcement of such Mortgage Loan will not be materially adversely affected by the absence of the original Mortgage Note.<br><br>(jjj) Massachusetts. To the extent applicable, a borrower benefit test has been performed in compliance with the Massachusetts General Laws Chapter 263 of the Acts of 2004." |
| Mortgage Loan Purchase Agreement related to MSM 2006-7 dated as of May 1, 2006 ("MSM MLPA") § 3.01 | "Seller Representations and Warranties Relating to the Mortgage Loans. The Seller hereby represents and warrants to the Purchaser, with respect to the Mortgage Loans, that as of the Closing Date or as of such date specifically provided herein:<br><br>(a) The information set forth in the Mortgage Loan Schedule is complete, true and correct in all material respects as of the Cut-off Date.<br><br>(b) Seller is the sole owner and holder of the Mortgage Loans free and clear of any liens, pledges, except for the pledge of the Mortgage note by Seller with a warehouse lender disclosed to Purchaser, charges or security interest of any nature, and has full right and authority to sell and assign the same.<br><br>(c) With respect to each Mortgage Loan that is not a Co-op Loan, the Mortgage is a valid, existing and enforceable first (or, if indicated by Seller, second) lien on the Mortgaged Property, including all improvements on the Mortgaged Property subject only to (i) the lien of current real property taxes and assessments not yet due and payable, (ii) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording being acceptable to Mortgage lending institutions generally and specifically referred to in the owner's title insurance policy delivered to the originator of the Mortgage Loan and (x) specifically referred to or otherwise considered in the appraisal made for the originator of the Mortgage Loan or (y) which do not adversely affect the appraised value of the Mortgaged Property (or underlying Mortgaged Property (or underlying Mortgaged Property, in the case of a Co-op Loan), (iii) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property (or underlying Mortgaged Property, in the case of a Co-op Loan) (iv) with respect to a second lien only, the lien of the first mortgage on |

113

## Exhibit C

the related mortgaged property. Any security agreement, chattel Mortgage or equivalent document related to and delivered in connection with the Mortgage loan establishes and creates a valid, existing and enforceable first (or, if indicated by Seller, second) lien and first (or if indicated by Seller, second) priority security interest on the property described therein and the Seller has the full right to sell and assign the same to Purchaser. With respect to each Co-op Loan, the related Mortgage is a valid, subsisting and enforceable first priority security interest on the related cooperative shares securing the Mortgage note, subject only to (i) liens of the related residential cooperative housing corporation for unpaid assessments representing the borrower's pro rata share of the related residential cooperative housing corporation's payment for its blanket Mortgage, current and future real property taxes, insurance premiums, maintenance fees and other assessments to which like collateral is commonly subject and (ii) other matters to which like collateral is commonly subject to which do not materially interfere with the benefits of the security interest intended to be provided by the related security agreement.

(d) The Mortgage Loan is not in default and all monthly payments due prior to the transaction have been timely paid and all taxes, assessments and insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents relating to the property secured by the Mortgage Loan have been paid. Seller has not advanced funds or induced or solicited any advances or funds by a party other than a borrower directly or indirectly, for the payment of any amounts required by the Mortgage loans.

(e) With respect to escrow deposits and escrow payments, all such payments are in the possession of Seller and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made.

(f) The terms of the Mortgage Note and Mortgage have not been impaired, waived, altered or modified in any respect from the date of origination, except by a written instrument which has been recorded, if necessary to protect the interest of Purchaser, and which has been delivered to Purchaser or to such other person as Purchaser shall designate in writing. The substance of any such waiver, alteration or modification has been approved by the issuer of any related private mortgage insurance policy and the title insurer, if any, to the extent required by the policy. No borrower has been released, in whole or in part, except in connection with an assumption agreement, approved by the issuer of any related private mortgage insurance policy and the title insurer, to the extent required by the policy, and which assumption agreement is part of the mortgage file delivered to Purchaser or to such other person as Purchaser shall designate in writing.

**Exhibit C**

| | |
|---|---|
| | (g) The Mortgage Loan is not subject to any right of rescission, set-off, counter claim or defense and is not unenforceable under any terms. The Mortgage note, the Mortgage and any other agreement executed and delivered by a borrower or guarantor, if applicable, are genuine, legal, valid, binding and enforceable obligations of the maker thereof. All parties to the Mortgage note and any other agreement executed and delivered by a borrower or guarantor, if applicable, had legal capacity to execute such documents and all such documents have, in fact, been properly executed by such parties. |
| | (h) The Mortgage Loan has not been satisfied, cancelled, subordinated or rescinded, in whole or in part (other than as to principal prepayments in full which may have been received prior to the transaction date), and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such satisfaction, cancellation, subordination, rescission or release. |
| | (i) The Mortgaged Property (or underlying Mortgaged Property, in the case of a Co-op Loan) and all improvements thereon are insured against loss by fire and other such hazards as are customary in the area where the Mortgaged Property (or underlying Mortgaged Property, in the case of a Co-op Loan) is located. Such coverage shall contain fire and hazard insurance policy with extended coverage as called for under the Seller's guide. Such insurance policy and any other insurance policy related to the Mortgage Loan or the Mortgaged Property (or underlying Mortgaged Property, in the case of a Co-op Loan) contains a standard Mortgagee clause naming Seller and its successors and assigns as Mortgagee and loss payee. Each Mortgage obligates the borrower there under to maintain such insurance at their costs and expense and allows the Mortgagee to obtain and maintain such insurance at borrower's costs and expense, and to seek reimbursement from the borrower should there be any failure by the borrower to maintain such policy. If any flood insurance is required by applicable law or pursuant to the Mortgage Loan documents or any other applicable requirement, then it has been obtained and in full force and effect. Any statements made by the borrower or the Seller in applications for such policies were true, complete and correct at the time the application was made and there are no events that have occurred since that policy was issued that would affect the stated coverage of the policy. |
| | (j) Any and all requirements of any federal, state or local law which include, but are not limited to usury, truth-in-lending, real estate settlement procedures, disclosure laws, consumer credit protection and equal credit opportunity have been complied with. |

**Exhibit C**

(k) The proceeds of the Mortgage Loan have been fully disbursed and there is no requirement or anticipation of future advances there under (other than any escrow holdbacks retained pursuant to the terms of a related construction loan). All costs, fees and expenses incurred in making, closing or recording the Mortgage Loan have been paid.

(l) Each Mortgage Loan that is not a Co-op Loan is covered by an ALTA lender's title insurance policy or other generally acceptable form of policy, or with respect to any mortgage loan for which the related mortgaged property is located in California, a CLTA lender's title insurance policy, or insurance acceptable to Fannie Mae or Freddie Mac, issued by a title insurer acceptable to Fannie Mae or Freddie Mac and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring (subject to the exceptions contained in paragraph (c) above) the Seller, its successors and assigns, as to the first (or, if indicated by Seller, second) priority lien of the Mortgage in the original principal amount of the Mortgage Loan, subject only to the exceptions contained in clauses (i), (ii), (iii) and (iv) of paragraph (c) of this Section 3.01, and in this case of adjustable rate mortgage loans, against any loss by reason of the invalidity or unenforcability of the lien resulting from the provisions of the mortgage providing for adjustment to the mortgage interest rate and monthly payment. Where required by applicable state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of the required mortgage title insurance. The Seller, its successors and assigns, are the sole insureds of such lender's title insurance policy and such lender's title insurance policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated by this Agreement. No claims have been made under such lender's title insurance policy, and no prior holder of the related Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy.

(m) There is no default, breach, violation, anticipated breach or event of acceleration existing under the Mortgage or the related Mortgage Note and no existing or known event which, with the passage of time, (or with notice and the expiration of any grace or cure period) would constitute a default, breach, violation or event of acceleration under such Mortgage or the related Mortgage Note.

(n) At settlement of the Mortgage Loan, and, to the Seller's knowledge as of the transaction date, there were no mechanic's liens or claims for work, labor or material affecting the Mortgaged Property (or the related residential dwelling unit at the underlying mortgaged property, in the case of a Co-op Loan) which are or

## Exhibit C

may be a lien prior to the lien of such Mortgage except those which are insured against by the title insurance policy.

(o) With respect to each mortgage loan, which is not a Co-op Loan, all improvements subject to the Mortgage which were considered in determining the appraised value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of the Mortgaged Property except for de minimis encroachments permitted by the Fannie Mae Guide and which have been noted on the appraisal or the title policy affirmatively insures against loss or damage by reason of any violation, variation or encroachment or adverse circumstance which is either disclosed or would have been disclosed by an accurate survey, and no improvements on adjoining properties encroach upon the Mortgaged Property except those which are insured against by the title insurance policy referred to in clause (m) above or are acceptable under Fannie Mae or Freddie Mac guidelines and all improvements on the property comply with all applicable zoning and subdivision laws and ordinances.

(p) Except for approximately 0.84% of the Mortgage Loans, by aggregate stated principal balance as of the Cut-off Date, each Mortgage Loan substantially complies with all the terms, conditions and requirements of Seller's standards in effect at the time of origination of such Mortgage Loan. With respect to the remaining Mortgage Loans, each such Mortgage Loan complies with all the terms, conditions and requirements of the related originator's standards in effect at the time of origination of such Mortgage Loan. The Mortgage Notes and Mortgages (exclusive of any riders) are on forms generally acceptable to Fannie Mae or Freddie Mac.

(q) The Mortgaged Property is not subject to any material damage by waste, fire, earthquake, windstorm, flood or other casualty. At origination of the Mortgage Loan there was, and there currently is, no proceeding pending for the total or partial condemnation of the Mortgaged Property. To the best of the Seller's knowledge there are no such proceedings scheduled to commence at a future date.

(r) The Mortgage and related Mortgage Note contain customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property (or underlying Mortgaged Property, in the case of a Co-op Loan) of the benefits of the security provided thereby, including (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure. Following the date of origination of the Mortgage Loan, the Mortgaged Property (or underlying Mortgaged Property, in the case of a Co-op Loan) has not been subject to any bankruptcy proceeding or foreclosure proceeding and the borrower

117

**Exhibit C**

has not filed for protection under applicable bankruptcy laws.

(s) Seller has used no selection procedure in soliciting or selecting the Mortgage Loans to be sold to Purchaser or in the solicitation of borrowers which is in violation of law.

(t) Unless otherwise set forth on the Mortgage Loan Schedule, the Mortgage Loan does not contain provisions pursuant to which monthly payments are paid or partially paid with funds deposited in any separate account established by the Seller, the borrower, or anyone on behalf of the borrower, or paid by any source other than the borrower nor does it contain any other similar provisions which may constitute a 'buydown' provision. The Mortgage Loan is not a graduated payment Mortgage Loan and the Mortgage Loan does not have a shared appreciation or other contingent interest feature.

(u) Each Mortgage Note requires a monthly payment which is sufficient to amortize fully the original principal balance over the original term thereof and to pay interest at the related Mortgage Interest Rate. No Mortgage Loan contains terms or provisions which would result in negative amortization.

(v) If required by specific loan programs, a Mortgage Loan with an LTV greater than 80% is and will be insured as to payment defaults by a Primary Mortgage Insurance Policy issued by a Qualified Insurer. All provisions of such Primary Mortgage Insurance Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid. No action, inaction, or event has occurred and no state of facts exists that has, or will result in the exclusion from, denial of, or defense to coverage. Any Mortgage Loan subject to a Primary Mortgage Insurance Policy obligates the Mortgagor thereunder to maintain the Primary Mortgage Insurance Policy and to pay all premiums and charges in connection therewith.

(w) Each Mortgaged Property is improved by a one- to four-family residential dwelling including condominium units. dwelling units in PUDs and cooperatives, which, to the best of the Seller's knowledge, does not include mobile homes and, except if the Mortgage Loan is a Co-op Loan, does not constitute other than real property under state law.

(x) No action has been taken or failed to be taken by the Seller on or prior to the Closing Date which has resulted or will result in an exclusion from, denial of, or defense to coverage under any Primary Mortgage Insurance Policy (including, without limitation, any exclusions, denials or defenses which would limit or reduce the availability of the timely payment of the full amount of the loss otherwise due thereunder to the insured).

(y) The origination, servicing and collection practices with respect to the Mortgage Loan have been in all material respects in

## Exhibit C

accordance with accepted mortgage servicing practices of prudent lending institutions, applicable laws and regulations, and have been in all material respects legal and proper.

(z) Each Mortgage Loan was originated (within the meaning of Section 3(a)(41) of the Securities Exchange Act of 1934, as amended) by an entity that satisfied at the time of origination the requirements of Section 3(a)(41) of the Securities Exchange Act of 1934, as amended.

(aa) Any leasehold estate securing a Mortgage Loan has a term of not less than five years in excess of the term of the related Mortgage Loan.

(bb) The Mortgage Loan documents contain an appraisal of the related Mortgaged Property by an appraiser who had no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof; and whose compensation was not affected by the approval or disapproval of the Mortgage Loan, and the appraisal and/or the appraiser satisfy the applicable requirements or minimum qualifications of FIRREA, Fannie Mae or Freddie Mac, as applicable.

(cc) Each Mortgage Loan constitutes a 'qualified mortgage' within the meaning of Section 860G(a)(3) of the Code.

(dd) No Mortgage Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act.

(ee) None of the Mortgage Loans is a 'high cost' loan as defined by applicable predatory and abusive lending laws.

(ff) None of the Mortgage Loans is covered by the Home Ownership and Equity Protection Act of 1994 ('HOEPA').

(gg) No Mortgage Loan is a 'High-Cost Home Loan' as defined in the New Jersey Home Ownership Act effective November 27, 2003 (N.J.S.A. 46:10B-22 et seq.).

(hh) No Mortgage Loan is a 'High-Cost Home Loan' as defined in the New Mexico Home Loan Protection Act effective January 1, 2004 (N.M. Stat. Ann. ss.ss. 58-21a-1 et seq.).

(ii) No Mortgage Loan is a High Cost Loan or Covered Loan, as applicable, and with respect to the foregoing, the terms 'High Cost Loan' and 'Covered Loan' have the meaning assigned to them in the then current version of Standard & Poor's LEVELS(R), which is now Version 5.6d Glossary Revised, Appendix E which is attached hereto as Exhibit A (the 'Glossary') where (x) a "High Cost Loan" is each loan identified in the column 'Category under applicable anti-predatory lending law' of the table entitled 'Standard & Poor's High Cost Loan Categorization' in the Glossary as each such loan is defined in the applicable anti-predatory lending law of the State or jurisdiction specified in such table and (y) a 'Covered Loan' is each loan identified in the

**Exhibit C**

| | |
|---|---|
| | column 'Category under applicable anti-predatory lending law' of the table entitled 'Standard & Poor's High Covered Loan Categorization' in the Glossary as each such loan is defined in the applicable anti-predatory lending law of the State or jurisdiction specified in such table.<br><br>(jj) In connection with the origination of the Mortgage Loan, no proceeds from such Mortgage Loan were used to finance or acquire a single-premium credit life insurance policy, credit disability, credit unemployment or credit property insurance policy.<br><br>(kk) Each Mortgage Loan that is subject to a prepayment penalty as provided in the related Mortgage Note is identified on the related Mortgage Loan Schedule. No such Prepayment Penalty may be imposed for a term in excess of five (5) years following origination.<br><br>(ll) As to each consumer report (as defined in the Fair Credit Reporting Act, Public Law 91-508) or other credit information furnished by the Seller to the Purchaser, that Seller has full right and authority and is not precluded by law or contract from furnishing such information to the Purchaser and the Purchaser is not precluded from furnishing the same to any subsequent or prospective purchaser of such Mortgage. With respect to each Mortgage Loan the Seller has caused to be fully furnished, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (e.g., favorable and unfavorable) on its borrower credit files to Equifax, Experian and Trans Union Credit Information Company (three of the credit repositories), on a monthly basis.<br><br>(mm) No Mortgagor with respect to any Mortgage Loan originated on or after August 1, 2004 agreed to submit to arbitration to resolve any dispute arising out of or relating in any way to the mortgage loan transaction." |
| Mortgage Loan Purchase and Servicing Agreement related to TBW 2006-6 dated as of December 1, 2006 ("TBW MLPSA") § 7.01 | "Representations and Warranties Respecting the Seller.<br>The Seller represents, warrants and covenants to the Purchaser as of the Closing Date or as of such date specifically provided herein or in the applicable Assignment and Conveyance:<br><br>(i) The Seller is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has all licenses necessary to carry on its business as now being conducted. It is licensed in, qualified to transact business in and is in good standing under the laws of the state in which any Mortgaged Property is located except where the failure to be so licensed and qualified would not have a material adverse effect on the Seller's business or operations or the enforceability of any Loan or the Seller's ability to service such Loan in accordance with the terms of this Agreement. No licenses or approvals |

**Exhibit C**

obtained by Seller have been suspended or revoked by any court, administrative agency, arbitrator or governmental body and no proceedings are pending which might result in such suspension or revocation;

(ii) The Seller has the full power and authority to hold each Loan, to sell each Loan, and to execute, deliver and perform, and to enter into and consummate, all transactions contemplated by this Agreement. The Seller has duly authorized the execution, delivery and performance of this Agreement, has duly executed and delivered this Agreement, and this Agreement, assuming due authorization, execution and delivery by the Purchaser, constitutes a legal, valid and binding obligation of the Seller, enforceable against it in accordance with its terms except as the enforceability thereof may be limited by bankruptcy, insolvency or reorganization;

(iii) The execution and delivery of this Agreement by the Seller and the performance of and compliance with the terms of this Agreement do not and will not violate the Seller's articles of incorporation or by-laws or constitute a default under or result in a breach or acceleration of, any material contract, agreement or other instrument to which the Seller is a party or which may be applicable to the Seller or its assets;

(iv) The Seller is not in violation of, and the execution and delivery of this Agreement by the Seller and its performance and compliance with the terms of this Agreement will not constitute a violation with respect to, any order or decree of any court or any order or regulation of any federal, state, municipal or governmental agency having jurisdiction over the Seller or its assets, which violation might have consequences that would materially and adversely affect the condition (financial or otherwise) or the operation of the Seller or its assets or might have consequences that would materially and adversely affect the performance of its obligations and duties hereunder;

(v) The Seller is an approved seller/servicer for Freddie Mac in good standing and is a HUD approved mortgagee pursuant to Section 203 of the National Housing Act. No event has occurred, including but not limited to a change in insurance coverage, which would make the Seller unable to comply with Freddie Mac or HUD eligibility requirements or which would require notification to Freddie Mac or HUD;

(vi) The Seller does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement;

(vii) The Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered with respect to each Loan pursuant to this Agreement, have been delivered to the

## Exhibit C

Custodian all in compliance with the specific requirements of this Agreement. With respect to each Loan, the Seller is in possession of a complete Loan File in compliance with Exhibit 5, except for such documents as have been delivered to the Custodian;

(viii) Immediately prior to the payment of the Purchase Price for each Loan, the Seller was the owner of record of the related Mortgage and the indebtedness evidenced by the related Note and upon the payment of the Purchase Price by the Purchaser, in the event that the Seller retains record title, the Seller shall retain such record title in trust for the Purchaser as the owner thereof and only for the purpose of servicing and supervising the servicing of each Loan;

(ix) There are no actions or proceedings against, or investigations of, the Seller before any court, administrative or other tribunal (A) that might prohibit its entering into this Agreement, (B) seeking to prevent the sale of the Loans or the consummation of the transactions contemplated by this Agreement or (C) that might prohibit or materially and adversely affect the performance by the Seller of its obligations under, or the validity or enforceability of, this Agreement;

(x) No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Seller of, or compliance by the Seller with, this Agreement or the consummation of the transactions contemplated by this Agreement, except for such consents, approvals, authorizations or orders, if any, that have been obtained prior to the related Closing Date;

(xi) The consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Seller, and the transfer, assignment and conveyance of the Notes and the Mortgages by the Seller pursuant to this Agreement are not subject to the bulk transfer or any similar statutory provisions;

(xii) Neither this Agreement nor any written statement, report or other document prepared and furnished or to be prepared and furnished by the Seller pursuant to this Agreement or in connection with the transactions contemplated hereby contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading;

(xiii) The origination, servicing and collection practices used by the Seller (and by any prior originator or servicer) with respect to each Note and Mortgage have been in all respects legal, proper, prudent and customary in the mortgage origination and servicing industry and have been in accordance with Accepted Servicing Practices. The Loan has been serviced by the Seller and any predecessor servicer in accordance with the terms of the Note.

**Exhibit C**

| | |
|---|---|
| | With respect to escrow deposits and Escrow Payments, if any, all such payments are in the possession of, or under the control of, the Seller and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits or Escrow Payments or other charges or payments due the Seller have been capitalized under any Mortgage or the related Note and no such escrow deposits or Escrow Payments are being held by the Seller for any work on a Mortgaged Property which has not been completed; <br> (xiv) The transfer of the Loans shall be treated as a sale on the books and records of the Seller, and the Seller has determined that, and will treat, the disposition of the Loans pursuant to this Agreement for tax and accounting purposes as a sale. The Seller shall maintain a complete set of books and records for each Loan which shall be clearly marked to reflect the ownership of such Loan by the Purchaser; <br> (xv) The consideration received by the Seller upon the sale of the Loans constitutes fair consideration and reasonably equivalent value for such Loan; <br> (xvi) The Seller is solvent and will not be rendered insolvent by the consummation of the transactions contemplated hereby. The Seller is not transferring any Loan with any intent to hinder; delay or defraud any of its creditors; <br> (xvii) The information delivered by the Seller to the Purchaser with respect to the Seller's loan loss, foreclosure and delinquency experience for the twelve (12) months immediately preceding the Initial Closing Date on loans underwritten to the same standards as the Loans and covering properties similar to the Mortgaged Properties, is true and correct in all material respects; and <br> (xviii) If the Seller is or becomes a member of MERS, the Seller is in good standing, and will comply in all material respects with the rules and procedures of MERS in connection with the servicing of the MERS Loans for as long as such Loans are registered with MERS." |
| WAMU PSA § 2.09 | "Representations and Warranties of Each Seller Concerning the Mortgage Loans. The Company hereby assigns to the Trust all of its rights under the Mortgage Loan Purchase Agreement, to the extent that the Mortgage Loan Purchase Agreement relates to the Mortgage Loans. <br> Upon discovery by any of the Company, the Servicer or the Trustee (in the case of the Trustee, having actual knowledge thereof) of a breach of any of the representations and warranties in respect of the Mortgage Loan set forth in Section 3.1 of the Mortgage Loan Purchase Agreement (in the case of a breach of the representation set forth in clause (xxix) of such Section 3.1 thereof, determined as specified in Section 3.3(b) thereof) that |

## Exhibit C

| | materially and adversely affects the value of the related Mortgage Loans or the interests of the Trust in the related Mortgage Loans, the party discovering such breach shall give prompt written notice to the others. Any breach of the representation set forth in clause (xxvii) or clause (xxviii) of such Section 3.1 thereof shall be deemed to materially and adversely affect the value of the related Mortgage Loans or the interests of the Trust in the related Mortgage Loans. The Servicer shall promptly notify the applicable Seller of such breach and take appropriate steps on behalf of the Trust to enforce such Seller's obligation, pursuant to Section 3.3 of the Mortgage Loan Purchase Agreement, to cure such breach in all material respects or repurchase or substitute for the affected Mortgage Loan or Mortgage Loans or any property acquired in respect thereof, in accordance with and subject to the time limitations set forth in such Section 3.3; provided, however, that a Seller shall not be required or permitted to repurchase a Mortgage Loan pursuant to such Section 3.3 thereof unless (a) such defect would cause the Mortgage Loan to be other than a 'qualified mortgage' (as defined in the Code), (b) such Mortgage Loan is in default, or default is in the judgment of the Servicer reasonably imminent, or (c) the Servicer, at the expense of the Seller, delivers to the Trustee an Opinion of Counsel addressed to the Trust and the Trustee to the effect that the purchase of such Mortgage Loan will not give rise to a tax on a prohibited transaction, as defined in Section 860F(a) of the Code. |
| | If a Seller is the Servicer, then the Trustee may, but shall not be obligated to (or, if so directed by Certificateholders holding Certificates which evidence Percentage Interests aggregating not less than 25%, then the Trustee shall), give the notification to such Seller and, if applicable, require the repurchase or substitution by such Seller provided for in the immediately preceding paragraph, in the event of such a breach of a representation or warranty made by such Seller. |
| | In connection with the enforcement of a Seller's repurchase or substitution obligation pursuant to Section 3.3 of the Mortgage Loan Purchase Agreement, the Servicer and the Trustee shall comply with the additional provisions set forth in Section 2.10 hereof." |
| WFMBS PSA § 2.03 | "Representations and Warranties of the Master Servicer and the Depositor. (a) The Master Servicer hereby represents and warrants to the Trustee for the benefit of the Certificateholders that, as of the date of execution of this Agreement: |
| | (i) The Master Servicer is a national banking association duly chartered and validly existing in good standing under the laws of the United States; |
| | (ii) The execution and delivery of this Agreement by the Master |

124

## Exhibit C

Servicer and its performance and compliance with the terms of this Agreement will not violate the Master Servicer's corporate charter or by-laws or constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material contract, agreement or other instrument to which the Master Servicer is a party or which may be applicable to the Master Servicer or any of its assets;

(iii) This Agreement, assuming due authorization, execution and delivery by the Trustee and the Depositor, constitutes a valid, legal and binding obligation of the Master Servicer, enforceable against it in accordance with the terms hereof subject to applicable bankruptcy, insolvency, reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law;

(iv) The Master Servicer is not in default with respect to any order or decree of any court or any order, regulation or demand of any federal, state, municipal or governmental agency, which default might have consequences that would materially and adversely affect the condition (financial or other) or operations of the Master Servicer or its properties or might have consequences that would materially affect its performance hereunder;

(v) Except as otherwise disclosed in the Prospectus, no legal or governmental proceedings are pending (or known to be contemplated) against the Master Servicer that would be material to Certificateholders;

(vi) Except as otherwise disclosed in the Prospectus, the Master Servicer is not aware and has not received notice that any default, early amortization or other performance triggering event has occurred as to any other securitization due to any act or failure to act of the Master Servicer under such securitization;

(vii) Except as otherwise disclosed in the Prospectus, the Master Servicer has not been terminated as master servicer in a residential mortgage loan securitization, either due to a master servicing default or to application of a master servicing performance test or trigger;

(viii) Except as otherwise disclosed in the Prospectus, no material noncompliance with the applicable servicing criteria with respect to other securitizations of residential mortgage loans involving the Master Servicer as a master servicer has been disclosed or reported by the Master Servicer within the past three (3) years;

(ix) Except as otherwise disclosed in the Prospectus, no material changes to the Master Servicer's policies or procedures with respect to the master servicing function it will perform under this Agreement for mortgage loans of a type similar to the Mortgage Loans have occurred during the three-year period immediately

125

## Exhibit C

preceding the date of this Agreement;

(x) Except as otherwise disclosed in the Prospectus, there is no material risk that the Master Servicer's financial condition could affect one or more aspects of the performance by the Master Servicer of its master servicing obligations under this Agreement in a manner that could have a material impact on the performance of the Mortgage Loans or the Certificates; and

(xi) Except as disclosed in the Prospectus, there are no affiliations, relationships or transactions relating to the Master Servicer and any party identified in Item 1119 of Regulation AB of the type described therein.

It is understood and agreed that the representations and warranties set forth in this Section 2.03(a) shall survive delivery of the respective Owner Mortgage Loan Files to the Trustee or the Custodian. Upon discovery by any of the Depositor, the Master Servicer or the Trustee of a breach of any of the representations and warranties set forth in this Section 2.03(a), the party discovering such breach shall give prompt written notice, which shall not exceed two days, to the other parties. The Master Servicer shall consult with the Depositor to determine if any such breach is material and any breach determined by the Depositor to be material shall be included by the Master Servicer on the next Distribution Date Statement prepared pursuant to Section 4.04.

(b) The Depositor hereby represents and warrants to the Trustee for the benefit of Certificateholders that, as of the date of execution of this Agreement, with respect to the Mortgage Loans, or each Mortgage Loan, as the case may be:

(i) The information set forth in the Mortgage Loan Schedule was true and correct in all material respects at the date or dates respecting which such information is furnished as specified in the Mortgage Loan Schedule;

(ii) Immediately prior to the transfer and assignment contemplated herein, the Depositor was the sole owner and holder of the Mortgage Loan free and clear of any and all liens, pledges, charges or security interests of any nature and has full right and authority to sell and assign the same;

(iii) The Mortgage is a valid, subsisting and enforceable first lien on the property therein described, and the Mortgaged Property is free and clear of all encumbrances and liens having priority over the first lien of the Mortgage except for liens for real estate taxes and special assessments not yet due and payable and liens or interests arising under or as a result of any federal, state or local law, regulation or ordinance relating to hazardous wastes or hazardous substances, and, if the related Mortgaged Property is a condominium unit, any lien for common charges permitted by statute or homeowners association fees; and if the Mortgaged

**Exhibit C**

Property consists of shares of a cooperative housing corporation, any lien for amounts due to the cooperative housing corporation for unpaid assessments or charges or any lien of any assignment of rents or maintenance expenses secured by the real property owned by the cooperative housing corporation; and any security agreement, chattel mortgage or equivalent document related to, and delivered to the Trustee or to the Custodian with, any Mortgage establishes in the Depositor a valid and subsisting first lien on the property described therein and the Depositor has full right to sell and assign the same to the Trustee;

(iv) Neither the Depositor nor any prior holder of the Mortgage or the related Mortgage Note has modified the Mortgage or the related Mortgage Note in any material respect, satisfied, canceled or subordinated the Mortgage in whole or in part, released the Mortgaged Property in whole or in part from the lien of the Mortgage, or executed any instrument of release, cancellation, modification or satisfaction, except in each case as is reflected in an agreement delivered to the Trustee or the Custodian pursuant to Section 2.01(a);

(v) All taxes, governmental assessments, insurance premiums, and water, sewer and municipal charges, which previously became due and owing have been paid, or an escrow of funds has been established, to the extent permitted by law, in an amount sufficient to pay for every such item which remains unpaid; and the Depositor has not advanced funds, or received any advance of funds by a party other than the Mortgagor, directly or indirectly (except pursuant to any Subsidy Loan arrangement) for the payment of any amount required by the Mortgage, except for interest accruing from the date of the Mortgage Note or date of disbursement of the Mortgage Loan proceeds, whichever is later, to the day which precedes by thirty days the first Due Date under the related Mortgage Note;

(vi) The Mortgaged Property is undamaged by water, fire, earthquake, earth movement other than earthquake, windstorm, flood, tornado or similar casualty (excluding casualty from the presence of hazardous wastes or hazardous substances, as to which the Depositor makes no representations), in a manner which would adversely affect the value of the Mortgaged Property as security for the Mortgage Loan or the use for which the premises were intended and to the best of the Depositor's knowledge, there is no proceeding pending or threatened for the total or partial condemnation of the Mortgaged Property;

(vii) The Mortgaged Property is free and clear of all mechanics' and materialmen's liens or liens in the nature thereof; provided, however, that this warranty shall be deemed not to have been made at the time of the initial issuance of the Certificates if a title

**Exhibit C**

policy affording, in substance, the same protection afforded by this warranty is furnished to the Trustee by the Depositor;

(viii) Except for Mortgage Loans secured by Co-op Shares and Mortgage Loans secured by residential long-term leases, the Mortgaged Property consists of a fee simple estate in real property; all of the improvements which are included for the purpose of determining the appraised value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of such property and no improvements on adjoining properties encroach upon the Mortgaged Property (unless insured against under the related title insurance policy); and to the best of the Depositor's knowledge, the Mortgaged Property and all improvements thereon comply with all requirements of any applicable zoning and subdivision laws and ordinances;

(ix) The Mortgage Loan meets, or is exempt from, applicable state, federal or local laws, regulations and other requirements, pertaining to usury, and the Mortgage Loan is not usurious;

(x) To the best of the Depositor's knowledge, all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including, but not limited to, certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities;

(xi) All payments required to be made up to the Due Date immediately preceding the Cut-Off Date for such Mortgage Loan under the terms of the related Mortgage Note have been made and no Mortgage Loan had more than one delinquency in the 12 months preceding the Cut-Off Date;

(xii) The Mortgage Note, the related Mortgage and other agreements executed in connection therewith are genuine, and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law); and, to the best of the Depositor's knowledge, all parties to the Mortgage Note and the Mortgage had legal capacity to execute the Mortgage Note and the Mortgage and each Mortgage Note and Mortgage has been duly and properly executed by the Mortgagor;

(xiii) Each Mortgage Loan at the time it was originated complied in all material respects with applicable federal, state and local laws including, without limitation, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit

**Exhibit C**

opportunity, predatory and abusive lending laws and disclosure laws;

(xiv) The proceeds of the Mortgage Loans have been fully disbursed, there is no requirement for future advances thereunder and any and all requirements as to completion of any on-site or off-site improvements and as to disbursements of any escrow funds therefor have been complied with (except for escrow funds for exterior items which could not be completed due to weather and escrow funds for the completion of swimming pools); and all costs, fees and expenses incurred in making, closing or recording the Mortgage Loan have been paid, except recording fees with respect to Mortgages not recorded as of the Closing Date;

(xv) The Mortgage Loan (except any Mortgage Loan secured by a Mortgaged Property located in any jurisdiction, as to which an opinion of counsel of the type customarily rendered in such jurisdiction in lieu of title insurance is instead received) is covered by an American Land Title Association mortgagee title insurance policy or other generally acceptable form of policy or insurance acceptable to Fannie Mae or Freddie Mac, issued by a title insurer acceptable to Fannie Mae or Freddie Mac insuring the originator, its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of the Mortgage Loan and subject only to (A) the lien of current real property taxes and assessments not yet due and payable, (B) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage acceptable to mortgage lending institutions in the area in which the Mortgaged Property is located or specifically referred to in the appraisal performed in connection with the origination of the related Mortgage Loan, (C) liens created pursuant to any federal, state or local law, regulation or ordinance affording liens for the costs of clean-up of hazardous substances or hazardous wastes or for other environmental protection purposes and (D) such other matters to which like properties are commonly subject which do not individually, or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Mortgage; the Depositor is the sole insured of such mortgagee title insurance policy, the assignment to the Trustee of the Depositor's interest in such mortgagee title insurance policy does not require any consent of or notification to the insurer which has not been obtained or made, such mortgagee title insurance policy is in full force and effect and will be in full force and effect and inure to the benefit of the Trustee, no claims have been made under such mortgagee title insurance policy, and no prior holder of the related Mortgage, including the Depositor, has done, by act or omission, anything which would impair the coverage of such mortgagee title

## Exhibit C

insurance policy;

(xvi) The Mortgaged Property securing each Mortgage Loan is insured by an insurer acceptable to Fannie Mae or Freddie Mac against loss by fire and such hazards as are covered under a standard extended coverage endorsement, in an amount which is not less than the lesser of 100% of the insurable value of the Mortgaged Property and the outstanding principal balance of the Mortgage Loan, but in no event less than the minimum amount necessary to fully compensate for any damage or loss on a replacement cost basis; if the Mortgaged Property is a condominium unit, it is included under the coverage afforded by a blanket policy for the project; if upon origination of the Mortgage Loan, the improvements on the Mortgaged Property were in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards, a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration is in effect with a generally acceptable insurance carrier, in an amount representing coverage not less than the least of (A) the outstanding principal balance of the Mortgage Loan, (B) the full insurable value of the Mortgaged Property and (C) the maximum amount of insurance which was available under the National Flood Insurance Act of 1968, as amended; and each Mortgage obligates the Mortgagor thereunder to maintain all such insurance at the Mortgagor's cost and expense;

(xvii) To the best of the Depositor's knowledge, there is no default, breach, violation or event of acceleration existing under the Mortgage or the related Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration; the Depositor has not waived any default, breach, violation or event of acceleration; and no foreclosure action is currently threatened or has been commenced with respect to the Mortgage Loan;

(xviii) No Mortgage Note or Mortgage is subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, nor will the operation of any of the terms of the Mortgage Note or Mortgage, or the exercise of any right thereunder, render the Mortgage Note or Mortgage unenforceable, in whole or in part, or subject it to any right of rescission, set-off, counterclaim or defense, including the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto;

(xix) Each Mortgage Note is payable in monthly payments, resulting in complete amortization of the Mortgage Loan over a term of not more than 360 months;

**Exhibit C**

| | (xx) Each Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security, including realization by judicial foreclosure (subject to any limitation arising from any bankruptcy, insolvency or other law for the relief of debtors), and there is no homestead or other exemption available to the Mortgagor which would interfere with such right of foreclosure; (xxi) To the best of the Depositor's knowledge, no Mortgagor is a debtor in any state or federal bankruptcy or insolvency proceeding; (xxii) Each Mortgaged Property is located in the United States and consists of a one- to four-unit residential property, which may include a detached home, townhouse, condominium unit or a unit in a planned unit development or, in the case of Mortgage Loans secured by Co-op Shares, leases or occupancy agreements; (xxiii) The Mortgage Loan is a 'qualified mortgage' within the meaning of Section 860G(a)(3) of the Code; (xxiv) With respect to each Mortgage where a lost note affidavit has been delivered to the Custodian in place of the related Mortgage Note, the related Mortgage Note is no longer in existence; (xxv) In the event that the Mortgagor is an inter vivos 'living' trust, (i) such trust is in compliance with Fannie Mae or Freddie Mac standards for inter vivos trusts and (ii) holding title to the Mortgaged Property in such trust will not diminish any rights as a creditor including the right to full title to the Mortgaged Property in the event foreclosure proceedings are initiated; (xxvi) If the Mortgage Loan is secured by a long-term residential lease, (1) the lessor under the lease holds a fee simple interest in the land; (2) the terms of such lease expressly permit the mortgaging of the leasehold estate, the assignment of the lease without the lessor's consent and the acquisition by the holder of the Mortgage of the rights of the lessee upon foreclosure or assignment in lieu of foreclosure or provide the holder of the Mortgage with substantially similar protections; (3) the terms of such lease do not (a) allow the termination thereof upon the lessee's default without the holder of the Mortgage being entitled to receive written notice of, and opportunity to cure, such default, (b) allow the termination of the lease in the event of damage or destruction as long as the Mortgage is in existence, (c) prohibit the holder of the Mortgage from being insured (or receiving proceeds of insurance) under the hazard insurance policy or policies relating to the Mortgaged Property or (d) permit any increase in rent other than pre-established increases set forth in the lease; (4) the original term of such lease is not less than 15 years; (5) the term of such |
|---|---|

**Exhibit C**

lease does not terminate earlier than five years after the maturity date of the Mortgage Note; and (6) the Mortgaged Property is located in a jurisdiction in which the use of leasehold estates in transferring ownership in residential properties is a widely accepted practice;

(xxvii) No Mortgage Loan is a 'high cost' loan as defined under any federal, state or local law applicable to such Mortgage Loan at the time of its origination;

(xxviii) No Mortgage Loan is serviced by the Trustee or an affiliate of the Trustee;

(xxix) No Mortgage Loan (other than a Mortgage Loan that is a New Jersey covered purchase loan) is a High Cost Loan or Covered Loan, as applicable (as such terms are defined in the then current S&P's LEVELS(R) Glossary which is now Version 5.6(c), Appendix E) and no Mortgage Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act;

(xxx) With respect to each Group I Mortgage Loan, no Mortgagor obtained a prepaid single-premium credit-life, credit disability, credit unemployment or credit property insurance policy;

(xxxi) The Cut-Off Date Principal Balance of each Group I Mortgage Loan does not exceed the applicable maximum original loan amount limitations with respect to first-lien one-to four-family mortgage loans as set forth in the Freddie Mac Selling Guide;

(xxxii) With respect to each Group I Mortgage Loan, the Servicer has furnished in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information on the related Mortgagor credit files to Equifax, Experian and Trans Union Credit Information Company, on a monthly basis;

(xxxiii) With respect to each Group I Mortgage Loan originated on or after August 1, 2004, neither the related Mortgage nor the related Mortgage Note requires the Mortgagor to submit to arbitration to resolve any dispute arising out of or relating in any way to such Group I Mortgage Loan transaction;

(xxxiv) No Group I Mortgage Loan is subject to the Home Ownership and Equity Protection Act of 1994, as amended;

(xxxv) There is no Group I Mortgage Loan that was originated on or after October 1, 2002 and before March 7, 2003, which is secured by property located in the State of Georgia. There is no Group I Mortgage Loan that was originated on or after March 7, 2003, which is a 'high cost home loan' as defined under the Georgia Fair Lending Act;

(xxxvi) With respect to each Group I Mortgage Loan, neither the related Mortgage nor the related Mortgage Note imposes a penalty

## Exhibit C

| | |
|---|---|
| | upon the prepayment of such Group I Mortgage Loan; and (xxxvii) No Group I Mortgage Loan is secured by Mortgaged Property consisting of manufactured housing." |

## Section XIII

| | |
|---|---|
| BAFC PSA § 3.20 | "Each of the Master Servicer and the Securities Administrator shall deliver, and shall cause any Additional Servicer engaged by it to deliver, or otherwise make available to the Depositor and the Securities Administrator (and the Securities Administrator will make available to the Trustee and each Rating Agency), no later than March 15th of each calendar year beginning in 2008, an Officer's Certificate (each, together with such similar certificate delivered by each Servicer as described in Section 3.20(b), a 'Compliance Statement'), signed by an officer of such party, stating, as to the signer thereof, that (a) a review of the activities of such party during the preceding calendar year or portion thereof and of performance of such party under this Agreement or such applicable agreement in case of an Additional Servicer has been made under such officers' supervision and (b) to the best of such officer's knowledge, based on such review, such party has fulfilled all of its obligations under this Agreement or such applicable agreement in case of an Additional Servicer in all material respects throughout such year, or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof. Such Compliance Statements shall contain no restrictions or limitations on their use. The obligations of the Master Servicer and the Securities Administrator under this Section apply to each entity that acted as Master Servicer or Securities Administrator, as applicable, during the applicable period, whether or not such entity is acting as Master Servicer or Securities Administrator at the time such Compliance Statement is required to be delivered." |
| BSARM SSA § 3.15 | "The Master Servicer shall deliver to the Issuer, the Indenture Trustee and the Rating Agencies on or before March 1 of each year, commencing on March 1, 2006, an Officer's Certificate, certifying that with respect to the period ending December 31 of the prior year: (i) such Servicing Officer has reviewed the activities of such Master Servicer during the preceding calendar year or portion thereof and its performance under this Agreement, (ii) to the best of such Servicing Officer's knowledge, based on such review, such Master Servicer has performed and fulfilled its duties, responsibilities and obligations under this Agreement in all material respects throughout such year, or, if there has been a default in the fulfillment of any such duties, responsibilities or obligations, specifying each such default known to such Servicing |

133

## Exhibit C

| | |
|---|---|
| | Officer and the nature and status thereof, (iii) nothing has come to the attention of such Servicing Officer to lead such Servicing Officer to believe that the related Servicer has failed to perform any of its duties, responsibilities and obligations under the related Servicing Agreement in all material respects throughout such year, or, if there has been a material default in the performance or fulfillment of any such duties, responsibilities or obligations, specifying each such default known to such Servicing Officer and the nature and status thereof." |
| Citibank PSA § 3.21(b) | "For each calendar year for which CMSI is required to file a Form 10-K with the Securities and Exchange Commission for this series, each party to this agreement who<br><br>• participates in the servicing function, within the meaning of section 1122 of Regulation AB under the Securities Act (*Regulation AB*), for this series, or who controls such a participant, will submit, or will cause such controlled participant to submit, by March 1 of the following year, a report on an assessment of compliance covering the servicing criteria set forth opposite its name on schedule 1, 'Servicing criteria to be addressed in report on assessment of compliance' (as such schedule may be modified pursuant to section 3.22(c) below), and an attestation report of a registered public accounting firm, all as required by and in full conformity with the requirements of rule 1122, and<br><br>• is a servicer, within the meaning of section 1123 of Regulation AB, for this series, or who controls such a servicer, will submit, or will cause such controlled servicer to submit, by March 1 of the following year, a statement of compliance signed by an authorized officer, as required and in full conformity with the requirements of rule 1123." |
| Credit Suisse PSA § 3.16 | "Not later than the earlier of (a) March 15 of each calendar year (other than the calendar year during which the Closing Date occurs) or (b) with respect to any calendar year during which the Depositor's annual report on Form 10-K is required to be filed in accordance with the Exchange Act and the rules and regulations of the Commission, 15 calendar days before each date on which the Depositor's annual report on Form 10-K is required to be filed in accordance with the Exchange Act and the rules and regulations of the Commission (or if such day is not a Business Day, the immediately preceding Business Day), each Servicer shall deliver to the Master Servicer an Officer's Certificate stating, as to the signer thereof, that (i) a review of the activities of such Servicer during the preceding calendar year and of the performance of such Servicer under this Agreement has been made under such officer's supervision, and (ii) to the best of such officer's knowledge, based |

134

## Exhibit C

| | |
|---|---|
| | on such review, such Servicer has fulfilled all its obligations under this Agreement throughout such year, or, if there has been a default in the fulfillment of any such obligation, specifying each such default known to such officer and the nature and status thereof and the action being taken by such Servicer to cure such default. Upon each receipt of such Officer's Certificate from any Servicer, the Master Servicer shall promptly deliver a copy of such Officer's Certificate to the Depositor, the Rating Agencies, the Trustee and the Trust Administrator. Not later than the earlier of (a) March 15 of each calendar year (other than the calendar year during which the Closing Date occurs) or (b) with respect to any calendar year during which the Depositor's annual report on Form 10-K is required to be filed in accordance with the Exchange Act and the rules and regulations of the Commission, 15 calendar days before each date on which the Depositor's annual report on Form 10-K is required to be filed in accordance with the Exchange Act and the rules and regulations of the Commission (or if such day is not a Business Day, the immediately preceding Business Day), the Master Servicer shall deliver to the Depositor, the Rating Agencies, the Trustee and the Trust Administrator an Officer's Certificate stating, as to the signer thereof, that (i) a review of the activities of the Master Servicer during the preceding calendar year and of the performance of the Master Servicer under this Agreement has been made under such officer's supervision, and (ii) to the best of such officer's knowledge, based on such review, the Master Servicer has fulfilled all its obligations under this Agreement throughout such year, or, if there has been a default in the fulfillment of any such obligation, specifying each such default known to such officer and the nature and status thereof and the action being taken by the Master Servicer to cure such default." |
| Amended and Restated Flow Sale and Servicing Agreement related to GSR-AR1 dated as of January 1, 2006 ("GSR SWSA") § 2.4 | "The Company shall deliver to the Owner, on or before March 15 of each year, beginning March 15, 2006, an Officers' Certificate stating that (i) a review of the activities of the Company during the preceding calendar year and of the Company's performance under this Agreement has been made under such officer's supervision, and (ii) to the best of such officer's knowledge, based on such review, the Company has fulfilled all of its obligations under this Agreement throughout such year, or, if there has been a default in the fulfillment of any such obligation, specifying each such default known to such Servicing Officer and the nature and status thereof and the action being taken by the Company to cure such default." |
| JPMorgan PSA § 11.06 | "By March 15 of each year, commencing in March 2007, the Master Servicer, the Securities Administrator and the Custodian, each at its own expense, shall furnish or otherwise make available, and each such party shall cause any Servicing Function Participant engaged by it to furnish or otherwise make available, each at its |

## Exhibit C

| | |
|---|---|
| | own expense, to the Securities Administrator and the Depositor, a report on an assessment of compliance with the Relevant Servicing Criteria (an 'Assessment of Compliance') that contains (A) a statement by such party of its responsibility for assessing compliance with the applicable Relevant Servicing Criteria, (B) a statement that such party used the applicable Relevant Servicing Criteria to assess compliance with the applicable Relevant Servicing Criteria, (C) such party's assessment of compliance with the applicable Relevant Servicing Criteria as of and for the fiscal yea r covered by the Form 10-K required to be filed pursuant to Section 11.02, including, if there has been any material instance of noncompliance with the applicable Relevant Servicing Criteria, a discussion of each such failure and the nature and status thereof, and (D) a statement that a registered public accounting firm has issued an Accountant's Attestation on such party's Assessment of Compliance with the applicable Relevant Servicing Criteria as of and for such period; provided, however, the Custodian and any Servicing Function Participant engaged by it shall only be required to provide an Assessment of Compliance for each calendar year for which a Form 10-K is required to be filed with respect to the Trust Fund." |
| MABS PSA § 3.21 | "The Master Servicer shall deliver to the Depositor and the Trust Administrator on or before March 10 (with a 5 calendar day cure period) of each year, commencing in March 2007, an Officer's Certificate stating, as to the signer thereof, that (A) a review of the Master Servicer's activities during the preceding calendar year or portion thereof and of the Master Servicer's performance under this Agreement, has been made under such officer's supervision and (B) to the best of such officer's knowledge, based on such review, such party has fulfilled all its obligations under this Agreement, in all material respects throughout such year or portion thereof, or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof. Promptly after receipt of each such Officer's Certificate, the Depositor shall review such Officer's Certificate and, if applicable, consult with each such party, as applicable, as to the nature of any failures by such party, in the fulfillment of any of such party's obligations hereunder." |
| Sale and Servicing Agreement related to MSM 2006-7 dated as of January 1, 2006 ("MSM SSA") § 13.04 | "On or before March 1 of each calendar year, commencing in 2007, the Servicer shall deliver to the Purchaser and any Depositor a statement of compliance addressed to the Purchaser and such Depositor and signed by an authorized officer of the Servicer, to the effect that (i) a review of the Servicer's activities during the immediately preceding calendar year (or applicable portion thereof) and of its performance under this Agreement and any |

## Exhibit C

| | |
|---|---|
| | applicable Reconstitution Agreement during such period has been made under such officer's supervision, and (ii) to the best of such officers' knowledge, based on such review, the Servicer has fulfilled all of its obligations under this Agreement and any applicable Reconstitution Agreement in all material respects throughout such calendar year (or applicable portion thereof) or, if there has been a failure to fulfill any such obligation in any material respect, specifically identifying each such failure known to such officer and the nature and the status thereof." |
| TBW PSA § 3.21 | "The Master Servicer and the Trust Administrator shall deliver or otherwise make available (and the Master Servicer and Trust Administrator shall cause any Servicing Function Participant engaged by it to deliver) to the Depositor, the Certificate Insurer and the Trust Administrator on or before March 10 (with a 5 calendar day cure period but in no event later than March 15) of each year, commencing in March 2007, an Officer's Certificate (an 'Annual Statement of Compliance') stating, as to the signer thereof, that (A) a review of such party's activities during the preceding calendar year or portion thereof and of such party's performance under this Agreement or such other applicable Agreement in the case of a Servicing Function Participant, has been made under such officer's supervision and (B) to the best of such officer's knowledge, based on such review, such party has fulfilled all its obligations under this Agreement, in all material respects throughout such year or portion thereof, or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof. Promptly after receipt of each such Annual Statement of Compliance, the Depositor shall review such Annual Statement of Compliance and, if applicable, consult with each such party, as applicable, as to the nature of any failure by such party identified therein, in the fulfillment of any of such party's obligations hereunder." |
| WAMU PSA § 3.13 | "The Servicer shall, on or before the 90th day following each December 31 after the Cut-Off Date, deliver to the Company and the Trustee, and, if required, file with the Commission as an exhibit to a Report on Form 10-K filed on behalf of the Trust, the following documents: <br><br>(a) a report on its assessment of compliance during the preceding calendar year with all applicable servicing criteria set forth in Item 1122(d) of Regulation AB with respect to asset-backed securities transactions taken as a whole involving the Servicer that are backed by assets of the same type as the Mortgage Loans, as required by Item 1122 of Regulation AB; <br><br>(b) with respect to the assessment report described in clause (a) above, a report by a registered public accounting firm that attests |

## Exhibit C

| | |
|---|---|
| | to, and reports on, the assessment made by the Servicer, as required by Item 1122 of Regulation AB; <br> (c) with respect to each subservicer or other agent or independent contractor through which the Servicer performs any of its servicing responsibilities hereunder and each Custodian, in each case, if determined by the Servicer to be a party participating in the servicing function within the meaning of Item 1122 of Regulation AB, (i) a report prepared by such party on its assessment of compliance during the preceding calendar year with all applicable servicing criteria set forth in Item 1122(d) of Regulation AB with respect to asset-backed securities transactions taken as a whole involving such party that are backed by assets of the same type as the Mortgage Loans and (ii) a report by a registered public accounting firm that attests to, and reports on, such assessment, each as required by Item 1122 of Regulation AB; <br> (d) the assessment report and public accounting firm's attestation report delivered by the Trustee under Section 8.17 (if required to be delivered by the Trustee under such Section 8.17); and <br> (e) a statement of compliance from the Servicer, and a similar statement from each subservicer or other agent or independent contractor through which the Servicer performs any of its servicing responsibilities hereunder and from each Custodian, in each case, if determined by the Servicer to meet the criteria in Item 1108(a)(2)(i) through (iii) of Regulation AB, as required by Item 1123 of Regulation AB, signed by an authorized officer, to the effect that: (i) a review of the Servicer's (or, in the case of a statement from any such other party, such other party's) activities during the preceding calendar year (or the applicable portion thereof in the case of the initial statement) and of its performance under this Agreement (or the servicing agreement applicable to such other party) has been made under such officer's supervision; and (ii) to the best of such officer's knowledge, based on such review, the Servicer (or such other party) has fulfilled all of its obligations under this Agreement (or the servicing agreement applicable to such other party) in all material respects throughout the preceding calendar year (or the applicable portion thereof) or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof." |
| WFMBS PSA § 3.11 | "The Master Servicer, at its own expense, shall furnish to the Depositor, and the Trustee, any Special Servicer (if applicable) and the Custodian, at their own expense, shall furnish, or otherwise make available, and shall cause any Servicing Function Participant engaged by any such party to furnish, and the Master Servicer shall use reasonable effort to cause each Servicer to furnish with respect to such Servicer and each Servicing Function |

## Exhibit C

|  | Participant engaged by such Servicer and identified to the Master Servicer, at such party's expense, to the Master Servicer, not later than March 5 of each year, or if such day is not a Business Day, the next Business Day (with a 10 day cure period, but in no event later than March 15), commencing in March 2007, a copy of a report, followed by a hard copy to the Master Servicer within 10 calendar days, signed by an authorized officer of the Master Servicer, the Trustee, the Custodian, the Servicing Function Participant, the Special Servicer (if applicable) or the Servicer, as applicable, on assessment of compliance with, at a minimum, the Relevant Servicing Criteria that contains: <br><br>(i) a statement by such party of its responsibility for assessing compliance with the Servicing Criteria applicable to it; <br><br>(ii) a statement that such party used the Servicing Criteria applicable to it to assess compliance with the Servicing Criteria; <br><br>(iii) such party's assessment of compliance with the Servicing Criteria applicable to it as of and for the preceding fiscal year, including, if there had been any material instance of noncompliance with the Servicing Criteria applicable to it, identifying each such failure and the nature and status thereof; and <br><br>(iv) a statement that a registered public accounting firm has issued an attestation report on such party's assessment of compliance with the Servicing Criteria applicable to it as of and for the preceding fiscal year." |
|---|---|

139